ChamNote, AwaitClo, Appeal

# U.S. Bankruptcy Court
## Western District of Washington (Seattle)
## Adversary Proceeding #: 13−01036−KAO

*Assigned to:* Karen A. Overstreet                    *Date Filed:* 01/15/13
*Lead BK Case:* 12−17379
*Lead BK Title:* Louis Phillipus Meyer and Lynn Meyer
*Lead BK Chapter:* 7
*Demand:*
  *Nature[s] of Suit:*   62 Dischargeability − 523(a)(2), false pretenses, false representation, actual fraud
                    68 Dischargeability − 523(a)(6), willful and malicious injury

*Plaintiff*
−−−−−−−−−−−−−−−−−−−−−−−
**DZ Bank AG Deutsche**                  represented by **Alex Darcy**
**Zentral−Genossenschaft Bank AM Main,**                Askounis &Darcy PC
**New York Branch**                         444 N Michigan Ave #3270
c/o Askounis &Darcy PC                      Chicago, IL 60611
401 N Michigan Ave #550                     312−784−2400
Chicago, IL 60611                           Email: adarcy@askounisdarcy.com

                                        **Michael W Debre**
                                        Askounis &Darcy PC
                                        444 N Michigan Ave #3270
                                        Chicago, IL 60611
                                        312−784−2400
                                        Email: mdebre@askounisdarcy.com

                                        **Michael W Johns**
                                        Roberts Johns &Hemphill PLLC
                                        7525 Pioneer Way Ste 202
                                        Gig Harbor, WA 98335
                                        (253) 858−8646
                                        Email: mike@rjh−legal.com

                                        **James Vasquez**
                                        In Pacta PLLC
                                        801 2nd Ave Ste 307
                                        Seattle, WA 98104
                                        206−734−3800
                                        Email: jv@inpacta.com
                                        *TERMINATED: 05/22/2013*

V.

*Defendant*
−−−−−−−−−−−−−−−−−−−−−−−
**Louis Phillipus Meyer**                represented by **Susan L Fullmer**
18004 Vista Del Mar Dr                      Attotney at Law
Edmonds, WA 98026                           1825 NW 65th St
SSN / ITIN: xxx−xx−4823                     Seattle, WA 98117

1

206−567−2757
Email: susan@fullmerlaw.info

**Marc S. Stern**
1825 NW 65th Street
Seattle, WA 98117
206−448−7996
Email: office@hutzbah.com

*Defendant*
————————————————————

**Lynn Meyer**                                       represented by **Susan L Fullmer**
18004 Vista Del Mar Dr                                            (See above for address)
Edmonds, WA 98026
SSN / ITIN: xxx−xx−5612                               **Marc S. Stern**
                                                                 (See above for address)

| Filing Date | # | | Docket Text |
|---|---|---|---|
| 01/15/2013 | | 1 | Adversary case 13−01036. Complaint by DZ Bank AG Deutsche Zentral−Genossenschaft Bank AM Main, New York Branch (attorney James Vasquez) against Louis Phillipus Meyer, Lynn Meyer. . (Attachments: # 1 Exhibit # 2 Exhibit # 3 Exhibit # 4 Exhibit # 5 Exhibit # 6 Exhibit # 7 Exhibit # 8 Exhibit # 9 Exhibit # 10 Exhibit # 11 Exhibit # 12 Exhibit) Nature of Suit: (62 (Dischargeability − 523(a)(2), false pretenses, false representation, actual fraud)), (68 (Dischargeability − 523(a)(6), willful and malicious injury)) (Vasquez, James) Modified on 1/16/2013 correct name of Plaintiff (Brown, Ethel). (Entered: 01/15/2013 at 20:50:08) |
| 01/15/2013 | | | Receipt of filing fee for Complaint(13−01036−KAO) [cmp,cmp] ( 293.00). Receipt number 16903450. Fee amount $ 293.00. (U.S. Treasury) (Entered: 01/15/2013 at 20:52:35) |
| 01/17/2013 | | 2 | Summons and Notice of Pretrial Conference (Original Summons issued electronically via the Court's ECF System to Plaintiff's Attorney) to be served on Louis Phillipus Meyer Answer Due 2/19/2013; Lynn Meyer Answer Due 2/19/2013 . Pretrial scheduled for 3/12/2013 at 09:00 AM to be held Telephonically. (Stevenson, Lauren) (Entered: 01/17/2013 at 09:16:44) |
| 01/22/2013 | | 3 | Pro Hac Vice Application *of Alex Darcy*.. Filed by James Vasquez on behalf of DZ Bank AG Deutsche Zentral−Genossenschaft Bank AM Main, New York Branch (Attachments: # 1 Proposed Order Admission Pro Hac Vice) (Vasquez, James) Modified on 1/24/2013 (attorney notified to use correct format for adversary cases) (Isreal, Sandra). (Entered: 01/22/2013 at 14:44:21) |
| 01/22/2013 | | 4 | Pro Hac Vice Application *of Michael Debre*.. Filed by James Vasquez on behalf of DZ Bank AG Deutsche Zentral−Genossenschaft Bank AM Main, New York Branch (Attachments: # 1 Proposed Order) (Vasquez, James) Modified on 1/24/2013 (attorney notified to use correct format for adversary) (Isreal, Sandra). (Entered: 01/22/2013 at 14:48:17) |
| 01/22/2013 | | | Receipt of filing fee for Pro Hac Vice Application(13−01036−KAO) [motion,1990] ( 150.00). Receipt number 16938365. Fee amount $ 150.00. (U.S. Treasury) (Entered: |

| | | | |
|---|---|---|---|
| | | | 01/22/2013 at 14:51:06) |
| 01/22/2013 | | | Receipt of filing fee for Pro Hac Vice Application(13–01036–KAO) [motion,1990] ( 150.00). Receipt number 16938365. Fee amount $ 150.00. (U.S. Treasury) (Entered: 01/22/2013 at 14:51:07) |
| 01/22/2013 | | 5 | Received UNSIGNED Order Forwarded to Chambers for Judge's Signature. Filed by Vasquez, James. Related document 3 (Entered: 01/22/2013 at 15:02:01) |
| 01/22/2013 | | 6 | Received UNSIGNED Order Forwarded to Chambers for Judge's Signature. Filed by Vasquez, James. Related document 4 (Entered: 01/22/2013 at 15:02:01) |
| 01/24/2013 | | 7 | ORDER On Pro Hac Vice Application. ( Alex Darcy for DZ Bank AG Deutsche Zentral–Genossenschaft Bank AM Main, New York Branch). (Related Doc # 3) . (SJI) (Entered: 01/24/2013 at 09:15:13) |
| 01/24/2013 | | 8 | ORDER On Pro Hac Vice Application. (Michael W Debre for DZ Bank, AG Deutsche Zentral–Genossenschaft Bank AM Main, New York Branch). (Related Doc # 4) . (SJI) (Entered: 01/24/2013 at 09:18:57) |
| 01/29/2013 | | 9 | Plaintiff's Proof of Service . Filed by James Vasquez on behalf of DZ Bank AG Deutsche Zentral–Genossenschaft Bank AM Main, New York Branch. (Related document(s)1 Complaint, 2 Summons and Pretrial Conference (Seattle)). (Vasquez, James) (Entered: 01/29/2013 at 14:19:11) |
| 02/11/2013 | | 10 | Notice of Appearance *for Defendants Meyer* Filed by Marc S. Stern on behalf of Louis Phillipus Meyer, Lynn Meyer. (Stern, Marc) (Entered: 02/11/2013 at 09:38:07) |
| 02/13/2013 | | 11 | Mediation Certification. Filed by James Vasquez on behalf of DZ Bank AG Deutsche Zentral–Genossenschaft Bank AM Main, New York Branch. (Vasquez, James) (Entered: 02/13/2013 at 10:28:20) |
| 02/13/2013 | | | Minutes. Hearing Not Held. No Appearances. (related document(s): 12 Motion filed by Louis Phillipus Meyer, Lynn Meyer)(MJB ) (Entered: 02/21/2013 at 14:49:46) |
| 02/15/2013 | | 12 | Defendant's Motion *to Dismiss Count I of Complaint* with Notice of Hearing. Filed by Marc S. Stern on behalf of Louis Phillipus Meyer, Lynn Meyer The Hearing date is set for 3/13/2013 at 10:30 AM at Marysville Municipal Court. Response due by 3/6/2013. (Attachments: # 1 Notice of Hearing # 2 Proposed Order) (Stern, Marc) Modified on 2/15/2013 to show correct hearing date (Isreal, Sandra). (Entered: 02/15/2013 at 11:50:48) |
| 02/15/2013 | | 13 | Mediation Certification. Filed by Marc S. Stern on behalf of Louis Phillipus Meyer, Lynn Meyer. (Stern, Marc) (Entered: 02/15/2013 at 14:33:25) |
| 03/06/2013 | | 14 | Amend Complaint. *Defendant not added.* Defendants not added. Amending: *Adding Count against Louis Meyer only under 523(a)(2)(A), amending text of original complaint, and adding* |

| | | | |
|---|---|---|---|
| | | | *exhibits*. (Related document(s)1 Complaint)... Filed by James Vasquez on behalf of DZ Bank AG Deutsche Zentral–Genossenschaft Bank AM Main, New York Branch. (Attachments: # 1 Exhibit # 2 Exhibit # 3 Exhibit # 4 Exhibit # 5 Exhibit # 6 Exhibit # 7 Exhibit # 8 Exhibit # 9 Exhibit # 10 Exhibit # 11 Exhibit # 12 Exhibit # 13 Exhibit # 14 Exhibit # 15 Exhibit # 16 Exhibit) (Vasquez, James) (Entered: 03/06/2013 at 16:12:00) |
| 03/07/2013 | | | Notice to Court of Intent to Argue. Date of Hearing: 3/13/2013. Filed by Marc S. Stern on behalf of Louis Phillipus Meyer, Lynn Meyer. (Related document(s)12 Motion). (Stern, Marc) Modified on 3/7/2013 to add docket relationship) (Isreal, Sandra). (Entered: 03/07/2013 at 11:06:07) |
| 03/07/2013 | | 15 | Proof of Service *Re 26(a) Disclosures*. Filed by James Vasquez on behalf of DZ Bank AG Deutsche Zentral–Genossenschaft Bank AM Main, New York Branch. (Related document(s)1 Complaint). (Vasquez, James) (Entered: 03/07/2013 at 11:09:34) |
| 03/07/2013 | | | Set Hearing (Related document(s)12 Motion to Dismiss Count I of Complaint). The Hearing date is set for 3/13/2013 at 10:30 AM at Marysville Municipal Court. (SJI) (Entered: 03/07/2013 at 11:24:13) |
| 03/08/2013 | | 16 | Plaintiff's Response to *Defendant's Motion to Dismiss Count 1* (Related document(s)12 Motion)... Filed by James Vasquez on behalf of DZ Bank AG Deutsche Zentral–Genossenschaft Bank AM Main, New York Branch. (Vasquez, James) Modified on 3/8/2013 (wrong case number for adversary) (Isreal, Sandra). (Entered: 03/08/2013 at 11:08:25) |
| 03/08/2013 | | 17 | Reply *of Defendants in Support of Motion to Dismiss and Strike Amended Complaint* (Related document(s)12 Motion). Proof of Service. Filed by Marc S. Stern on behalf of Louis Phillipus Meyer, Lynn Meyer. (Stern, Marc) (Entered: 03/08/2013 at 15:18:30) |
| 03/11/2013 | | | Minutes. Hearing Not Held. (related document(s): 2 Summons and Pretrial Conference (Seattle)) Continued Hearing scheduled for 03/13/2013 at 10:30 AM at Marysville Municipal Court. (MJB ) (Entered: 03/11/2013 at 12:02:01) |
| 03/13/2013 | | | Minutes. Hearing Held. Appearances: James Vasquez, Mark Stern. Future hearings in this case to be noted in Seattle. (related document(s): Set Hearing) (MJB ) (Entered: 03/21/2013 at 08:23:57) |
| 03/13/2013 | | | Minutes. Hearing Held. Appearances: James Vasquez, Marc Stern. Scheduling order setting trial date to be issues by chambers. (related document(s): 2 Summons and Pretrial Conference (Seattle)) Trial is scheduled for 10/22/2013 and 10/24/2013 at 09:30 AM at Judge Overstreet's Courtroom, U.S. Courthouse, Room 7206. (MJB ) (Entered: 03/21/2013 at 08:52:07) |
| 03/26/2013 | | 18 | Answer to Amended Complaint (Related document(s)14 Amend Complaint). Proof of Service. Filed by Marc S. Stern on behalf of Louis Phillipus Meyer, Lynn Meyer. (Stern, Marc) (Entered: 03/26/2013 at 15:41:16) |
| 04/02/2013 | | 19 | |

| | | | |
|---|---|---|---|
| | | | Notice of Presentation of Order. Description: *Order on Motion to Dismiss Count I (Fraud) heard by court on 3/13/13* Filed by Marc S. Stern on behalf of Louis Phillipus Meyer, Lynn Meyer. Presentment to be held on 4/10/2013 at 10:30 AM at Marysville Municipal Court. (Stern, Marc) (Entered: 04/02/2013 at 10:33:19) |
| 04/04/2013 | | | Notice to Court of Intent to Argue. Date of Hearing: 4/10/2013. Filed by Marc S. Stern on behalf of Louis Phillipus Meyer, Lynn Meyer. (Related document(s)19 Notice of Presentation of Order). (Stern, Marc) (Entered: 04/04/2013 at 11:43:37) |
| 04/04/2013 | | 20 | Plaintiff's Response to *Defendant's Proposed Order on Defendant's Motion to Dismiss Count 1 of Plaintiff's Original Complaint* (Related document(s)19 Notice of Presentation of Order)... Filed by James Vasquez on behalf of DZ Bank AG Deutsche Zentral–Genossenschaft Bank AM Main, New York Branch. (Attachments: #1 Proposed Order) (Vasquez, James) (Entered: 04/04/2013 at 15:36:14) |
| 04/10/2013 | | 21 | ORDER On Motion to Dismiss (Related Doc #12) . (SJI) (Entered: 04/10/2013 at 09:35:06) |
| 04/10/2013 | | | Minutes. Hearing Not Held. No Appearances. (related document(s): 19 Notice of Presentation of Order filed by Louis Phillipus Meyer, Lynn Meyer) (MJB ) (Entered: 04/18/2013 at 12:42:21) |
| 04/12/2013 | | 22 | BNC Certificate of Notice (Related document(s)21 Order Re Motion to). Notice Date 04/12/2013. (Admin.) (Entered: 04/12/2013 at 21:56:06) |
| 04/15/2013 | | 23 | Notice of *Absence / Unavailability of Counsel* Filed by Marc S. Stern on behalf of Louis Phillipus Meyer, Lynn Meyer. (Stern, Marc) (Entered: 04/15/2013 at 14:15:01) |
| 04/15/2013 | | 24 | Notice of Trial and ORDER Setting Deadlines . (SJI) (Entered: 04/15/2013 at 15:27:24) |
| 04/17/2013 | | 25 | BNC Certificate of Notice (Related document(s)24 Notice of Trial and Order Setting Deadlines). Notice Date 04/17/2013. (Admin.) (Entered: 04/17/2013 at 21:50:50) |
| 04/24/2013 | | 26 | Defendant's Motion *to Dismiss Counts I and II of Amended Complaint and Summary Judgment of Dismissal of Count III* with Notice of Hearing. Proof of Service. Filed by Marc S. Stern on behalf of Louis Phillipus Meyer, Lynn Meyer The Hearing date is set for 6/7/2013 at 09:30 AM at Judge Overstreet's Courtroom, U.S. Courthouse, Room 7206. Response due by 5/31/2013. (Attachments: #1 Notice of Hearing #2 Brief in Support of Motion) (Stern, Marc) (Entered: 04/24/2013 at 18:13:08) |
| 04/24/2013 | | 27 | Declaration *of Louis Meyer* (Related document(s)26 Motion)... Filed by Marc S. Stern on behalf of Louis Phillipus Meyer. (Attachments: #1 Exhibit 1 #2 Exhibit 2 #3 Exhibit 3 #4 Exhibit 4 #5 Exhibit 5 #6 Exhibit 6 #7 Exhibit 7) (Stern, Marc) (Entered: 04/24/2013 at 18:41) |
| 04/24/2013 | | 28 | Supplemental Filing of *Exhibits 8–17 to Declaration of Louis Meyer*. Filed by Marc S. Stern on behalf of Louis Phillipus Meyer. |

| | | | |
|---|---|---|---|
| | | | (Related document(s)27 Declaration). (Attachments: #_1 Exhibit 9 #_2 Exhibit 10 #_3 Exhibit 11 #_4 Exhibit 12 #_5 Exhibit 13 #_6 Exhibit 14 #_7 Exhibit 15 #_8 Exhibit 16 #_9 Exhibit 17) (Stern, Marc) (Entered: 04/24/2013 at 18:23:47) |
| 04/24/2013 | | 29 | Supplemental Filing of *Exhibit 18 to Declaration of Louis Meyer.* Filed by Marc S. Stern on behalf of Louis Phillipus Meyer. (Related document(s)27 Declaration). (Stern, Marc) (Entered: 04/24/2013 at 18:25:35) |
| 04/24/2013 | | 30 | Supplemental Filing of *Exhibit 19 Part 1 to Declaration of Louis Meyer.* Filed by Marc S. Stern on behalf of Louis Phillipus Meyer. (Related document(s)27 Declaration). (Stern, Marc) (Entered: 04/24/2013 at 18:31:33) |
| 04/24/2013 | | 31 | Supplemental Filing of *Exhibit 19 Part 2 to Declaration of Louis Meyer.* Filed by Marc S. Stern on behalf of Louis Phillipus Meyer. (Related document(s)27 Declaration). (Stern, Marc) (Entered: 04/24/2013 at 18:32:47) |
| 04/24/2013 | | 32 | Supplemental Filing of *Exhibits 20–22 to Declaration of Louis Meyer.* Filed by Marc S. Stern on behalf of Louis Phillipus Meyer. (Related document(s)27 Declaration). (Attachments: #_1 Exhibit 21 #_2 Exhibit 22) (Stern, Marc) (Entered: 04/24/2013 at 18:36:06) |
| 04/24/2013 | | 33 | Supplemental Filing of *Exhibit 23 Part 1 to Declaration of Louis Meyer.* Filed by Marc S. Stern on behalf of Louis Phillipus Meyer. (Related document(s)27 Declaration). (Stern, Marc) (Entered: 04/24/2013 at 18:42:50) |
| 04/24/2013 | | 34 | Supplemental Filing of *Exhibit 23 Part 2 to Declaration of Louis Meyer.* Filed by Marc S. Stern on behalf of Louis Phillipus Meyer. (Related document(s)27 Declaration). (Stern, Marc) (Entered: 04/24/2013 at 18:44:20) |
| 04/24/2013 | | 35 | Supplemental Filing of *Exhibit 23 Part 3 to Declaration of Louis Meyer.* Filed by Marc S. Stern on behalf of Louis Phillipus Meyer. (Related document(s)27 Declaration). (Stern, Marc) (Entered: 04/24/2013 at 18:45:30) |
| 04/24/2013 | | 36 | Supplemental Filing of *Exhibits 24 to 33 to Declaration of Louis Meyer.* Filed by Marc S. Stern on behalf of Louis Phillipus Meyer. (Related document(s)27 Declaration). (Attachments: #_1 Exhibit 25 #_2 Exhibit 26 #_3 Exhibit 27 #_4 Exhibit 28 #_5 Exhibit 29 #_6 Exhibit 30 #_7 Exhibit 31 #_8 Exhibit 32 #_9 Exhibit 33) (Stern, Marc) (Entered: 04/24/2013 at 18:53:45) |
| 05/15/2013 | | 37 | Defendant's Motion For Sanctions Under USC28 Section 1927 Attorney Liability for Excessive Costs *and Sanctions Under BR 9011* with Notice of Hearing. Proof of Service. Filed by Marc S. Stern on behalf of Louis Phillipus Meyer, Lynn Meyer The Hearing date is set for 6/7/2013 at 09:30 AM at Judge Overstreet's Courtroom, U.S. Courthouse, Room 7206. Response due by 5/31/2013. (Attachments: #_1 Notice of Hearing #_2 Proposed Order) (Stern, Marc) (Entered: 05/15/2013 at 16:35:28) |
| 05/21/2013 | | 38 | Notice of Withdrawal and Substitution of Counsel for Plaintiff DZ Bank/Plaintiff's Notice of Appearance . Filed by Michael W Johns on behalf of DZ Bank AG Deutsche Zentral–Genossenschaft Bank |

| | | | |
|---|---|---|---|
| | | | AM Main, New York Branch. (Johns, Michael) Modified on 5/22/2013; added text; edited party; contacted filer (Brazil, Victoria). (Entered: 05/21/2013 at 11:33:40) |
| 05/31/2013 | | 39 | Plaintiff's Response to *Debtor's Motion to Dismiss and for Summary Judgment*. Proof of Service. Filed by Michael W Johns on behalf of DZ Bank AG Deutsche Zentral–Genossenschaft Bank AM Main, New York Branch. (Attachments: #_1 Exhibit A, part 1 #_2 Exhibit A, part 2 #_3 Exhibit A, part 3 #_4 Exhibit A, part 4 #_5 Exhibit A, part 5 #_6 Exhibit B, part 1 #_7 Exhibit B, part 2 #_8 Exhibit B, part 3 #_9 Exhibit B, part 4 #_10 Exhibit C, part 1 #_11 Exhibit C, part 2 #_12 Exhibit D) (Johns, Michael). Related document(s)_26 Defendant's Motion *to Dismiss Counts I and II of Amended Complaint and Summary Judgment of Dismissal of Count III* filed by Defendant Louis Phillipus Meyer, Defendant Lynn Meyer. Modified on 6/3/2013; added link, contacted filer (Brazil, Victoria). (Entered: 05/31/2013 at 15:58:44) |
| 05/31/2013 | | 40 | Plaintiff's Response to *Motion for Sanctions*. Proof of Service. Filed by Michael W Johns on behalf of DZ Bank AG Deutsche Zentral–Genossenschaft Bank AM Main, New York Branch. (Attachments: #_1 Exhibit To Motion for Sanctions) (Johns, Michael). Related document(s)_37 Defendant's Motion For Sanctions Under USC28 Section 1927 Attorney Liability for Excessive Costs *and Sanctions Under BR 9011* filed by Defendant Louis Phillipus Meyer, Defendant Lynn Meyer. Modified on 6/3/2013; added link, contacted filer (Brazil, Victoria). (Entered: 05/31/2013 at 16:46:49) |
| 06/03/2013 | | | Notice to Court of Intent to Argue. Date of Hearing: 6/7/2013. Filed by Marc S. Stern on behalf of Louis Phillipus Meyer, Lynn Meyer. (Related document(s)_26 Motion, _37 Motion for Sanctions Under USC28 Section 1927). (Stern, Marc) (Entered: 06/03/2013 at 10:35:58) |
| 06/04/2013 | | 41 | Reply *and MOTION to Strike* (Related document(s)_26 Motion)... Filed by Marc S. Stern on behalf of Louis Phillipus Meyer, Lynn Meyer. (Stern, Marc) Modified on 6/5/2013; motion portion of filing is not on as a motion; contacted filer (Brazil, Victoria). Modified on 6/5/2013; per chambers, filing is OK as is, contacted filer. (Brazil, Victoria). (Entered: 06/04/2013 at 18:44:51) |
| 06/07/2013 | | | Audio CD Request. Hearing Date and Time: 6/7/13 Ruling, Judge Overstreet presiding. Other Info: Please mail CD to Ahearn &Associates, Inc. (Maple Valley).. Requested by: Marc Stern, representing Defendants Meyer... . (Transcriber – Wheeler, Shari) (Entered: 06/07/2013 at 15:31:14) |
| 06/07/2013 | | | Minutes. Hearing Held. Appearances: Marc Stern for the defendants, Alex Darcy for DZ Bank. Motion denied, order to be entered. (related document(s): _26 Motion filed by Louis Phillipus Meyer, Lynn Meyer) (MJB ) (Entered: 06/13/2013 at 12:40:34) |
| 06/07/2013 | | | Minutes. Hearing Held. Appearances: Marc Stern for the defendants, Alex Darcy for DZ Bank. Motion denied, order to be entered. (related document(s): _37 Motion for Sanctions Under USC28 Section 1927 filed by Louis Phillipus Meyer, Lynn Meyer) (MJB ) (Entered: 06/13/2013 at 12:41:43) |

| | | | |
|---|---|---|---|
| 06/10/2013 | | | Audio CD Request. Hearing Date and Time: 6/7/13 argument and ruling. Other Info: Please mail CD to Ahearn &Associates, Inc. (Maple Valley).. Requested by: Alex Darcy, representing Plaintiffs.. *The audio for the ruling was ordered on 6/7, but now I need audio for entire hearing*. (Transcriber – Wheeler, Shari) (Entered: 06/10/2013 at 10:52:22) |
| 07/01/2013 | | 42 | Transcript regarding Hearing Held 06/07/2013 RE: Court's Ruling. Remote electronic access to the transcript is restricted until 09/30/2013. The transcript may be viewed at the Bankruptcy Court Clerk's Office. Contact the Court Reporter/Transcriber Shari L. Wheeler at, Telephone number 425.433.8064 or email AhearnAndAssoc@comcast.net.. Notice of Intent to Request Redaction Deadline Due By 7/8/2013. Redaction Request Due By 07/22/2013. Redacted Transcript Submission Due By 8/1/2013. Transcript access will be restricted through 09/30/2013. (Transcriber – Wheeler, Shari) Modified on 10/2/2013; unrestricted access (Brazil, Victoria). (Entered: 07/01/2013 at 08:54:01) |
| 07/01/2013 | | 43 | Transcript regarding Hearing Held 06/07/2013 RE: Argument and ruling. Remote electronic access to the transcript is restricted until 09/30/2013. The transcript may be viewed at the Bankruptcy Court Clerk's Office. Contact the Court Reporter/Transcriber Shari L. Wheeler, Telephone number 425.433.8064 or email AhearnAndAssoc@comcast.net.. Notice of Intent to Request Redaction Deadline Due By 7/8/2013. Redaction Request Due By 07/22/2013. Redacted Transcript Submission Due By 8/1/2013. Transcript access will be restricted through 09/30/2013. (Transcriber – Wheeler, Shari) Modified on 10/2/2013; unrestricted access (Brazil, Victoria). (Entered: 07/01/2013 at 17:13:55) |
| 07/02/2013 | | 44 | Transcript regarding Hearing Held 06/07/2013 RE: Argument and Ruling. Remote electronic access to the transcript is restricted until 09/30/2013. The transcript may be viewed at the Bankruptcy Court Clerk's Office. Contact the Court Reporter/Transcriber Shari L. Wheeler, Telephone number 425.433.8064 or email AhearnAndAssoc@comcast.net.. Notice of Intent to Request Redaction Deadline Due By 7/9/2013. Redaction Request Due By 07/23/2013. Redacted Transcript Submission Due By 8/2/2013. Transcript access will be restricted through 09/30/2013. (Transcriber – Wheeler, Shari) Modified on 10/2/2013; unrestricted access (Brazil, Victoria). (Entered: 07/02/2013 at 10:47:34) |
| 08/19/2013 | | 45 | Plaintiff's Motion *Amend Scheduling Order* with Notice of Hearing. Proof of Service. Filed by Michael W Johns on behalf of DZ Bank AG Deutsche Zentral–Genossenschaft Bank AM Main, New York Branch The Hearing date is set for 9/20/2013 at 09:30 AM at Judge Overstreet's Courtroom, U.S. Courthouse, Room 7206. Response due by 9/13/2013. (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Proposed Order) (Johns, Michael) (Entered: 08/19/2013 at 14:00:58) |
| 09/16/2013 | | 46 | Received UNSIGNED Order Forwarded to Chambers for Judge's Signature. Filed by Johns, Michael. Related document 45 (Entered: 09/16/2013 at 11:02:02) |
| 09/18/2013 | | 47 | ORDER Denying Motion to Amend Scheduling Order (Related Doc # 45) . (VAB) (Entered: 09/18/2013 at 14:24:16) |
| 09/19/2013 | | | |

| | | | |
|---|---|---|---|
| | | | Minutes. Hearing Not Held. Order entered denying motion to amend scheduling order. (related document(s): 45 Motion filed by DZ Bank AG Deutsche Zentral–Genossenschaft Bank AM Main, New York Branch) (MJB ) (Entered: 09/19/2013 at 12:10:16) |
| 09/23/2013 | | 48 | Witness &Exhibit Summary *of DZ Bank*. Proof of Service. Filed by Michael W Johns on behalf of DZ Bank AG Deutsche Zentral–Genossenschaft Bank AM Main, New York Branch. (Johns, Michael) (Entered: 09/23/2013 at 12:14:43) |
| 09/23/2013 | | 49 | Amended Witness &Exhibit Summary *of DZ Bank*. Proof of Service. Filed by Michael W Johns on behalf of DZ Bank AG Deutsche Zentral–Genossenschaft Bank AM Main, New York Branch. (Johns, Michael) (Entered: 09/23/2013 at 14:10:24) |
| 09/24/2013 | | 50 | Plaintiff's Statement *PreTrial*. Proof of Service. Filed by Michael W Johns on behalf of DZ Bank AG Deutsche Zentral–Genossenschaft Bank AM Main, New York Branch. (Johns, Michael) (Entered: 09/24/2013 at 12:40:30) |
| 10/02/2013 | | 51 | Defendant's Statement *Pretrial*... Filed by Marc S. Stern on behalf of Louis Phillipus Meyer, Lynn Meyer. (Stern, Marc) (Entered: 10/02/2013 at 17:47:06) |
| 10/04/2013 | | 52 | Supplemental Filing of *Defendant's Exhibit List*. Filed by Marc S. Stern on behalf of Louis Phillipus Meyer, Lynn Meyer. (Related document(s)51 Statement). (Stern, Marc) (Entered: 10/04/2013 at 05:40:11) |
| 10/04/2013 | | 53 | Supplemental Filing of *Defendant's Witness List*. Filed by Marc S. Stern on behalf of Louis Phillipus Meyer, Lynn Meyer. (Related document(s)51 Statement). (Stern, Marc) (Entered: 10/04/2013 at 11:41:59) |
| 10/11/2013 | | 54 | Plaintiff's Brief *for Trial*. Filed by Michael W Johns on behalf of DZ Bank AG Deutsche Zentral–Genossenschaft Bank AM Main, New York Branch. (Attachments: # 1 Exhibit 1) (Johns, Michael) (Entered: 10/11/2013 at 20:17:53) |
| 10/14/2013 | | 55 | Plaintiff's Brief *for Trial (Amended)*. Filed by Michael W Johns on behalf of DZ Bank AG Deutsche Zentral–Genossenschaft Bank AM Main, New York Branch. (Attachments: # 1 Exhibit 1 # 2 Exhibit Proposed Findings of Fact and Conclusions of Law) (Johns, Michael) (Entered: 10/14/2013 at 23:45:03) |
| 10/15/2013 | | | Notice to Court of Intent to Argue. Date of Hearing: 10/22/2013. Filed by Michael W Johns on behalf of DZ Bank AG Deutsche Zentral–Genossenschaft Bank AM Main, New York Branch. (Related document(s) Minutes Hearing Held, 24 Notice of Trial and Order Setting Deadlines). (Johns, Michael). Related document(s) 2 Summons and Pretrial Conference (Seattle). Modified on 10/15/2013; added link to put on calendar (Brazil, Victoria). (Entered: 10/15/2013 at 09:46:04) |
| 10/15/2013 | | 56 | Joint Stipulation by and between *the parties as to Proposed Pretrial Order*. Filed by Michael W Johns on behalf of DZ Bank AG Deutsche Zentral–Genossenschaft Bank AM Main, New York Branch. (Johns, Michael) Modified on 10/16/2013; PDF to be uploaded as RUO; contacted filer (Brazil, Victoria). (Entered: |

| | | | |
|---|---|---|---|
| | | | 10/15/2013 at 20:26:12) |
| 10/16/2013 | | 57 | Received UNSIGNED Order Forwarded to Chambers for Judge's Signature. Filed by Johns, Michael. Related document 24 (Entered: 10/16/2013 at 14:31:01) |
| 10/17/2013 | | 58 | Lodged ORDER: Submitted But Not Entered (Related document(s)24 Notice of Trial and Order Setting Deadlines). (VAB) (Entered: 10/17/2013 at 09:14:46) |
| 10/17/2013 | | 59 | Received UNSIGNED Order Forwarded to Chambers for Judge's Signature. Filed by Johns, Michael. Related document 24 (Entered: 10/17/2013 at 10:02:01) |
| 10/17/2013 | | 60 | Defendant's Notice of Presentation of Order. Description: *Order on Defendants' Second Motion to Dismiss and for Summary Judgment (Dkt 26) heard by court on 6/7/13* Filed by Marc S. Stern on behalf of Louis Phillipus Meyer, Lynn Meyer. Presentment to be held on 10/22/2013 at 09:30 AM at Judge Overstreet's Courtroom, U.S. Courthouse, Room 7206. (Stern, Marc) (Entered: 10/17/2013 at 15:28:21) |
| 10/17/2013 | | 61 | Received UNSIGNED Order Forwarded to Chambers for Judge's Signature. Filed by Stern, Marc. Related document 26 (Entered: 10/17/2013 at 15:31:02) |
| 10/17/2013 | | 62 | Defendant's Brief . Filed by Marc S. Stern on behalf of Louis Phillipus Meyer, Lynn Meyer. (Related document(s)24 Notice of Trial and Order Setting Deadlines). (Attachments: # 1 Pleading Proposed Findings of Fact) (Stern, Marc) (Entered: 10/17/2013 at 21:37:00) |
| 10/18/2013 | | 63 | Lodged ORDER: Submitted But Not Entered (Related document(s)26 Motion). (VAB) (Entered: 10/18/2013 at 11:40:41) |
| 10/18/2013 | | 64 | Pretrial ORDER. Trial set for October 22 and 24, 2013 at 9:30 am US Bankruptcy Court 700 Stewart St #7206 Seattle WA (Related document(s)24 Notice of Trial and Order Setting Deadlines). (VAB) (Entered: 10/18/2013 at 15:12:51) |
| 10/18/2013 | | 65 | Motion *in Limine to Exclude Evidence* with Notice of Hearing. Proof of Service. Filed by Michael W Johns on behalf of DZ Bank AG Deutsche Zentral–Genossenschaft Bank AM Main, New York Branch The Hearing date is set for 10/22/2013 at 09:30 AM at Judge Overstreet's Courtroom, U.S. Courthouse, Room 7206. Response due by 10/22/2013. (Johns, Michael) (Entered: 10/18/2013 at 23:20:43) |
| 10/18/2013 | | 66 | Motion *for Protective Order* with Notice of Hearing. Proof of Service. Filed by Michael W Johns on behalf of DZ Bank AG Deutsche Zentral–Genossenschaft Bank AM Main, New York Branch The Hearing date is set for 10/22/2013 at 09:30 AM at Judge Overstreet's Courtroom, U.S. Courthouse, Room 7206. Response due by 10/22/2013. (Attachments: # 1 Exhibit 1–2) (Johns, Michael) (Entered: 10/18/2013 at 23:24:49) |
| 10/19/2013 | | 67 | Brief *for Trial (Reply)*. Filed by Michael W Johns on behalf of DZ Bank AG Deutsche Zentral–Genossenschaft Bank AM Main, New |

| | | | |
|---|---|---|---|
| | | | York Branch. (Johns, Michael) (Entered: 10/19/2013 at 00:00:36) |
| 10/22/2013 | | 68 | Defendant's Response to *Motion in Limine* (Related document(s)65 Motion)... Filed by Marc S. Stern on behalf of Louis Phillipus Meyer, Lynn Meyer. (Attachments: #1 Exhibit 1) (Stern, Marc) (Entered: 10/22/2013 at 04:59:09) |
| 10/22/2013 | | 69 | Defendant's Objection *to Motion for Protective Order* (Related document(s)66 Motion)... Filed by Marc S. Stern on behalf of Louis Phillipus Meyer, Lynn Meyer. (Stern, Marc) (Entered: 10/22/2013 at 05:03:06) |
| 10/22/2013 | | 70 | Declaration *of Marc S. Stern* (Related document(s)66 Motion)... Filed by Marc S. Stern on behalf of Louis Phillipus Meyer, Lynn Meyer. (Attachments: #1 Exhibit 1 #2 Exhibit 2 #3 Exhibit 3 #4 Exhibit 4 #5 Exhibit 5 #6 Exhibit 6) (Stern, Marc) (Entered: 10/22/2013 at 05:06:07) |
| 10/22/2013 | | | Minutes. Trial Held. Additional trial date scheduled for 10/24/2013 and 11/12/2013. (related document(s): 2 Summons and Pretrial Conference (Seattle)) (MJB ) Modified on 4/4/2014 to add additional date. (Brannon, Morgan). (Entered: 04/04/2014 at 10:18:37) |
| 10/25/2013 | | 71 | ORDER on Defendants' Motion to Dismiss, Motion for Summary Judgment, and Motion for Sanctions (Related Doc #26, Doc #37) . (VAB) (Entered: 10/25/2013 at 07:59:33) |
| 11/08/2013 | | 72 | Defendant's Motion *for Order Granting Telephonic Witness Testimony* with Notice of Hearing. Filed by Marc S. Stern on behalf of Louis Phillipus Meyer, Lynn Meyer The Hearing date is set for 11/12/2013 at 09:30 AM at Judge Overstreet's Courtroom, U.S. Courthouse, Room 7206. Response due by 11/11/2013. (Stern, Marc) (Entered: 11/08/2013 at 14:15:41) |
| 11/08/2013 | | 73 | Declaration *of Susan L. Fullmer* (Related document(s)72 Motion)... Filed by Marc S. Stern on behalf of Louis Phillipus Meyer, Lynn Meyer. (Stern, Marc) (Entered: 11/08/2013 at 14:16:50) |
| 11/08/2013 | | 74 | Received UNSIGNED Order Forwarded to Chambers for Judge's Signature. Filed by Stern, Marc. Related document 72 (Entered: 11/08/2013 at 14:31:01) |
| 11/11/2013 | | 75 | Transcript regarding Hearing Held 10/22/2013 RE: trial. Remote electronic access to the transcript is restricted until 02/10/2014. The transcript may be viewed at the Bankruptcy Court Clerk's Office. Contact the Court Reporter/Transcriber Robyn Fiedler, Telephone number 425–433–8064.. Notice of Intent to Request Redaction Deadline Due By 11/18/2013. Redaction Request Due By 12/2/2013. Redacted Transcript Submission Due By 12/12/2013. Transcript access will be restricted through 02/10/2014. (Transcriber – Fiedler, Robyn) (Entered: 11/11/2013 at 09:45:31) |
| 11/11/2013 | | 76 | Transcript regarding Hearing Held 10/24/2013 RE: trial. Remote electronic access to the transcript is restricted until 02/10/2014. The transcript may be viewed at the Bankruptcy Court Clerk's Office. Contact the Court Reporter/Transcriber Robyn Fiedler, Telephone number 425–433–8064.. Notice of Intent to Request Redaction Deadline Due By 11/18/2013. Redaction Request Due By |

| | | | |
|---|---|---|---|
| | | | 12/2/2013. Redacted Transcript Submission Due By 12/12/2013. Transcript access will be restricted through 02/10/2014. (Transcriber – Fiedler, Robyn) (Entered: 11/11/2013 at 09:46:46) |
| 11/11/2013 | | 77 | Plaintiff's Brief *in Response to Defendants' Motion for Telephonic Witness Testimony*. Filed by Michael W Johns on behalf of DZ Bank AG Deutsche Zentral–Genossenschaft Bank AM Main, New York Branch. (Related document(s)72 Motion). (Johns, Michael) (Entered: 11/11/2013 at 14:04:34) |
| 11/15/2013 | | 78 | ORDER on Motion for an Order Granting Telephonic Witness Testimony (Related Doc # 72) . (VAB) (Entered: 11/15/2013 at 15:22:10) |
| 12/02/2013 | | | Audio CD Request. Hearing Date and Time: 11/12/13 trial. Other Info: Transcript ordered expedited. Please Mail CD to Ahearn &Associates, Inc. (Maple Valley) asap... Requested by: Askounis Darcy.. . (Transcriber – Wheeler, Shari) (Entered: 12/02/2013 at 13:09:54) |
| 12/31/2013 | | 79 | Supplemental Reply *Brief for Trial* (Related document(s)67 Brief)... Filed by Susan L Fullmer on behalf of Louis Phillipus Meyer, Lynn Meyer. (Fullmer, Susan) (Entered: 12/31/2013 at 10:15:51) |
| 01/14/2014 | | 80 | Findings of Fact &Conclusions of Law. (Related document(s)14 Amend Complaint). (VAB) (Entered: 01/14/2014 at 11:02:50) |
| 01/31/2014 | | 81 | Received UNSIGNED Order Forwarded to Chambers for Judge's Signature. Filed by Johns, Michael. Related document 14 (Entered: 01/31/2014 at 10:53:01) |
| 01/31/2014 | | 82 | Defendant's Objection *to PLAINTIFFS PROPOSED NON–DISCHARGEABLE JUDGMENT IN FAVOR OF DZ BANK AND AGAINST LOUIS PHILLIPUS MEYER AND LYNN MEYER, JOINTLY AND SEVERALLY* (Related document(s)81 Received UNSIGNED Order)... Filed by Susan L Fullmer on behalf of Louis Phillipus Meyer, Lynn Meyer. (Fullmer, Susan). Related document(s) 14 Amend Complaint filed by Plaintiff DZ Bank AG Deutsche Zentral–Genossenschaft Bank AM Main, New York Branch. Modified on 2/3/2014; added link (Brazil, Victoria). (Entered: 01/31/2014 at 20:57:00) |
| 02/03/2014 | | 83 | Lodged ORDER: Submitted But Not Entered (Related document(s)14 Amend Complaint). (VAB) (Entered: 02/03/2014 at 14:00:56) |
| 02/07/2014 | | 84 | Motion *to Present Judgment* with Notice of Hearing. Filed by Michael W Johns on behalf of DZ Bank AG Deutsche Zentral–Genossenschaft Bank AM Main, New York Branch The Hearing date is set for 2/26/2014 at 10:00 AM at Marysville Municipal Court. Response due by 2/19/2014. (Attachments: # 1 Proposed Judgment) (Johns, Michael) (Entered: 02/07/2014 at 10:16:30) |
| 02/10/2014 | | 85 | Defendant's Response *to Notice of Presentation of Judgment and Motion for Clarification* (Related document(s)80 Findings of Fact and Conclusions of Law, 84 Motion). Proof of Service. Filed by Marc S. Stern on behalf of Louis Phillipus Meyer, Lynn Meyer. (Stern, Marc) (Entered: 02/10/2014 at 12:28:31) |

| | | | |
|---|---|---|---|
| 02/11/2014 | | | Notice to Court Motion Withdrawn, Hearing Stricken on Date of Hearing: 2/26/2014. Filed by Michael W Johns on behalf of DZ Bank AG Deutsche Zentral–Genossenschaft Bank AM Main, New York Branch. (Related document(s)84 Motion). (Johns, Michael) (Entered: 02/11/2014 at 16:02:15) |
| 02/11/2014 | | 86 | Amended Motion *to Present Judgment* with Notice of Hearing. Filed by Michael W Johns on behalf of DZ Bank AG Deutsche Zentral–Genossenschaft Bank AM Main, New York Branch The Hearing date is set for 2/28/2014 at 09:30 AM at Judge Overstreet's Courtroom, U.S. Courthouse, Room 7206. Response due by 2/21/2014. (Attachments: # 1 Proposed Judgment) (Johns, Michael) Modified on 2/12/2014; added text; contacted filer re correct docket entry Notice of Presentation of Order (Brazil, Victoria). (Entered: 02/11/2014 at 16:08:21) |
| 02/18/2014 | | 87 | Defendant's Response *to Notice of Presentation of Judgment and Motion for Clarification* (Related document(s)86 Motion)... Filed by Marc S. Stern on behalf of Louis Phillipus Meyer, Lynn Meyer. (Stern, Marc) (Entered: 02/18/2014 at 10:52:03) |
| 02/21/2014 | | | Notice to Court of Intent to Argue. Date of Hearing: 2/28/2014. Filed by Michael W Johns on behalf of DZ Bank AG Deutsche Zentral–Genossenschaft Bank AM Main, New York Branch. (Related document(s)86 Motion). (Johns, Michael) (Entered: 02/21/2014 at 13:23:32) |
| 02/21/2014 | | 88 | Letter To and Subject: *Judge Overstreet – Request for Telephonic Appearance*. Filed by Michael W Johns on behalf of DZ Bank AG Deutsche Zentral–Genossenschaft Bank AM Main, New York Branch. (Related document(s)86 Motion). (Johns, Michael) (Entered: 02/21/2014 at 13:30:25) |
| 02/25/2014 | | 89 | Plaintiff's Reply *in Support of its Notice to Present Judgment and Response to Defendants' Motion for Clarification* (Related document(s)86 Motion)... Filed by Michael W Johns on behalf of DZ Bank AG Deutsche Zentral–Genossenschaft Bank AM Main, New York Branch. (Attachments: # 1 Exhibit Trial transcript) (Johns, Michael) (Entered: 02/25/2014 at 23:23:37) |
| 02/26/2014 | | | Minutes. Hearing Not Held. Matter has been withdrawn. (related document(s): 84 Motion filed by DZ Bank AG Deutsche Zentral–Genossenschaft Bank AM Main, New York Branch) (MJB ) (Entered: 03/05/2014 at 15:30:27) |
| 02/28/2014 | | 90 | JUDGMENT (Related document(s)14 Amend Complaint, 80 Findings of Fact and Conclusions of Law). Case Can Close: 3/21/2014. (VAB) (Entered: 02/28/2014 at 15:25:51) |
| 02/28/2014 | | | Minutes. Hearing Held. Appearances: Marc Stern for the defendant, Alex Darcy (telephonically) for the plaintiff. Order to be entered. (related document(s): 86 Motion filed by DZ Bank AG Deutsche Zentral–Genossenschaft Bank AM Main, New York Branch) (MJB ) (Entered: 03/04/2014 at 10:10:55) |
| 03/14/2014 | | 91 | Motion to Reconsider Filed by Michael W Johns on behalf of DZ Bank AG Deutsche Zentral–Genossenschaft Bank AM Main, New York Branch (Attachments: # 1 Exhibit A) (Johns, Michael) (Entered: 03/14/2014 at 13:31:07) |

| | | | |
|---|---|---|---|
| 03/14/2014 | | 92 | Debtor's Motion to Reconsider *Judgment entered on 2/28/14* Filed by Susan L Fullmer on behalf of Louis Phillipus Meyer, Lynn Meyer (Attachments: # 1 Exhibit Pl. Exhibit List) (Fullmer, Susan) (Entered: 03/14/2014 at 21:29:36) |
| 03/14/2014 | | 93 | Declaration *of Susan L. Fullmer* (Related document(s)92 Motion to Reconsider)... Filed by Susan L Fullmer on behalf of Louis Phillipus Meyer, Lynn Meyer. (Attachments: # 1 Exhibit E–mail Chain) (Fullmer, Susan) (Entered: 03/14/2014 at 21:31:39) |
| 03/31/2014 | | 94 | Letter From Chambers To: Counsel regarding deadline for responses and replies to motions for reconsideration. (Related document(s)91 Motion to Reconsider, 92 Motion to Reconsider). (Stevenson, Lauren) (Entered: 03/31/2014 at 12:22:14) |
| 04/10/2014 | | 95 | Application for Writ of Garnishment . Filed by Michael W Johns on behalf of DZ Bank AG Deutsche Zentral–Genossenschaft Bank AM Main, New York Branch . (VAB) (Entered: 04/11/2014 at 07:23:17) |
| 04/10/2014 | | 96 | Writ of Garnishment . (VAB) (Entered: 04/11/2014 at 07:24:34) |
| 04/14/2014 | | 97 | Response to (Related document(s)92 Motion to Reconsider). Proof of Service. Filed by Michael W Johns on behalf of DZ Bank AG Deutsche Zentral–Genossenschaft Bank AM Main, New York Branch. (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C # 4 Exhibit D) (Johns, Michael) (Entered: 04/14/2014 at 15:28:35) |
| 04/14/2014 | | 98 | Debtor's Response to *Plaintiff's Motion to Reconsider* (Related document(s)91 Motion to Reconsider)... Filed by Susan L Fullmer on behalf of Louis Phillipus Meyer, Lynn Meyer. (Attachments: # 1 Exhibit A email) (Fullmer, Susan) (Entered: 04/14/2014 at 23:55:44) |
| 04/21/2014 | | 99 | Plaintiff's Reply *in Support of its Motion for Reconsideration* (Related document(s)91 Motion to Reconsider). Proof of Service. Filed by Michael W Johns on behalf of DZ Bank AG Deutsche Zentral–Genossenschaft Bank AM Main, New York Branch. (Johns, Michael) (Entered: 04/21/2014 at 10:18:17) |
| 04/22/2014 | | 100 | Debtor's Reply *in Support of Debtor's Motion to Reconsider* (Related document(s)92 Motion to Reconsider)... Filed by Susan L Fullmer on behalf of Louis Phillipus Meyer, Lynn Meyer. (Fullmer, Susan) (Entered: 04/22/2014 at 01:46:36) |
| 05/02/2014 | | 101 | Answer To Writ of Garnishment (Related document(s)95 Writ of Garnishment or Execution, 96 Writ of Garnishment or Execution). .. Filed by DZ Bank AG Deutsche Zentral–Genossenschaft Bank AM Main, New York Branch . (VAB) (Entered: 05/02/2014 at 12:04:50) |
| 05/09/2014 | | 102 | ORDER on Defendants' Motion for Relief from Judgment (Related Doc # 92) . (VAB) (Entered: 05/09/2014 at 12:52:20) |
| 05/09/2014 | | 103 | ORDER Denying DZ Bank's Motion for Reconsideration and Clarifying Judgment (Related Doc # 91) . (VAB) (Entered: 05/09/2014 at 12:55:08) |
| 05/09/2014 | | 104 | |

| | | | |
|---|---|---|---|
| | | | Amended Findings of Fact and Conclusions of Law. . (VAB) (Entered: 05/09/2014 at 12:57:01) |
| 05/09/2014 | | 105 | AMENDED JUDGMENT (Related document(s)14 Amend Complaint, 80 Findings of Fact and Conclusions of Law, 90 Judgment). Case Can Close: 5/30/2014. (VAB) (Entered: 05/09/2014 at 13:36:37) |
| 05/11/2014 | | 106 | BNC Certificate of Notice (Related document(s)102 Order Re Motion to Reconsider). Notice Date 05/11/2014. (Admin.) (Entered: 05/11/2014 at 21:34:16) |
| 05/11/2014 | | 107 | BNC Certificate of Notice (Related document(s)103 Order Re Motion to Reconsider). Notice Date 05/11/2014. (Admin.) (Entered: 05/11/2014 at 21:34:16) |
| 05/11/2014 | | 108 | BNC Certificate of Notice (Related document(s)104 Findings of Fact and Conclusions of Law). Notice Date 05/11/2014. (Admin.) (Entered: 05/11/2014 at 21:34:16) |
| 05/11/2014 | | 109 | BNC Certificate of Notice (Related document(s)105 Judgment). Notice Date 05/11/2014. (Admin.) (Entered: 05/11/2014 at 21:34:16) |
| 05/13/2014 | | 110 | Affidavit *of Mailing* (Related document(s)96 Writ of Garnishment or Execution). Proof of Service. Filed by Michael W Johns on behalf of DZ Bank AG Deutsche Zentral–Genossenschaft Bank AM Main, New York Branch. (Johns, Michael) (Entered: 05/13/2014 at 14:37:23) |
| 05/13/2014 | | 111 | Affidavit *of Michael W. Johns*. Proof of Service. Filed by Michael W Johns on behalf of DZ Bank AG Deutsche Zentral–Genossenschaft Bank AM Main, New York Branch. (Attachments: # 1 Proof of Service Affidavit of Mailing) (Johns, Michael). Related document(s) 95 Writ of Garnishment or Execution filed by Plaintiff DZ Bank AG Deutsche Zentral–Genossenschaft Bank AM Main, New York Branch. Modified on 5/16/2014; added link (Brazil, Victoria). (Entered: 05/13/2014 at 14:50:08) |
| 05/16/2014 | | 112 | Affidavit of Claudette Meyer Asking Court to Reject DZ Bank Request for Judgment Against the Truste (Related document(s)84 Motion, 86 Motion, 91 Motion to Reconsider, 92 Motion to Reconsider). Proof of Service. Filed by Claudette Meyer . (VAB). Related document(s) 95 Writ of Garnishment or Execution filed by Plaintiff DZ Bank AG Deutsche Zentral–Genossenschaft Bank AM Main, New York Branch. Modified on 5/16/2014; added link (Brazil, Victoria). (Entered: 05/16/2014 at 11:50:31) |
| 05/23/2014 | | 113 | Plaintiff's Motion to Reconsider *Amended Judgment* Filed by Michael W Johns on behalf of DZ Bank AG Deutsche Zentral–Genossenschaft Bank AM Main, New York Branch (Attachments: # 1 Exhibit A) (Johns, Michael) (Entered: 05/23/2014 at 14:55:00) |
| 05/30/2014 | | 114 | ORDER Denying DZ Bank's Motion for Reconsideration as to Amended Judgment (Related Doc # 113) . (VAB) (Entered: 05/30/2014 at 08:03:05) |

| 06/01/2014 | | <u>115</u> | BNC Certificate of Notice (Related document(s)<u>114</u> Order Re Motion to Reconsider). Notice Date 06/01/2014. (Admin.) (Entered: 06/01/2014 at 21:37:42) |
|---|---|---|---|
| 06/13/2014 | | <u>116</u> | Notice of Appeal to District Court.Internal Appeal #14–S009, USDC Appeal #14–cv–869. Fee Due $ 298 (Related document(s)<u>80</u> Findings of Fact and Conclusions of Law,<u> 90</u> Judgment,<u> 102</u> Order Re Motion to Reconsider,<u> 103</u> Order Re Motion to Reconsider,<u> 104</u> Findings of Fact and Conclusions of Law,<u> 105</u> Judgment,<u> 114</u> Order Re Motion to Reconsider). Filed by Michael W Johns on behalf of DZ Bank AG Deutsche Zentral–Genossenschaft Bank AM Main, New York Branch. Record Transmission due by 07/11/2014, (Johns, Michael) Modified on 6/16/2014 to add appeal case numbers (Isreal, Sandra). (Entered: 06/13/2014 at 10:09:38) |
| 06/13/2014 | | | Receipt of filing fee for Notice of Appeal(13–01036–KAO) [appeal,97t2] ( 298.00). Receipt number 19514709. Fee amount $ 298.00. (U.S. Treasury) (Entered: 06/13/2014 at 10:12:37) |
| 06/13/2014 | | <u>117</u> | Election to Appeal to District Court . (Related document(s)<u>116</u> Notice of Appeal). Filed by Michael W Johns on behalf of DZ Bank AG Deutsche Zentral–Genossenschaft Bank AM Main, New York Branch. (Johns, Michael) (Entered: 06/13/2014 at 10:18:04) |

Entered on Docket January 14, 2014

**Below is the Order of the Court.**

Karen A. Overstreet
U.S. Bankruptcy Judge
**(Dated as of Entered on Docket date above)**

Karen A. Overstreet
Bankruptcy Judge
United States Courthouse
700 Stewart Street, Suite 6310
Seattle, WA 98101
206-370-5330

## IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| In re | Case No.  12-17379 |
| LOUIS PHILLIPUS MEYER and LYNN MEYER, | |
| Debtors. | |
| DZ BANK AG DEUTSCHE ZENTRAL-GENOSSENSCHAFTSBANK, FRANKFURT AM MAIN, NEW YORK BRANCH, | Adv. No.  13-01036-KAO |
| Plaintiff, | FINDINGS OF FACT AND CONCLUSIONS OF LAW |
| v. | |
| LOUIS PHILLIPUS MEYER and LYNN MEYER, | |
| Defendants. | |

Findings of Fact and Conclusions of Law - 1

This matter came before the Court for trial on October 22, 24, 2013 and November 12, 2013.  Plaintiff DZ Bank AG Deutsche Zentral-Genossenschaftsbank, Frankfurt AM Main, New York Branch ("DZ Bank") appeared through its counsel, Alex Darcy and Michael Johns, and Defendants Louis Phillipus Meyer and Lynn Meyer (the "Defendants") appeared through their counsel, Marc Stern and Susan Fulmer.   The Court has considered all of the evidence and testimony at trial and its records and files, and makes the following findings of fact and conclusions of law pursuant to Bankruptcy Rule 7054.

## I.    PRIOR PROCEEDINGS

This is an action by DZ Bank to except its claim against the Defendants from discharge under Bankruptcy Code §§ 523(a)(2)(A) and 523(a)(6).[1]  The amount of the claim is approximately $1.7 million. At a hearing on June 7, 2013, the Court heard Defendants' motion to dismiss and/or for summary judgment and dismissed DZ Bank's claims that transfers of insurance policy accounts by the Defendants occurring on October 28, 2008 and in April of 2010 (as more specifically described below) were actionable under either 523(a)(2) or (a)(6).  The Court found that DZ Bank was fully aware of those transfers and in fact supported the transfers. The Court denied the Defendants' motion to dismiss or for summary judgment as to the transfers of insurance policy accounts on December 1, 2010 and January 22, 2011 (as more specifically described below).  The order on the Court's ruling was entered on October 25, 2013, at Dkt. 71. The Court has considered all of the pleadings and records in this matter, and the evidence presented at trial, including the testimony of Patrick McShane and Jennifer Wikoff, which was submitted via deposition transcript.[2]

---

[1]  Unless otherwise indicated, all Code, Chapter, Section and Rule references are to the Bankruptcy Code, 11 U.S.C. §101 et seq. and to the Federal Rules of Bankruptcy Procedure, Rules 1001 et seq.

[2]  The Court gave both parties the opportunity to object to portions of the depositions, however, neither made any objections.  Accordingly, the Court considered the entire deposition transcripts.

Findings of Fact and Conclusions of Law - 2

## II.    FINDINGS OF FACT

1.      The parties stipulated facts contained in the pretrial order at Dkt. 64 are incorporated herein by this reference.

2.      Although Mr. Meyer was never licensed as a Certified Public Accountant, he has substantial experience, through education and employment, in accounting and finance.  He has been a businessman for many years and acted as the chief financial officer for a South African corporation for two years.  Mr. Meyer came to the United States from South Africa in 1993.  He has substantial work experience in the insurance industry including as an agent, sales manager and supervisor for Allstate Insurance Company.  Mr. Meyer was 54 years old at the time of trial. Mrs. Meyer also obtained the education and training necessary to become an insurance agent and she owned her own agencies.

3.      In June of 2001, Mr. Meyer purchased his first insurance agency, an Allstate agency called Goldman Meyer Agency.  He operated that agency for about six years.  In October of 2007, Mr. Meyer sold the Goldman Meyer Agency for $1.4 million.  Later in 2007, he and his wife purchased the books of business from two insurance agencies in Lakewood Washington, under the name of Lolynn Investors, LLC ("Lolynn") a company wholly owned by Mrs. Meyer. The purchase price for these agencies was $700,000.  In November of 2007, Lolynn transferred all of its assets, including the books of business it had acquired, to Meyer Insurance Agency, a company owned and controlled solely by Mr. Meyer.  Pretrial order, para. 12.

4.      On August 27, 2004, Brooke Credit Corporation ("BCC"), as seller, Brooke Credit Funding, LLC ("BCF"), as buyer and issuer, and Textron Business Services, Inc., as initial servicer, entered into a Sale and Servicing Agreement for the transfer of various loans then payable to BCC by third parties (the "Sale Agreement"). Ex. P-1. Also on August 27, 2004, BCF, as borrower, BCC, as seller, Brooke Corporation, as servicer and guarantor, Autobahn Funding Company, LLC ("Autobahn Funding"), as lender, and DZ Bank, as agent for Autobahn Funding, entered into a Credit and Security Agreement whereby Autobahn Funding agreed to

Findings of Fact and Conclusions of Law - 3

finance BCF's acquisition of various loans under the Sale Agreement. Ex. P-2.  On August 29, 2006, BCF, as borrower, BCC, as seller, Brooke Corporation, as subservicer and guarantor, Autobahn Funding, as lender, and DZ Bank, as agent for Autobahn Funding, entered into an Amended and Restated Credit and Security Agreement (the "Amended Security Agreement"). Ex. P-5.

5.      Under the Amended Security Agreement and subject to the terms and conditions therein, Autobahn Funding agreed to loan certain funds to BCF for BCF's purchase of various loans from BCC under the Sale Agreement.  To secure BCF's obligations to Autobahn Funding under the Amended Security Agreement, BCF granted DZ Bank, as Autobahn Funding's agent, a security interest in: (1) all of its right, title and interest in and to various loans that BCF had already purchased from BCC under the Sale Agreement; (2) all of its right, title and interest in and to various loans that BCF would be purchasing from BCC in the future under the Sale Agreement; and (3) various other collateral.  Ex. P-3, P-4.

6.      Cedric Probst, a Senior Vice President with the New York Branch of DZ Bank, testified as to the loan documents underlying the Brooke credit transactions as well as the loan documents between the Defendants and various Brooke entities.  Mr. Probst took over as the account manager for the Brooke credit account at DZ Bank in April of 2011.

7.      Mr. Meyer was the sole member and manager of Choice Cash Advance LLC ("Choice"). Pursuant to an Agreement for Purchase of Agency Assets dated as of January 25, 2008, Choice purchased five insurance agencies, including each of their books of business (the "Agency Assets"), for $1,911,235.20. Ex. P-6.  Mr. Meyer never had any direct contact with the sellers under that agreement; instead, the sale of these agencies was arranged by BCC and another subsidiary of Brook Corporation, Brook Capital Corp. ("BCAP").  BCC and BCAP executed an acknowledgment and agreement to the terms of the Agreement for Purchase.  Ex. P-6, Bates p. 245.  Although the Agreement for Purchase was dated as of January 25, 2008, the transaction did not actually close until January 31, 2008.

8.      On January 31, 2008, BCC, as lender, and Choice, as borrower, entered into a Promissory Note known as Loan No. 6779 (the "Note") [Ex. P-7] and an Agreement for

Advancement of Loan [Ex. P-8], in which BCC agreed to loan Choice $1,771,715.20 towards Choice's purchase of the Agency Assets under the Purchase Agreement. The "blue ink" Note and Allonge to Promissory Note (the "Allonge") were made available at trial. The Court inspected those documents and concludes that there is nothing irregular about the Note or the attached Allonge. Pursuant to the Allonge, BCC, dba Aleritas Capital, the lender under the Note, indorsed the Note payable to "Brooke Credit Funding, LLC", which in turn indorsed the Note payable to DZ Bank. The indorsements on the Allonge are not dated, however, the Court finds, based upon the testimony of Cedric Probst and Gage Zierlein, that the indorsements occurred on or before January 31, 2008.

9.     To secure Choice's obligations under the Note, Choice granted BCC a blanket security interest in all of Choice's assets, including the agency assets, accounts and rights to payment, and all proceeds therefrom (collectively, the "Collateral"), pursuant to a Commercial Security Agreement (the "Security Agreement"). Ex. P-10.

10.     The Collateral includes general intangibles, which include customer lists. The Collateral further includes the right to be "Agent of Record." On January 25, 2008, BCC filed a UCC-1 Financing Statement with the Washington Secretary of State as to all of Choice's assets (the "Financing Statement"). Ex. P-12. Exhibit P-11 lists the 17,000 insurance policies Choice acquired pursuant to the Agreement for Purchase of Agency Assets and which were initially included in the Collateral.

11.     The Defendants personally guaranteed repayment of the Note pursuant to a Guaranty (the "Personal Guaranty"). Ex. P-9. Mr. Meyer signed all of the documents on behalf of Choice. Mr. and Mrs. Meyer also each signed a noncompetition provision. Ex. P-8, p. 0266.

12.     On January 31, 2008, BCF sent a Borrowing Base Certificate to DZ Bank whereby it requested that Autobahn Funding advance funds to BCF under the Amended Security Agreement for its purchase of the Note and various other loans (the "Advance Request"). On January 31, 2008, Autobahn Funding loaned BCF $1,771,715.20 to purchase the Note from BCC.

13.     Choice also entered into a Franchise Agreement dated as of January 31, 2008

Findings of Fact and Conclusions of Law - 5

(the "Franchise Agreement") with BCAP as the franchisor.  Ex. D-3.  Pursuant to this agreement, BCAP promised to provide certain services to Choice in exchange for various fees and to serve as Choice's "Agent of Record" for all insurance policies which Choice originated.   Pursuant to the Franchise Agreement, Choice was required to pay a nonrefundable franchise fee of $165,000 for each of its five locations and to pay the greater of 15% of its monthly premium commissions or $500 per month.   Choice paid a total of $825,000 for the nonrefundable franchise fee.   Under the Franchise Agreement, in addition to acting as Choice's Agent of Record on all policies, BCAP provided access to at least 50 insurance companies with which Choice could work, paid for advertising, permitted Choice to use BCAP's management systems which tracked clients and premium payments, and enabled Choice to increase its commissions from the 10% rate paid to small agencies to 15-20% depending upon the insurance company.  Thus, the Franchise Agreement offered Choice some real economic benefits.

14.     In practice, pursuant to the terms of the Franchise Agreement, new policies were issued by Choice in the name of BCAP as Agent of Record in Washington.  Policy holders paid their premiums to BCAP, and BCAP retained its 15% commission from those premiums and paid the balance over to Choice.

15.     On May 12, 2008, representatives of BCC, conducting business as Aleritas Capital Corporation, signed a form 10-Q quarterly report pursuant to the Securities Exchange Act of 1934, covering the period ending March 31, 2008.  Ex. D-46.  On page 27 of that report, BCC discloses that as of March 31, 2008, it was not incompliance with all of the terms and conditions of its lending agreements with DZ Bank.  The report states that "DZ Bank has not issued a notice of default with respect to the facility and is in discussions with the Company's management to address these issues."  It further states: "The Company is not able to fund new

Findings of Fact and Conclusions of Law - 6

loans into the facility and it is unlikely the Company will be able to fund loans into the facility in the future.  The Company has announced it does not intend to use this facility in the future."  Thus, as of March of 2008, DZ Bank knew that BCC was not in compliance with the loan documents despite the fact that it had not formally declared BCC in default.

16.     By letter dated September 3, 2008, an attorney, on behalf of Choice and other franchisees of BCAP, advised BCAP that the franchisees considered BCAP to be in material default of their franchise agreements. Ex. D-8, p. 0071.  The letter demanded, among other things, that all of the franchisees be immediately paid their commissions and that they be released from their respective franchise agreements.  Thus, Mr. Meyer knew as early as September 3, 2008, the BCAP was not complying with its obligations under the franchise agreement with Choice.

17.     By letter dated September 29, 2008, Mr. Meyer executed a letter directed to BCAP in which he exercised Choice's right to terminate the franchise agreement effective 30 days from the date of the letter.  The letter demanded that BCAP make Mr. Meyer the Agent of Record for all of Choice's customer accounts. Ex. D-8, p. 0068.

18.     In or about October 2008, BCF defaulted on its obligations to DZ Bank under the Amended Security Agreement and DZ Bank exercised its rights against BCC.  By letter dated October 14, 2008 and signed by Patrick Preece and Jennifer Wikoff on behalf of DZ Bank, DZ Bank advised Choice that its loan from BCC had been assigned to BCF, which in turn had assigned the loan to DZ Bank as agent for Autobahn Funding.  The letter further advised that BCAP had agreed to the termination of the Franchise Agreement with Choice, effective only upon Choice's execution of the acknowledgment that is Ex. P-16 (the "Choice Acknowledgment").  The Choice Acknowledgment, which Mr. Meyer executed on behalf of

Choice on October 15, 2008, states that Choice agreed that the Note balance was $1,728,834.65, and reaffirms Choice's agreement to pay the loan to DZ Bank and to instruct all insurance carriers and other parties to pay all commissions owing to Choice directly to a "lock-box account or other account that is under the sole dominion and control of DZ Bank…." *Id.*  The Choice Acknowledgment further provides: "If, notwithstanding such instructions, we [referring to Choice] receive any such amounts directly, we will deposit such amounts into the Blocked Account as soon as practicable and in any event within two Business Days of our receipt. Pending such deposit, we will hold such amounts in trust for the benefit of DZ Bank." *Id.*

19.     By letter dated October 22, 2013, Jennifer Wikoff, on behalf of DZ Bank, notified Choice that it had received the executed copy of the Choice Acknowledgment signed by Mr. Meyer and that DZ Bank had consented to the termination of Choice's Franchise Agreement with BCAP.  The letter again instructed: "Please direct all insurance carriers and other parties to pay commissions and other amounts owing to you in accordance with the instructions set forth below, as contemplated by the Acknowledgement."  The letter included the name and account information for the lock box account contemplated by the Choice Acknowledgment.  Ex. P-18.

20.     As of the time the Choice Acknowledgment was executed, Defendants were well aware of BCAP's default under the Franchise Agreement and Choice itself was engaged in legal action to terminate its Franchise Agreement with BCAP.  At the time Mr. Meyer signed the Choice Acknowledgment, he was well aware that BCAP would no longer be providing any of the franchise services required by BCAP under the Franchise Agreement.

21.     On October 28, 2008, Brooke Corporation and BCAP filed for bankruptcy in the District of Kansas.  No bankruptcy was ever filed for BCF.  According to a Complaint filed in the District Court for the District of Kansas on May 4, 2011 (the "SEC Complaint"), by the Securities and Exchange Commission, the Brooke companies' bankruptcy proceedings were the

culmination of a "massive financial fraud conducted by the former senior management of Brooke Corporation, …Brooke Capital Corporation [BCAP], …and Aleritas Capital Corporation [as referenced in Ex. P-16, Aleritas Capital Corp. was formerly known as BCC]."   Ex. D-13, para. 1.  One of the officers named in the action was Kyle Garst, who was Mr. Meyer's contact with Brooke when he purchased the five insurance agencies at the beginning of 2008.  The SEC Complaint alleges that as early as January of 2008, "Garst knew of and should have known that Brooke Capital used funds earned by its franchisees on an intra-month basis to meet operating expenses and then scrambled to raise cash from other sources to 'settle' each month with profitable franchisees."  Ex. D-13, para. 63.  The SEC Complaint alleges that as of the time Choice purchased the five insurance agencies and entered into the Franchise Agreement, Brooke Corporation and BCAP were already in financial trouble and were concealing that fact in their public securities filings.  *Id.* at pp. 18-21.

22.    This is no evidence that DZ Bank or any of its representatives or employees had any knowledge of the "massive fraud" described in the SEC Complaint.   Had DZ Bank or any of its representatives or employees known of such fraud in January of 2008, when Choice entered into the Franchise Agreement with BCAP and the Note, Security Agreement and Personal Guaranty with BCC, it would not have been in DZ Bank's financial interest to make a loan to BCC to fund the Note.

23.    Once BCAP filed bankruptcy, its appointment as the Agent of Record under the Franchise Agreement was terminated and according to the testimony of Mr. Meyer, Choice was given 15 months to transfer its clients to a new Agent of Record.

24.    On October 30, 2008, DZ Bank, BCC, and BCF entered into a Surrender of Collateral, Consent to Strict Foreclosure, Release and Acknowledgement Agreement [Ex. P-14] and on October 31, 2008, DZ Bank and BCF entered into an Omnibus Assignment [Ex. P-15]. The effect of these documents was the transfer of the Choice Note and collateral documents, including the Personal Guaranty, to DZ Bank, as agent for Autobahn Funding Company LLC.

25.    Patrick McShane was a senior analyst at DZ Bank and was one of the individuals at the bank responsible for the Brooke credit.  After Brooke Corporation and BCAP filed

bankruptcy, and after the strict foreclosure, Mr. McShane was a point of contact with Choice and Mr. Meyer.  According to Mr. McShane's deposition testimony, the goal of DZ Bank was to ensure the continued flow of commissions from BCAP's franchisees, including Choice, so that those commissions could be used to pay back the franchisees' loans then held by DZ Bank.  To ensure that those commissions were paid to DZ Bank, the bank required that all commissions be paid into a lockbox account.  McShane dep., p. 13-14.

26.     During the time relevant to this matter, Jennifer Wikoff was the head of due diligence and a deputy to the department at DZ Bank, managing the credit team and coordinating completion of lending activities. Wikoff Dep. at 6.  She worked on the Brooke account,  meeting with management, walking through the facility, reviewing Brooke's collateral files and monitoring the internal operations.  Ms. Wikoff reported to Patrick Preece.  Id. at 60.  She testified that it was important that commissions be paid into the Autobahn lockbox.  Upon Brooke's default, she described the efforts she and her staff made to contact Brooke's clients, including BCAP's franchisees, and inform them that their payments should be redirected to a lockbox owned by DZ Bank.  Id. at 10.  One of those clients was Choice.   Ms. Wikoff admitted that after Brooke filed bankruptcy, "[M]any of the agents were confused and uncertain as to how to obtain their commission streams and how to keep their businesses afloat."  Id. at 12.   DZ Bank would not release any of the collateral, however, except upon full payment of the client's loan obligations.  Like Mr. McShane, Ms. Wikoff testified that DZ Bank was assisting the franchisees like Choice to get a new Agent of Record for their policies so they could continue to write new business.   She testified that if a franchisee was in default, any excess commissions coming into the lockbox would not be paid over to the franchisee.  Id. at 37.

27.     Mr. Meyer testified that when he began his communications with DZ Bank employees after the Brooke company bankruptcies, he assumed that DZ Bank, as the new entity with whom he was dealing, would be providing some or all of the franchise services of BCAP under the Franchise Agreement.  There is no evidence, however, that DZ Bank ever performed or agreed to perform any of BCAP's franchise duties under the Franchise Agreement.

Findings of Fact and Conclusions of Law - 10

28.     In fact, after BCAP's default under the Franchise Agreement, Choice lost all of the benefits of that agreement, including without limitation the benefits of the larger franchise operation, appointments with major insurance companies, commissions which were diverted by BCAP from Choice in July through September of 2008, loss of advertising and management services by BCAP, and lowered commission income.  BCAP also failed to pay rent due Choice's landlord at its Tacoma location.

29.     In or about October 2008, Choice, under the control of Mr. Meyer, transferred certain Agency Assets and other Collateral to Meyer Insurance, a company owned and controlled by him.  Also in or about October 2008, Choice, under the control of Mr. Meyer, transferred certain Agency Assets and other Collateral to Lolynn Investors, a company owned and controlled solely by Lynn Meyer.  These transfers will be collectively referred to as the "October 2008 Transfer."  Following the October 2008 Transfer, Choice had no assets, was insolvent, and according to Mr. Meyer's testimony at trial, was "an empty shell."

30.     Mr. McShane testified that DZ Bank did assist the franchisees in arranging for the designation of new agents of record where they did not have the ability to take on that designation themselves, but, he did not recall ever agreeing that Lolynn or Meyer Insurance could become the Agent of Record for Choice with respect to certain policies.  McShane Dep. at 22.

31.     On Defendants' Motion for Summary Judgment, the Court found as a matter of fact that Patrick Preece and Mr. McShane were aware of Choice's transfer of its policies to Lolynn and Meyer Insurance based upon the emails between Mr. Meyer, Mr. Preece and Mr. McShane that are Exhibits 28, 29, and 30 to the Declaration of Louis Meyer at Dkt. 28 (Exhibits 28, 29 and 30 at Dkt. 36).  The Court further concluded that because Mr. Preece and Mr. McShane were aware of these transfers and in essence acquiesced in the transfers, the transfers could not be the basis of Plaintiff's claims under Section 523(a)(2) or (a)(6).

32.     In March 2009, Mr. Meyer requested a loan modification from DZ Bank.  On March 10, 2009, DZ Bank, and Mr. Meyer entered into a forbearance agreement pursuant to which DZ Bank agreed to reduce the principal balance of the Note by 15% and require only

interest payments for a period of six months, from May 15, 2009 through October 15, 2009 (the "March 2009 Forbearance Agreement"). Ex. P-19. Mr. Meyer signed the March 2009 Forbearance Agreement on behalf of Choice.

33.     In accordance with the March 2009 Forbearance Agreement, DZ Bank reduced the principal balance of the Note to $1,524,219.66 and Choice made payments to DZ Bank totaling $52,119.57.

34.     The purpose of the March 2009 Forbearance Agreement, according to Mr. McShane, was to allow "the agents some breathing room given the chaos that the bankruptcy had created in terms of the stream of insurance commissions." McShane Dep. at 15. Mr. McShane testified that at no time did he intend to release DZ Bank's security interest in Choice's commission stream or release Choice from its loan obligation. *Id*. at 16. Instead, the agreement with Choice and other franchisees was that insurance commissions were to be paid directly to the lockbox, diverting them from the Brooke bankruptcy proceedings, to then be used first to pay the franchisees' loans to DZ Bank, then the excess would be made available to the franchisees. McShane Dep at 21.

35.     In October 2009, Mr. Meyer requested a second loan modification from DZ Bank and on October 14, 2009, DZ Bank, Choice and Mr. Meyer entered into a second forbearance agreement pursuant to which DZ Bank agreed to extend Choice's interest-only payments by an additional two months, from November 15, 2009 through December 15, 2009 (the "October 2009 Forbearance Agreement"). Mr. Meyer signed that agreement on behalf of Choice and Choice thereafter made payments to DZ Bank totaling $17,381.95. As of the date of that agreement, however, Choice had already transferred all of its assets to Lolynn and Meyer Insurance.

36.     In February of 2010, the Defendants commenced discussions with their attorney, Keith McClelland, ostensibly about estate planning. Ex. D-25. The Defendants had presented Mr. McClelland with their own set of estate planning documents, which Mr. McClelland testified were "a mess." Pursuant to a memorandum dated March 3, 2010, Mr. McClelland warned the Defendants about the fraudulent conveyance rules associated with certain transfers they

Findings of Fact and Conclusions of Law - 12

contemplated.  Ex. D-25.  It was Mr. McClelland's understanding that the Defendants desired to put a condominium they owned and their personal residence into a trust and they represented to him that these properties had no equity because of liens exceeding the property value.

37.     In April of 2010, Lolynn Investors, LLC and/or Meyer Insurance Agency agreed to sell to First Insurance Agency, Inc., insurance policies listed on a schedule attached to the agreement (the "April 2010 Sale Agreement").  Ex. P-21.  The Defendants had no interest in First Insurance Agency, Inc., which agreed to pay a purchase price of annual commissions from the transferred policies times 1.9, paid monthly.  The policies transferred to First Insurance Agency, Inc. are hereinafter referred to as the "First Insurance Policies."

38.     Mr. McShane testified that Mr. Meyer never provided him with a copy of the Buy/Sell Agreement between First Insurance Agency, Inc. as buyer and Lolynn and/or Meyer as seller, or disclose that sale to him.  McShane Dep. At 19.  He further testified that Mr. Meyer never disclosed to him that he was selling his company's insurance assets to third parties.  *Id.*

39.     In May 2010, Mr. Meyer requested a third loan modification from DZ Bank.  When Mr. Meyer requested the third loan modification, he knew about the transfer of the First Insurance Policies under the April 2010 Sale Agreement.  Ex. P-22.

40.     On May 20, 2010, DZ Bank, Choice and Mr. Meyer entered into a third forbearance agreement, pursuant to which reduced payments of $3,000 in principal plus accrued interest would be required for a period of three months, from June 15, 2010 through August 15, 2010 (the "May 2010 Forbearance Agreement").  Mr. Meyer signed the May 2010 Forbearance Agreement on behalf of Choice.

41.     In June of 2010, Mr. McClelland had the Defendants sign Wills which he prepared [Ex. D-26], Durable Powers of Attorney [Ex. D-27], and a Directive to Physicians [Ex. D-28].

42.     On June 4, 2010, the Defendants also signed The Meyer Irrevocable Trust, prepared by Mr. McClelland (the "Meyer Trust").  Both Mr. and Mrs. Meyer signed the Trust Declaration [Ex. P-23] and both understood the purposes of the Meyer Trust.  Claudette Meyer, the Defendants' daughter, is the trustee of the Meyer Trust, and Mr. and Mrs. Meyer are the

primary beneficiaries.  Ex. P-23.  Although Claudette Meyer is named as the trustee under the Meyer Trust, the Court finds that all actions of the trust were the result of decisions made by the Defendants.

43.     The Defendants transferred their condominium in Lakewood, Washington, into the Meyer Trust as well as their personal residence in Edmonds, Washington. The Meyer Trust paid no consideration to the Defendants for these properties.  The Meyer Trust entered into a Residential Lease dated as of December 30, 2010, as to the residence, leasing it to the Defendants for $2,300 per month.  Ex. P-24.  The Meyer Trust entered into a Residential Lease dated as of December 30, 2010 as to the Lakewood condominium, leasing it to the Defendants for $667.75 per month.  Ex. P-25.  Claudette Meyers admitted at trial that the lease payments cover only expenses related to the properties and do not represent fair market value lease rates. Mr. McClelland testified that the leases at Ex. P-24 and P-25 were not in the same form as the leases he drafted for the Defendants; the leases he drafted provided for higher rents.  The Defendants used the forms of lease prepared by Mr. McClelland but changed the amount of rent so that it covered the mortgage and tax expense only.

44.     Mr. McClelland testified that the Defendants never asked him about transferring their business assets into the trust; instead, his only conversations with them concerned the transfer of their life insurance policies and real properties.  Had they asked him about transferring business assets into the Meyer Trust, Mr. McClelland testified that he would have discussed the fraudulent conveyance issues with them, including the need for an exchange of fair consideration.

45.     Mr. Meyer testified that some time prior to December 2010, he purchased a company called Insurance Choices 4 U, Inc. ("Insurance Choices") for $200 from a family friend.  In December of 2010, Mr. Meyer testified that he had all of the remaining assets of Meyer Insurance transferred to Insurance Choices, then he had the Meyer Trust purchase all of the stock of Insurance Choices (the "December 2010 Stock Sale").  Claudette Meyer also testified that the Meyer Trust owned 100% of the stock of Insurance Choices.  No documents were submitted into evidence substantiating these transfers and there is no evidence of any

Findings of Fact and Conclusions of Law - 14

consideration flowing between any of these entities.  The only documents which were admitted at trial which pertain to these transfers are the documents in Exhibit P-26, which reference that effective December 1, 2010, Meyer Insurance changed its name to Insurance Choices and that Meyer Insurance merged with Insurance Choices.  Because there was no testimony at trial concerning these name change documents, it is not clear how the documents were used.  However, each document is signed by Mr. Meyer as president of Meyer Insurance and as president of Insurance Choices.

46.     In connection with the December 2010 Stock Sale, Insurance Choices, while under the control of the Meyer Trust, agreed to pay $385,000 to Mr. Meyer over time; $370,000 of that amount was allocated for the transfer of the Agency Assets and other insurance policies, and $15,000 was allocated for equipment and other personal property.  The $385,000 was alleged by the Defendants to be the amount of a loan Meyer Insurance owed to Mr. Meyer (the "Shareholder Loan").  There was no evidence at trial, however, of any underlying loan documents or any accounting for that loan.  Claudette Meyer testified, without any documentary corroboration, that Meyer Insurance owed Mr. Meyer $1.7 million, but that Mr. Meyer agreed to "walk away from" $1.4 million.

47.     From December 2010 through the present, Insurance Choices has been making payments to Louis Meyer under the alleged Shareholder Loan.

48.     The December 2010 Stock Sale included substantially all of Meyer Insurance's remaining assets.  Following the December 2010 Stock Sale, Meyer Insurance had no assets and was insolvent.

49.     The last payment Choice made to DZ Bank was January 15, 2011.

50.     On January 22, 2011, Insurance Choices, as seller, and Connect Insurance Agency, Inc. ("Connect Insurance"), as buyer, entered into a Buy Sell Agreement – Bill of Sale [Ex. P-30] for the transfer of Insurance Choice's interest in various insurance policies (the "January 2011 Sale Agreement").  Under the January 2011 Sale Agreement, as consideration for the transfer of Agency Assets, other collateral and other insurance policies, Connect Insurance

agreed to pay Insurance Choices all commissions received via the transferred policies for a period of nine months.

51.     From about January 2011 through about September 2011, Connect made payments to Insurance Choices under the January 2011 Sale Agreement.  From about September 2011 through the present, Connect Insurance continues to make payments to Insurance Choices under an Independent Contractor Producer Agreement.  Under the January 2011 Sale Agreement, Insurance Choices transferred substantially all of its assets and following that sale, Insurance Choices had no assets and was insolvent.

52.     Mr. McShane testified that he had never seen the Buy/Sell Agreement Bill of Sale between Insurance Choices 4 You and Connect Insurance and that Mr. Meyer never disclosed that sale to him.  McShane Dep. at 24, 25.  He further testified that Mr. Meyer never disclosed to him that Mr. Meyer was transferring all of his personal assets to a family trust.  Id. at 25.  Given that Mr. Meyer had personally guaranteed the Choice Note, the fact that Mr. Meyer was transferring all of his personal assets to a family trust would have been "critical information" to Mr. McShane.  Id. at 25.

53.     On or about February 15, 2011, Choice defaulted under the Note by failing to make payments when due.

54.     On March 23, 2011, DZ Bank, Choice and Mr. Meyer entered into a fourth forbearance agreement [Ex. P-31] pursuant to which reduced payments of $3,000 in principal plus accrued interest would resume on April 15, 2011 and continue through August 15, 2011, and the outstanding payments due under the Note would be due upon maturity of the Note (the "March 2011 Forbearance Agreement").

55.     Mr. Meyer signed the March 2011 Forbearance Agreement on behalf of Choice. At the time Mr. Meyer signed that agreement, he knew that all of the Agency Assets and the Collateral had by that time been transferred to entities not controlled by him, *i.e.*, First Insurance and Connect Insurance.

Findings of Fact and Conclusions of Law - 16

56.     On April 15, 2011, Choice again defaulted under the Note by failing to make payments when due.  On the same date, the Defendants defaulted under their Personal Guaranty by failing to make the payments when due under the Note.

57.     The Defendants created the Meyer Trust and transferred their personal and corporate assets into the Meyer Trust in order to protect their assets from DZ Bank rather than for personal estate planning purposes.  Mr. Meyer's execution of multiple forbearance agreements with DZ Bank, pursuant to which he represented that Choice continued to accept insurance commissions in Trust for DZ Bank and in which he agreed that Choice continued to be liable to DZ Bank, without advising DZ Bank of the transfers of the Collateral to Insurance Choices and Connect Insurance, was intended to conceal from DZ Bank that its Collateral was being put beyond its reach.

58.     On August 9, 2011, DZ Bank filed its complaint against Choice and the Defendants in the United States District Court for the Western District of Washington as Case No. 11-1312-JLR, for breach of the Note and Personal Guaranty (the "District Court Matter").

59.     On July 16, 2012, the Defendants filed a voluntary petition in bankruptcy under Chapter 7 of the Bankruptcy Code.  Defendants listed DZ Bank on Schedule F of their petition as a nonpriority unsecured creditor.

60.     On March 5, 2013, the District Court Clerk entered a final judgment in favor of DZ Bank and against Choice in the amount of $1,710,469.93 (the "District Court Judgment"). Choice appealed the District Court Judgment to the Ninth Circuit Court of Appeals.  The District Court Matter was stayed against the Defendants by their bankruptcy filing.

61.     Choice has no assets available to pay the District Court Judgment and DZ Bank has not recovered any amount from Choice.

62.     No UCC financing statement was filed by DZ Bank against the Defendants, Lolynn, Connect Insurance or Insurance Choices as debtors and neither Defendants, Lolynn, Connect Insurance, nor Insurance Choices entered into a security agreement naming DZ Bank or any of its agents as a secured creditor.  There is no evidence that any officer or employee of

Connect Insurance had any knowledge that insurance policies transferred to it might be subject to the lien of DZ Bank.

63.    Exhibit P-61 is a list of all insurance policies transferred by Insurance Choices to Connect Insurance.  Exhibit P-62 is a list of all insurance policies that were initially the property of Choice and part of the Collateral.  Mr. Probst testified that at his direction, an attorney for DZ Bank compared the two exhibits and marked each policy transferred to Connect Insurance which had been part of the Collateral in yellow highlighter on Ex. P-61.  Mr. Probst testified that based upon this comparison, he believed that 32% of the accounts sold to Connect Insurance were part of the Collateral.  Although Mr. Meyer identified some of the highlighted accounts on Exhibit P-61 which he claimed were not originally part of the Collateral, the Court was not able to determine from his testimony whether or how much that would have reduced the 32% figure about which Mr. Probst testified.

64.    Mr. Meyer testified that when the insurance policies held by Meyer Insurance were transferred to Insurance Choices, those policies had a value of $385,000, as shown on the 2011 corporate income tax return for Insurance Choices [Ex. P-44, pp. 1373, 1383].  Mr. Meyer testified that when Insurance Choices transferred those assets to Connect Insurance, they had a fair market value of $328,000, which he determined by calculating the commissions from the policies for the first nine month period after the transfer in January of 2011.

65.    In December of 2010, Defendants transferred all of the assets of Meyer Insurance, including the insurance policies that comprised part of the Collateral, to Insurance Choices with the intent to hinder DZ Bank's enforcement of its security interest against those assets.  That transfer was made for no consideration.  Defendants fraudulently concealed that transfer from DZ Bank and thereafter entered into the March 2011 Forbearance Agreement in furtherance of

their concealment of the transfer.  Had DZ Bank known of the December 2010 transfer of the Collateral to Insurance Choices, it would have declared a default under the Note and enforced its rights against the Collateral.  Instead, DZ Bank entered into the March 2011 Forbearance Agreement, which extended Choice's obligation to pay until April 15, 2011.  Choice defaulted in making the payment on April 15, 2011, and DZ Bank declared a default under Note at that time.

66.     Defendants were understandably frustrated by the demise of BCAP and Brooke Corporation and their business suffered as a result of Brooke's demise.  However, Defendants knew that their actions in transferring the Collateral would injure DZ Bank and they had no just cause for transferring the Collateral so as to avoid DZ Bank's lien and retain the proceeds of the Collateral for themselves.

67.     As a consequence of Defendants' fraudulent concealment of the transfer of the Collateral from Meyer Insurance to Insurance Choices, DZ Bank was damaged in the amount of $385,000.[3]  Instead of paying over the proceeds of the Collateral to DZ Bank, the Defendants used those proceeds for their personal purposes.

68.     When Defendants authorized the sale of assets from Insurance Choices to Connect Insurance, Defendants effected a conversion of DZ Bank's Collateral for their own benefit.  As a consequence of this conversion, DZ Bank was damaged in the amount of $123,200 (32% of $385,000).

## III.     CONCLUSIONS OF LAW

1.     The Court has jurisdiction of this matter under 28 U.S.C. § 1334 and this is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

2.     DZ Bank has the burden of proving each of the elements of Sections 523(a)(2)

---

[3]  DZ Bank is not claiming any damages in connection with the transfer of Collateral by Lolynn and Meyer Insurance to First Insurance.

Findings of Fact and Conclusions of Law - 19

and 523(a)(6) by a preponderance of the evidence.  Exceptions to discharge are to be strictly construed in favor of the debtor and against the creditor.  Discharge, however, is reserved for the honest, but unfortunate debtor.

3.     At the outset of the trial, in an oral ruling on DZ Bank's motion in limine, the Court held that the Defendants were barred by collateral estoppel and res judicata from challenging the District Court Judgment against Choice.  The Court held, however, that the Defendants were not barred by either doctrine from arguing that BCAP and/or BCC committed fraud in the inducement when the Defendants entered into the Personal Guaranty with BCC as of January 31, 2008.

4.     Pursuant to Paragraph 39 of the Agreement for Advancement of Loan dated as of January 31, 2008 [Ex. P-8], between BCC and Choice, the State of Kansas is the choice of governing law, "except to the extent that the perfection of the interests in the Agency Assets is governed by the laws of a jurisdiction other than the State of Kansas."  BCC perfected its security interest in the Collateral by filing UCC financing statements in the State of Washington [Ex. P-12]; accordingly, the Court will apply Washington law to any question related to the perfection of DZ Bank's interest by assignment in the Collateral.  Pursuant to paragraph 13 of the Personal Guaranty signed by the Defendants [Ex P-9], the Personal Guaranty is governed by the "laws of the State in which it is executed."  Based upon the testimony of Mr. Meyer, the Court finds that the Personal Guaranty was signed in the State of Washington, therefore Washington law applies as to any issues related to the interpretation, validity or enforcement of the Personal Guaranty.

5.     Proof of fraud in the inducement under Kansas law requires proof by clear and convincing evidence that in order to induce a party to enter into a contract, the other contracting

Findings of Fact and Conclusions of Law - 20

party made (a) an untrue statement of fact, (b) known to be untrue by the party making it, (c) made with the intent to deceive or with reckless disregard for the truth, (d) upon which another party justifiably relied and acted to his or her detriment. *Alires v. McGehee*, 277 Kan. 398, 85 P.3d 1191 (2004).

6.     If DZ Bank is a holder in due course, fraud in the inducement on the part of BCC, BCAP or any other Brooke Corporation entity cannot be asserted against it. K.S.A. 84-3-305(b). Fraud in the inducement is a defense arising under K.S.A. 84-3-306(2) and not K.S.A. 84-3-306(1).

7.     DZ Bank has the burden of proving that it is a holder in due course. DZ Bank's status as a holder in due course is determined as of the time it took an assignment by indorsement of the Note. *Bricks Unlimited, Inc. v. Agee*, 672 F.2d 1255, 1259 (5th Cir. 1982)("Knowledge learned subsequent to the time of negotiation of an instrument does not impair holder in due course status."); *Valley Bank & Trust Co. v. American Utilities, Inc.*, 415 F.Supp. 298, 300 (D.C. Pa. 1976); *Third Nat. Bank in Nashville v. Hardi-Gardens Supply of Illinois, Inc.,* 380 F.Supp. 930, 940 (M.D. Tenn. 1974). The Court holds that DZ Bank was a holder in due course under Kansas law as of January 31, 2008, and that the defense of fraud in the inducement by BCC cannot be asserted against DZ Bank under the Kansas Uniform Commercial Code. Under K.S.A. 84-3-302, a holder in due course means the holder of an instrument if (1) the instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity; (2) the holder took the instrument (A) for value, (B) in good faith, (C) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, (D) without notice that the instrument

contains an unauthorized signature or has been altered, (E) without notice of any claim to the instrument described in K.S.A. 84-3-306, and (F) without notice that any party has a defense or claim in recoupment described in K.S.A. 84-3-305(a).

8. Defendants assert that DZ Bank is not a holder in due course because at the time the Note and Personal Guaranty were executed by Defendants, DZ Bank knew that (i) BCC and BCF were in default under the agreement with Autobahn Funding, and (ii) BCAP and the Brooke companies were engaged in a massive financial fraud. Defendants failed to prove such knowledge on the part of DZ Bank, accordingly, the Court concludes that DZ Bank is a holder in due course of the Note.

9. DZ Bank did not commit fraud in the inducement when it asked Choice to reaffirm Choice's obligations and those of the Defendants under the Personal Guaranty through the execution of the Choice Acknowledgment. As of the time the Choice Acknowledgment was executed, Defendants were well aware of BCAP's default under the Franchise Agreement and Choice itself was engaged in legal action to terminate its Franchise Agreement with BCAP. At the time Mr. Meyer signed the Choice Acknowledgment, he was well aware that BCAP would no longer be providing any of the franchise services required by BCAP under the Franchise Agreement. Despite Mr. Meyer's testimony that he "assumed" DZ Bank would be providing some of those services, there is nothing in the evidence to demonstrate any agreement between DZ Bank and Choice or the Defendants to that effect or any evidence of a commitment by DZ Bank to provide any franchise services.

10. Under RCW 62A.9A-315, a perfected security interest in collateral continues in collateral notwithstanding sale or other disposition "unless the secured party authorized the disposition free of the security interest…." Under RCW 62A.9A-317(b), a buyer that takes

delivery of collateral free of a pre-existing security interest if the buyer gives value and receives delivery of the collateral without knowledge of the security interest.  DZ Bank consented to the transfer of Collateral from Choice to Lolynn and Meyer Insurance, however, DZ Bank made it clear that it was not releasing its lien against the Collateral.  When Defendants effected a transfer of the Collateral from Choice to Lolynn and Meyer Insurance, they had knowledge of the lien of DZ Bank and that DZ Bank had not agreed to release its lien, therefore DZ Bank's lien in the Collateral continued notwithstanding the transfer to Lolynn and Meyer Insurance.

11.    Under RCW 19.40.041(a)(1) "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor."  Defendants engaged in intentionally fraudulent transfers when they transferred the Collateral from Meyer Insurance to Insurance Choices and the Meyer Trust and then from Insurance Choices to Connect Insurance. These transfers were made without the knowledge or consent of DZ Bank and were made by the Defendants to prevent DZ Bank from enforcing its rights against the Collateral.  At the time of the transfers, the Collateral was subject to the lien of DZ Bank.  A corporate officer who engages in fraud is personally liable for that fraud notwithstanding that he acted as an authorized officer of a corporation. *In re Baird*, 114 B.R. 198 (9th Cir. BAP 1990).  DZ Bank was damaged by these fraudulent transfers in the amount of the value of the Collateral as of the date of the transfers.

12.    Under Section 523(a)(2)(A), an obligation of the debtor to a creditor is nondischargeable where the debtor has committed actual fraud on such creditor.  In an oral ruling on June 7, 2013, on Defendants' motion to dismiss and/or for summary judgment, the Court held

that Defendants' intentionally fraudulent transfers of DZ Bank's Collateral could be the basis for nondischargeability under Section 523(a)(2)(A).[4]

13.     Proof of a cause of action under Section 523(a)(6) requires a two-step process. First, DZ Bank must prove that Defendants committed a "willful" injury. *Khaligh v. Hadaegh (In re Khaligh)*, 338 B.R. 817, 831 (9th Cir. BAP 2006). To satisfy the willfulness element, a creditor must prove that the debtor deliberately or intentionally injured the creditor, and that in doing so, the debtor intended not just to commit the act itself, but also intended the consequences of the act. *See Kawaauhau v. Geiger*, 523 U.S. 57, 61-62 (1998). Further, the Court must apply a subjective test in determining the debtor's intent. "[Section] 523(a)(6) renders a debt nondischargeable when there is either a subjective intent to harm, or a subjective belief that harm is substantially certain." *Carillo v. Su (In re Su)*, 290 F.3d 1140, 1144 (9th Cir. 2002).

14.     The second step in the Section 523(a)(6) analysis is to determine whether the debtor's conduct was "malicious." *Khaligh*, 338 B.R. at 831. In order to be found malicious, the debtor must have committed a (1) wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) which is done without just cause or excuse. Id. The last element, whether the act was done without just cause or excuse, presents a mixed question of law and fact. *Jett v. Sicroff (In re Sicroff)*, 401 F.3d 1101, 1105-06 (9th Cir. 2005), *cert. denied* 125 S.Ct. 2964 (2005). Evidence of specific intent to injure can negate just cause or excuse. *Khaligh*, 338 B.R. at 831.

15.     Unlawful conversion of another's property may constitute a willful and malicious injury. To prove conversion, the creditor must prove that when the debtor converted the creditor's property, he had the specific intent to deprive the creditor of the property or did so knowing, with substantial certainty, that the creditor would be harmed by the conversion.

---

[4]  The Court's oral ruling on the record on June 7, 2013, is incorporated herein by this reference.

*Spokane Ry. Credit Union v. Endicott (In re Endicott)*, 254 B.R. 471 (Bankr. D. Id. 2000).  The creditor is entitled only to damages in the amount of the value of the property converted.

16.     DZ Bank must prove some affirmative action by Defendants intended to injure DZ Bank.  For example, in the case of *In re Foust*, 52 F.3d 766 (8th Cir. 1995), the court upheld the denial of the debtor's discharge under Section 523(a)(6) where the debtor had secretly converted crops which secured a government loan by selling the crops to distant grain elevators and placing the proceeds of the sales in his personal accounts.  The debtor then fabricated reports of grain thefts to cover up his scheme.  *See also Chrysler Credit Corp. v. Perry Chrysler Plymouth, Inc.*, 783 F.2d 480 (5th Cir. 1986)(discharge of corporate president denied under Section 523(a)(6) where he took proceeds of inventory sales to Las Vegas in hope of winning enough money to save dealership).

17.     When the Defendants authorized and participated in the transfer of the Collateral from Meyer Insurance to Insurance Choices and then from Insurance Choices to Connect Insurance, the Defendants, with knowledge of DZ Bank's lien in the Collateral, intentionally sold that Collateral without DZ Bank's knowledge for the purpose of putting the Collateral beyond DZ Bank's reach and Defendants retained the consideration from the sale of the Collateral for their own personal benefit.  Based upon the facts as found herein by the Court, DZ Bank has met its burden of proving conversion under Section 523(a)(6).

18.     As a result of the Defendants' fraud in the transfer of the Collateral from Meyer Insurance to Insurance Choices, DZ Bank was damaged in the amount of $385,000, which amount is nondischargeable under Section 523(a)(2).

19.     As a result of the Defendants' conversion of Collateral by transfer of the Collateral from Insurance Choices to Connect Insurance, DZ Bank was damaged in the amount

Findings of Fact and Conclusions of Law - 25

of $123,200, which amount is nondischargeable under Section 523(a)(6).

20.     DZ Bank may submit and order and judgment in conformance with these Findings of Fact and Conclusions of Law.

///END OF ORDER///

Findings of Fact and Conclusions of Law - 26

Entered on Docket May 9, 2014

**Below is the Order of the Court.**



_____
Karen A. Overstreet
U.S. Bankruptcy Judge
**(Dated as of Entered on Docket date above)**

Karen A. Overstreet
Bankruptcy Judge
United States Courthouse
700 Stewart Street, Suite 6301
Seattle, WA 98101
206-370-5330

IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| In re | Case No.  12-17379 |
| LOUIS PHILLIPUS MEYER and LYNN MEYER, | |
| Debtors. | |
| DZ BANK AG DEUTSCHE ZENTRAL-GENOSSENSCHAFTSBANK, FRANKFURT AM MAIN, NEW YORK BRANCH, | Adv. No.  13-01036-KAO |
| Plaintiff, | ORDER ON DEFENDANTS' MOTION FOR RELIEF FROM JUDGMENT |
| v. | |
| LOUIS PHILLIPUS MEYER and LYNN MEYER, | |
| Defendants. | |

Order - 1

This matter came before the Court without a hearing pursuant to Local Bankruptcy Rule 9013-1(h) on Debtors/Defendants Louis Meyer and Lynn Meyer's Motion Pursuant to BR 9023 for Relief from Judgment Denying Discharge Pursuant to §523(a)(2) and §523(a)(6) ("Motion for Relief from Judgment," Dkt. No. 92 ), seeking relief from the Judgment entered February 28, 2014 ("Judgment" Dkt. No. 90).  Defendants seek relief on two grounds:

1. The recent Ninth Circuit Bankruptcy Appellate Panel decision in *Sachan v. Huh (In re Huh)*, 506 B.R. 257 (B.A.P. 9th Cir. 2014)(*en banc*), which addresses when the misrepresentations or willful conduct of an agent can be imputed to the principal, represents an intervening change in the law related to this case requiring alteration of the Judgment against Mrs. Meyer.

2. The Court committed manifest error in determining the amount of damages because there was insufficient evidence of damages and because the court improperly measured the damages.

## I.        FACTS

This matter was tried on October 23 and 24, 2013, and November 12, 2013.  The Court entered extensive Findings of Fact and Conclusions of Law, which are incorporated herein by reference (the "Findings and Conclusions," Dkt. No. 80).[1]  For purposes of the Motion for Relief from Judgment, the Court must consider the following transactions:

1. An October 2008 transfer of insurance policies from Choice Insurance Company ("Choice") to Meyer Insurance and Lolynn Investors;
2. A December 2010 transfer of the Meyers' interest in Meyer Insurance to Insurance Choices 4 U ("Insurance Choices");
3. A Transfer of the Meyers' interest in Insurance Choices to the Meyer Trust
4. A January 2011 transfer of insurance policies from Insurance Choices 4 U to Connect Insurance Agency ("Connect Insurance").

//

---

[1]  The Court incorporates the defined terms as set forth in the Findings and Conclusions.

Order - 2

## II.    STANDARDS ON MOTIONS UNDER RULE 59(e)

Rule 59(e), Fed.R.Civ.P., made applicable to bankruptcy adversary proceedings by Bankruptcy Rule 9023, provides a mechanism for a court to alter, amend, or vacate a prior order. *Hamid v. Price Waterhouse*, 51 F.3d 1411, 1415 (9th Cir. 1994).  Although Rule 59(e) permits a court to reconsider and amend a previous order, "the rule offers an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003); *Kona Enters. v. Estate of Bishop*, 229 F.3d 877, 890–91 (9th Cir. 2000).  A motion under Fed.R.Civ.P. 59(e) "should not be granted absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *McDowell v. Calderon*, 197 F.2d 1253, 1255 (9th Cir. 1999)(en banc)(*quoting 389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999); *see also* Fed.R.Civ.P. 60(b).

## III.    ANALYSIS

### a.  The Impact of *Sachan v. Huh (In re Huh)*

Defendants argue that at trial, DZ Bank presented no evidence that Mrs. Meyer knew or should have known of any misrepresentations made by Mr. Meyer to DZ Bank. Likewise, they argue that Mrs. Meyer did not participate in the transfers from Meyer Insurance to Insurance Choices 4 U, Inc. or from Insurance Choices 4 U to Connect Insurance, which the Court found to be fraudulent transfers.   Defendants also contend that Mrs. Meyer did not personally engage in any intentional acts which would give rise to an injury and damages that could be excepted from discharge under Section 523(a)(6). It is the Defendants' contention that Mrs. Meyer relied on Mr. Meyer to make decisions regarding both their insurance businesses and their estate planning.  Based on these

Order - 3

contentions, the Defendants argue that Mr. Meyer was an agent of Mrs. Meyer, and that any representations, acts or injury by Mr. Meyer cannot be imputed to Mrs. Meyer under *In re Huh*, 506 B.R. 257 (B.A.P. 9th Cir. 2014)(*en banc*).

In the *Huh* case, the Ninth Circuit Bankruptcy Appellate Panel considered *en banc* "…the Panel's prior published opinions on when, if ever, it is appropriate to impute vicarious liability in an exception to discharge action based on fraud." *In re Huh*, 506 B.R. at 258.    The *Huh* court was faced squarely with the question of whether fraud liability can be imputed to a debtor for purposes of Section 523(a)(2)(A).  The *Huh* case involved a pre-petition state court judgment which imposed vicarious liability on the debtor Huh for his agent's acts in conducting the sale of a market.  In the bankruptcy court action to determine dischargeability of the state court judgment under Section 523(a)(2)(A), the court found that the debtor Huh had never communicated with the plaintiff or any representative of the plaintiff's corporation regarding sale of the market, never made any representations to plaintiff regarding the market, was not aware of any defects in the market, and was not even aware that the market had been sold until after the sale closed.

The court conducted a thorough analysis of the history of exceptions to discharge and imputed liability, and stated:

> ...We are not comfortable concluding that under no circumstances can the fraud of an agent be imputed to his principal for exception to discharge purposes under § 523(a)(2)(A). However, based on the reasoning in the cases decided by the Supreme Court, the Ninth Circuit and other courts, as discussed above, debts incurred as the result of the debtor's agent's fraud should not be excepted from discharge unless the debtor is culpable. *See, e.g., Bullock v. BankChampaign, N.A.*, 133 S.Ct. at 1757; and *Sherman*, 658 F.3d at 1014–15. Accordingly, as stated above, we adopt the *Walker* Standard.

Order - 4

> Under that standard, more than a principal/agent relationship is required to establish a fraud exception to discharge. While the principal/debtor need not have participated actively in the fraud for the creditor to obtain an exception to discharge, the creditor must show that the debtor knew, or should have known, of the agent's fraud. Because this standard focuses on the culpability of the debtor, and not solely on the actions of the agent, we think it most properly comports with the recent holdings of the Supreme Court and the Ninth Circuit regarding discharge exceptions. While this conclusion does not adopt the second rationale propounded by the bankruptcy court in support of its decision, we nonetheless can and will affirm its decision based on its unchallenged findings of fact supporting discharge under the Walker Standard.

*In re Huh*, 506 BR at 271-272, *citing Walker v. Citizens State Bank (In re Walker)*, 726 F.2d 452 (8th Cir. 1984).  The court concluded that the record did not establish that Huh knew or had reason to know of any misrepresentations made by his agent to the plaintiff, and therefore that the agent's fraud could not be imputed to Huh in support of a of Section 523(a)(2)(A) claim.

In this case, the Court did not find an agency relationship between Mr. Meyer and Mrs. Meyer, nor did it impose vicarious liability on Mrs. Meyer.  Instead, it found that Mrs. Meyer was a knowing and willing participant in the fraud and conversion of DZ Bank's Collateral which caused injury to DZ Bank.  The Court found that both Mr. and Mrs. Meyer signed the Trust Declaration which created the Meyer Trust.  Dkt. No. 80, Finding of Fact ¶42.  The Court specifically found that the Defendants created the trust and transferred both their personal and corporate assets into it in order to protect their assets from DZ Bank, and not for estate planning purposes.  Dkt. No. 80, Findings of Fact ¶57.  After they transferred all of their personal and corporate assets to the Meyer Trust, Mr. Meyer caused Choice to discontinue payments to DZ Bank on the Note, and Defendants failed to pay on their Personal Guaranty.  Dkt. No. 80 Findings of Fact ¶¶ 48-56.  The record more than adequately reflects that Mrs. Meyer was a knowing and active participant in the fraud and conversion that the Court found caused damage to DZ Bank.

Order - 5

Even if the Court had not found that Mrs. Meyer actively participated in the fraud on DZ Bank, the *Walker* standard adopted by the *Huh* court does not require active participation in order to find a debt non-dischargeable.  The *Huh* court held that while "[debtor] need not have participated actively in the fraud for the creditor to obtain an exception to discharge, the creditor must show that the debtor knew, or should have known, of the agent's fraud." *Huh*, 506 B.R. at 271.  The fraud in this case was committed when the Defendants' personal and corporate assets, including DZ Bank's Collateral, were transferred into the Meyer Trust for their benefit and for no consideration, and then the Collateral was subsequently sold to a third party.   Mrs. Meyer signed the Trust Declaration.  Exhibit P-23.  She testified that she consented to the transfer of assets into the trust.  She testified that she was aware that the assets of Insurance Choices, which included the Collateral of DZ Bank, were sold out of the Meyer Trust to Connect Insurance.  She did not object to any of the transfers.   The Court found that the purpose of the Meyer Trust was to put assets out of the reach of creditors.  Dkt. No. 80, Findings of Fact ¶57.  Even if the Court had not found that Mrs. Meyer actively participated in the fraudulent transfers, the record is clear that she knew about them and consented to them.  Therefore, liability for Mr. Meyer's conduct could be imputed to Mrs. Meyer under the *Walker* standard adopted by the Ninth Circuit Bankruptcy Appellate Panel in *Huh*.

For the foregoing reasons, the *Huh* case is not an intervening change in the law which warrants reconsideration of the Court's finding that Mrs. Meyer was individually liable for the amount of the Judgment and that the Judgment was not dischargeable under Section 523(a)(2)(A).

**b.  Calculation of Damages**

Defendants' Motion for Relief from Judgment raises two distinct issues regarding

Order - 6

calculation of damages:  (1) whether the Court applied the proper standard for awarding

damages; and (2) whether the evidence presented at trial was sufficient to determine the amount

of damages awarded.[2]

### i.   Standard for Calculating of Damages Under Section 523(a)(2)(A)

Defendants argue that the amount of DZ Bank's damages under Section 523(a)(2)(A)

must be limited to the value of its Collateral, which the evidence showed was only $123,200 at

most.  They challenge the Court's award of $385,000, which amount included assets belonging to

Meyer Insurance which were not subject to DZ Bank's lien.  DZ Bank responds that but for

Defendants' intentional fraud in transferring the assets of Meyer Insurance to the Meyer Trust, it

could have attached all of those assets, including its Collateral to satisfy its claim against Choice

and the Defendants as guarantors of that claim.

The Court held prior to trial that recovery under Section 523(a)(2)(A) does not require a

misrepresentation but, as in this case, can be based on actual fraud.  *McClellan v. Cantrell*, 217

F. 3d 890 (7th Cir. 2000); *Diamond v. Vickery (In re Vickery)*, 488 B.R. 680, 691 (B.A.P. 10th

Cir. 2013).  Section 523(a)(2)(A) prohibits the discharge of any liability arising from a debtor's

fraud.  *Cohen v. de la Cruz*, 523 U.S. 213, 220-221 (1998).   Whether the Section 523(a)(2)(A)

claim is based on a misrepresentation or on actual fraud, the measure of damages is the liability

arising from the debtor's fraudulent conduct.  *See Gnomeshi v. Sabban*, 600 F.3d 1219 (9th Cir.

2010).

As set forth in its Findings and Conclusions, the Court concluded that DZ Bank was

damaged by Defendants' actual fraud "in the amount of the value of the Collateral as of the date

---

[2] Defendants also complain that the Court did not make a finding that DZ Bank proved its damages by a preponderance of evidence.  However, the Court specifically concluded that DZ Bank had the burden of proving each of the elements of its claims by a preponderance of evidence, Dkt. 80, Conclusions of Law, ¶2, and so believes that it is implicit in that statement that each of the Courts Findings of Fact were proved by a preponderance of evidence.

Order - 7

of the transfers." Dkt. No. 80, Conclusions of Law, ¶11.  However, the Court went on to state, without explanation, that as a result of Defendants' fraud, DZ Bank was damaged in the amount of $385,000.  Dkt. No. 80, Conclusions of Law, ¶18.  The Court agrees with the Defendants that Conclusion of Law 18 was made in error.

In this case, the fraudulent conduct giving rise to the Section 523(a)(2)(A) claim was the transfer of assets from Meyer Insurance to Insurance Choices, coupled with the transfer of ownership of Insurance Choices to the Meyer Trust for no consideration, and finally the sale of assets from Insurance Choices to Connect Insurance.  Dkt. No. 80, Conclusion of Law ¶11.  Had Meyer Insurance retained the assets, DZ Bank would have been able to recover the Collateral from Meyer Insurance because, as the Court found, the bank retained an enforceable lien on the Collateral notwithstanding the initial transfer of the Collateral from Choice to Meyer Insurance.  See Dkt. No. 80, Conclusions of Law, ¶10.  However, DZ Bank did not establish that it had a right to any other assets of Meyer Insurance. Meyer Insurance had not executed a note or security agreement in favor of DZ Bank.  DZ Bank did not advance any theory or present evidence at trial supporting the contention that it could have enforced payment of its claim against Choice and the Defendants from any Meyer Insurance assets other than the Collateral.

At trial, DZ Bank provided evidence that it suffered damages when the Defendants caused the fraudulent transfer of the former Meyer Insurance assets into the Meyer Trust, and subsequently sold them to Connect Insurance, precluding DZ Bank from recovering the value of its Collateral.   The Court valued the Collateral at $123,200.  The evidence showed that the total value of assets transferred by Meyer Insurance to the trust was $385,000.  The difference between $385,000 and $123,200 would therefore represent the value of assets formerly belonging to Meyer Insurance against which DZ Bank had no claim.   Consequently, Conclusion

Order - 8

of Law 18 misstated the amount of damages sustained by DZ Bank on its Section 523(a)(2)(A) claim.  Based on the evidence presented at trial, the correct measure of damages pursuant to 523(a)(2)(A) is the value of DZ Bank's Collateral as of the date of the transfer, which the court found to be $123,200.

### ii.  Evidence of Damages

Defendant's second argument is that the only evidence of the amount of DZ Bank's damages was contained in Exhibits P-61 and P-62, and that these were demonstrative exhibits which could be used only to illustrate DZ Bank's position and not as substantive evidence, citing *The Baugh v. Cuprum S.A. De C.V.*, 730 F. 3d 701 (7th Cir. 2013).   Defendants further contend that the testimony at trial was that these exhibits were inaccurate and that the Court could therefore not rely on them.  Finally, Defendants argue that they had no meaningful opportunity to rebut the demonstrative exhibits, resulting in manifest injustice.  Defendants ask the Court to find that DZ Bank failed to provide any evidence of damages at all, or alternatively, to give them a further opportunity to review the records more thoroughly and rebut the value of DZ Bank's Collateral as found by the Court.

Based on Mr. Meyer's testimony, the Court found that the accounts transferred by Meyer Insurance to Insurance Choices had a value of $385,000.  Dkt. 80, Findings of Fact ¶64.  When the policies were subsequently sold to Connect Insurance they had a value of $328,000.  *Id.*  The list of Choice policies that were originally DZ Bank's Collateral is at Exhibit P-11.  The list of policies transferred by Insurance Choices to Connect Insurance is Exhibit P-36.  The Defendants stipulated to the admissibility of these two Exhibits. Dkt. 64, pp. 22-24.   Exhibit P-62 is identical to Exhibit P-11, except that Exhibit P-62 contains a numbered column to identify the accounts.  Exhibits P-61 is identical to Exhibit P-36, except that Exhibit P-61 includes a column

Order - 9

cross referencing the accounts originally pledged by Choice to DZ Bank [accounts appearing on P-11/P-62] and the accounts transferred by Insurance Choices to Connect Insurance.  Using Exhibits P-61 and P-62, Mr. Probst testified that at least 32% of the accounts sold to Connect Insurance were accounts subject to DZ Bank's lien, as shown by the accounts highlighted in yellow on Exhibit P-61.  He testified as to how the comparison was made by the bank's outside counsel.  Based on this evidence, the Court found that the value of DZ Bank's Collateral transferred to Connect Insurance was $123,200.  See Dkt. No. 80, Finding of Fact ¶68.[3]

Defendants first argue that the Court cannot rely on Exhibit P-11 in support of DZ Bank's claim for damages because DZ Bank cannot verify the accuracy of the list.   Exhibit P-11 was disclosed to the Defendants prior to trial, and the Defendants stipulated to the admissibility of Exhibit P-11 in the Pretrial Order.  Dkt. 64.  The Court cannot find any error in its admission or consideration of Exhibit P-11.

Defendants also argue that the Court improperly based its ruling on the demonstrative Exhibits, Exhibits P-61 and P-62.  Defendants argue that Exhibits P-11, P-61 and P-62 are "demonstrably inaccurate" and cannot prove DZ Bank's damages by a preponderance of evidence.  Exhibits P-61 and P-62 were admitted at trial for demonstrative purposes.  Mr. Probst explained the methodology for creating the exhibits, and then testified that 32% of the accounts sold to Connect Insurance were part of DZ Bank's Collateral.  Defendants had the opportunity to cross examine Mr. Probst.  They also had the opportunity to testify regarding the exhibits.  Mr. Meyer did testify regarding the exhibits, and identified some highlighted accounts on Exhibit P-61 which he claimed were not originally part of DZ Bank's Collateral.  The Court considered

---

[3]  The Court could have conducted this painstaking and time consuming comparison itself.  There is no complicated science or methodology that needs to be employed in comparing the various lists to find common accounts. The Court has no reason to doubt the comparison done by DZ Bank or the testimony of Mr. Probst related to the comparison.

Order - 10

Mr. Meyer's testimony in reaching its ruling.  Dkt. No. 80, Finding of Fact ¶63.

Defendants also argue that they were subjected to "manifest injustice" because Exhibits P-61 and P-62 were presented on the first day of trial.  Defendants contend that they had no meaningful opportunity to provide detailed rebuttal to the exhibits.  However, as pointed out in DZ Bank's Response, the evidentiary portion of this trial spanned a period of almost two weeks between the date it commenced (October 22, 2013) and the date Defendants concluded their presentation (November 12, 2013).  Several months passed before the Judgment was entered.  Defendants have never provided any detailed analysis of how Exhibits P-61 and P-62 are inaccurate.

The Court considered and weighed the evidence presented at trial.  The Defendants failed to establish that the Court erred in considering the evidence presented.   The Court will not alter or amend the Judgment based on insufficiency of evidence of damages, and reaffirms its finding that the value of DZ Bank's Collateral which was fraudulently transferred by the Defendants was $123,200.

**ORDER**

NOW, THEREFORE, for the foregoing reasons, it is HEREBY ORDERED that Defendants' Motion for Relief from Judgment is GRANTED IN PART AND DENIED IN PART.  It is

FURTHER ORDERED that the language in Conclusion of Law number 18 [Dkt. No. 80, Conclusion of Law ¶18] is amended to state that DZ Bank was damaged in the amount of $123,200.  It is

FURTHER ORDERED that the balance of Defendants' Motion for Relief from Judgment is DENIED.  It is

//

Order - 11

1    FURTHER ORDERED that the Court shall enter amended findings and conclusions in

2  conformance with this Order.

3                              ///END OF ORDER///

Order - 12

Entered on Docket May 9, 2014

**Below is the Order of the Court.**

Karen A. Overstreet
U.S. Bankruptcy Judge
**(Dated as of Entered on Docket date above)**

Karen A. Overstreet
Bankruptcy Judge
United States Courthouse
700 Stewart Street, Suite 6301
Seattle, WA 98101
206-370-5330

IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| In re | Case No.  12-17379 |
| LOUIS PHILLIPUS MEYER and LYNN MEYER, | |
| Debtors. | |
| DZ BANK AG DEUTSCHE ZENTRAL-GENOSSENSCHAFTSBANK, FRANKFURT AM MAIN, NEW YORK BRANCH, | Adv. No.  13-01036-KAO |
| Plaintiff, | ORDER DENYING DZ BANK'S MOTION FOR RECONSIDERATION AND CLARIFYING JUDGMENT |
| v. | |
| LOUIS PHILLIPUS MEYER and LYNN MEYER, | |
| Defendants. | |

Order - 1

This matter came before the Court without a hearing pursuant to Local Bankruptcy Rule 9013-1(h) on Plaintiff DZ Bank's Motion for Reconsideration ("Motion for Reconsideration," Dkt. No. 91).  Based on what it contends are inconsistencies in the record and in the Findings of Fact and Conclusions of Law ("Findings and Conclusions," Dkt. No. 80), DZ Bank asks the Court to re-examine its dismissal of DZ Bank's claims under Sections 523(a)(2) and 523(a)(6) of the Bankruptcy Code[1] as they pertain to transfers made by Meyer Insurance Company ("Meyer Insurance") and Lolynn Investors to First Insurance Agency, Inc. ("First Insurance") in April of 2010.  For the reasons that follow, although the Court believes that a clarification to its Findings and Conclusions should be made to specifically address these transfers, the clarification does not require the Court to reconsider the Judgment entered at Dkt. No. 90 or the Order on Defendants' Motion to Dismiss, Motion for Summary Judgment, and Motion for Sanctions at Dkt. No. 71 (the "Dismissal Order").

## I.      FACTS

On June 7, 2013, the Court heard the motion to dismiss filed by the Defendants.  In ruling on that motion, the Court identified and defined, for purposes of ruling, four transactions:

1. An October 2008 transfer of insurance policies from Choice Insurance Company ("Choice") to Meyer Insurance and Lolynn Investors ("Transfer 1");

2. An April 2010 transfer of insurance policies from Meyer Insurance and Lolynn Investors to First Insurance ("Transfer 2");

3. A December 2010 transfer of the Meyers' interest in Meyer Insurance to Insurance Choices 4 U ("Transfer 3"); and

4. A January 2011 transfer of insurance policies from Insurance Choices 4 U to Connect Insurance Agency ("Transfer 4").[2]

---

[1]   Unless otherwise indicated, all Code, Chapter, Section and Rule references are to the Bankruptcy Code, 11 U.S.C. §§101 *et seq.* and to the Federal Rules of Bankruptcy Procedure, Rules 1001 *et seq.*

[2]   *See* Transcript of proceeding held on June 7, 2013, Dkt. 44, pp. 39-41.

Order - 2

As to Transfer 2, the Court orally granted the Defendants' motion to dismiss DZ Bank's claim for

relief under Section 523(a)(2) and granted summary judgment to Defendants under Section

523(a)(6) because the Court concluded that the transfer effectuated what both parties needed and

contemplated at the time:  that a new agent of record would be found for the policies formerly

serviced by Brook Capital Corporation with commissions paid to Choice.[3]  In making that ruling,

the Court held that Choice's failure to pay those commissions over to DZ Bank was a breach of

contract at most, but not fraud.[4]

The Dismissal Order was entered after the Court's oral ruling, confirming dismissal of

DZ Bank's claims based on Transfer 1 and Transfer 2.  The order denied the Defendants' request

for dismissal of DZ Bank's claims related to Transfer 3 and Transfer 4.  Trial proceeded only on

those claims.

## II.     STANDARDS ON RECONSIDERATION

Motions for reconsideration are disfavored in this district. The local federal district court

rules direct that a court should:

> [O]rdinarily deny such motions in the absence of a showing of manifest
> error in the prior ruling or a showing of new facts or legal authority which could
> not have been brought to its attention earlier with reasonable diligence.

Civil Rule 7(h)(1), Local Rules W.D. Wash.  Local Rule 7(h) is the functional equivalent of a

motion to alter or amend a judgment under Fed. R. Civ. P. 59(e). *Aronson v. Dog Eat Dog Films,*

*Inc.*, 738 F. Supp. 2d 1104, 1118 (W.D. WA 2010); *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1442

(9th Cir. 1991).   Rule 59(e), Fed.R.Civ.P., made applicable to bankruptcy adversary proceedings

---

[3]  *Id.* at pp. 44, 45.
[4]  Choice's obligation to continue paying the proceeds of insurance premiums from policies
formerly serviced by Brook Capital Corporation notwithstanding the transfer of those policies
was initially required by an acknowledgment between Choice and DZ Bank.  *See* Findings and
Conclusions at ¶¶ 18, 19.

Order - 3

by Bankruptcy Rule 9023, provides a mechanism for a court to alter, amend, or vacate a prior order. *Hamid v. Price Waterhouse*, 51 F.3d 1411, 1415 (9th Cir. 1994).  Although Rule 59(e) permits a court to reconsider and amend a previous order, "the rule offers an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003); *Kona Enters. v. Estate of Bishop*, 229 F.3d 877, 890–91 (9th Cir. 2000).  A motion under Fed.R.Civ.P. 59(e) "should not be granted absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *McDowell v. Calderon*, 197 F.2d 1253, 1255 (9th Cir. 1999)(en banc)(*quoting 389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999); *see also* Fed.R.Civ.P. 60(b).

## III.    ANALYSIS

DZ Bank is correct that the Court mistakenly referenced in footnote 3 on page 19 of the Findings and Conclusions that DZ Bank was not claiming damages in connection with Transfer 2.  Instead, the Court should have indicated that it had dismissed DZ Bank's causes of action as to that transfer for the reasons stated in the June 7 Transcript of the hearing.[5]

The Findings and Conclusions at page 13 contain the following paragraphs related to Transfer 2:

37.      In April of 2010, Lolynn Investors, LLC and/or Meyer Insurance Agency agreed to sell to First Insurance Agency, Inc., insurance policies listed on a schedule attached to the agreement (the "April 2010 Sale Agreement").  Ex. P-21.  The Defendants had no interest in First Insurance Agency, Inc., which agreed to pay a purchase price of annual commissions from the transferred policies times 1.9, paid monthly.  The policies transferred to First Insurance Agency, Inc. are hereinafter referred to as the "First Insurance Policies."

38.      Mr. McShane testified that Mr. Meyer never provided him with a copy of the

---

[5]  Defendants argue that the Motion for Reconsideration is an untimely attempt to get the Court to reconsider the Dismissal Order.  Given the Court's ruling, the Court finds it unnecessary to address that argument.

Order - 4

Buy/Sell Agreement between First Insurance Agency, Inc. as buyer and Lolynn and/or Meyer as seller, or disclose that sale to him. McShane Dep. At 19. He further testified that Mr. Meyer never disclosed to him that he was selling his company's insurance assets to third parties. *Id.*

These findings, however, were included merely as part of the chronology of the events leading to the Defendants' filing of bankruptcy. Because Transfer 2 had been dismissed by the time trial commenced, by including these findings, the Court was not intending to re-address the claims that had been dismissed in the Dismissal Order.

Further, the Court does not believe manifest error was committed when it dismissed DZ Bank's claims related to Transfer 2. As the Court previously found, during the time frame that includes Transfer 1 and Transfer 2, both Choice and the Defendants were not going to be able to continue to service many of the policies for which Brooke Capital Corporation formerly acted as Agent of Record, and thus they had to place those policies with new qualified appointments. Although DZ Bank contends that Transfer 2 occurred well outside the period when those "roll overs" were taking place, the evidence is to the contrary. For example, in an email from Mr. Meyer to Patrick McShane on May 18, 2010, Mr. Meyer laid out in detail his continued efforts to roll "about 800 ($640,000 in premiums)" policies to new companies. Ex. P-34, Bates 941, 942. Mr. Meyer made clear in that email why he believed he needed to roll those policies to new companies prior to September of 2010, and what efforts he and his staff were making in order to meet that deadline. *Id.*, Bates 942. Mr. McShane's responsive email of May 20, 2010 did not express shock or opposition to that plan nor did Mr. McShane ask any questions of Mr. Meyer about the roll overs; instead, Mr. McShane thanked Mr. Meyer for the update and offered to reduce the loan payment. *Id.*, Bates 941.

Pursuant to Transfer 2, some of the policies formerly serviced by Brooke Capital

Order - 5

Corporation were transferred by Meyer Insurance to First Insurance.  The transfer was for consideration.  The consideration was paid to Meyer Insurance while Mr. Meyer was under a contractual obligation to pay those proceeds to DZ Bank.  The fact that Mr. Meyer and Meyer Insurance failed to do that was a breach of contract, but the Court found that it did not constitute fraud.[6]

In its reply, DZ Bank asserts two "new" facts which it argues should cause the Court to reconsider this finding, and thus the Dismissal Order:  (1) the Buy Sell Agreement between Lolynn Investors and Meyer Insurance Agency, as sellers, and First Insurance Agency, Inc., as buyer, requires the buyer to make monthly payments by cashier's checks [Ex. P-21, Section 3, Bates 0300]; and (2) the Buy Sell Agreement was executed after the Defendants met with their estate planning attorney and were advised about fraudulent transfers.  Neither of these facts mandates reconsideration of the Judgment or the Dismissal Order.  Whether payment was by cashier's check or cash, the Defendants had a contractual obligation to pay those funds over to DZ Bank.  The failure to comply with that obligation was a breach of contract, but not fraud.  DZ Bank does not suggest that the transfer of policies to First Insurance amounted to a fraudulent transfer nor is there any evidence to support such a claim.  On the contrary, the evidence shows that the transfer was for consideration.

Finally, DZ Bank argues that Transfer 2 cannot be distinguished from Transfer 4, which the Court found fraudulent, in that both transfers were made after the Defendants met with their estate planning attorney who cautioned them about fraudulent transfers.  The transfers can be distinguished, however.  Transfer 2 was a transfer for consideration, for which First Insurance was contractually obligated to make payments to its transferors, thus, the value of the assets

---

[6]  In reviewing the Findings and Conclusions related to Choice's contractual obligations, the Court discovered a typographical error in paragraph 18:  the letter from DZ Bank confirming receipt of Choice's acknowledgment was dated October 15, 2008, and not October 22, 2013.

Order - 6

remained with the transferors.  The email from Mr. Meyer to Patrick McShane on May 18, 2010 gave DZ Bank notice that this type of transfer was taking place.  By contrast, Transfer 4 occurred after the Defendants fraudulently transferred the bank's collateral to a personal trust *for their own benefit and without any consideration*.  Thereafter, they essentially stripped DZ Bank's lien from the policies which were formerly its collateral by effectuating Transfer 4 to Connect.   Unlike Transfer 4, there was no evidence of fraud in connection with Transfer 2.  The Court stands by its ruling with regard to dismissal of claims based on Transfer 2.

### ORDER

NOW, THEREFORE, for the foregoing reasons, it is HEREBY ORDERED that DZ Bank's Motion for Reconsideration is DENIED.

FURTHER ORDERED that the language in footnote 3 on page 19 of the Findings and Conclusions shall be deleted and replaced with the following:  "DZ Bank did not assert at trial any damages in connection with the transfer of Collateral by Lolynn and Meyer Insurance to First Insurance because the Court dismissed DZ Bank's claims relating to those transfers under Section 523(a)(2)(A) and granted summary judgment to the Meyers as to claims relating to those transfers under Section 523(a)(6).  *See* Order on Defendants' Motion to Dismiss, Motion for Summary Judgment, and Motion for Sanctions at Dkt. No. 71."

FURTHER ORDERED that "October 22, 2013" in paragraph 19 of the Findings and Conclusions shall be replaced with "October 15, 2008".

FURTHER ORDERED that paragraph 62 of the Findings and Conclusions shall be amended at line 2 by adding "Meyer Insurance."

FURTHER ORDERED that the Court shall enter amended findings and conclusions in conformance with this Order.

///END OF ORDER///

Order - 7

Entered on Docket May 9, 2014

**Below is the Order of the Court.**



_____
Karen A. Overstreet
U.S. Bankruptcy Judge
**(Dated as of Entered on Docket date above)**

Karen A. Overstreet
Bankruptcy Judge
United States Courthouse
700 Stewart Street, Suite 6310
Seattle, WA 98101
206-370-5330

IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

In re

LOUIS PHILLIPUS MEYER and
LYNN MEYER,

          Debtors.

DZ BANK AG DEUTSCHE ZENTRAL-
GENOSSENSCHAFTSBANK,
FRANKFURT AM MAIN, NEW
YORK BRANCH,

          Plaintiff,

v.

LOUIS PHILLIPUS MEYER and
LYNN MEYER,

          Defendants.

Case No.  12-17379

Adv. No.  13-01036-KAO

**AMENDED** FINDINGS OF FACT
AND CONCLUSIONS OF LAW

      This matter came before the Court for trial on October 22, 24, 2013 and November 12,

Findings of Fact and Conclusions of Law - 1

2013.  Plaintiff DZ Bank AG Deutsche Zentral-Genossenschaftsbank, Frankfurt AM Main, New York Branch ("DZ Bank") appeared through its counsel, Alex Darcy and Michael Johns, and Defendants Louis Phillipus Meyer and Lynn Meyer (the "Defendants") appeared through their counsel, Marc Stern and Susan Fulmer.   The Court has considered all of the evidence and testimony at trial and its records and files, and made findings of fact and conclusions of law pursuant to Bankruptcy Rule 7054 at Dkt. 80.  Both parties moved for reconsideration.  *See* DZ Bank's motion at Dkt. 91; Defendants' motion at Dkt. 92.  The Court considered the pleadings and records related to the motions for reconsideration and, based upon the Court's Order Denying DZ Bank's Motion for Reconsideration and the Court's Order On Defendants' Motion For Relief From Judgment, entered concurrently herewith, the Court enters these Amended findings of fact and conclusions of law under Bankruptcy Rule 7054.

## I.       PRIOR PROCEEDINGS

This is an action by DZ Bank to except its claim against the Defendants from discharge under Bankruptcy Code §§ 523(a)(2)(A) and 523(a)(6).[1]  The amount of the claim is approximately $1.7 million. At a hearing on June 7, 2013, the Court heard Defendants' motion to dismiss and/or for summary judgment and dismissed DZ Bank's claims that transfers of insurance policy accounts by the Defendants occurring on October 28, 2008 and in April of 2010 (as more specifically described below) were actionable under either 523(a)(2) or (a)(6).  The Court found that DZ Bank was fully aware of those transfers and in fact supported the transfers. The Court denied the Defendants' motion to dismiss or for summary judgment as to the transfers of insurance policy accounts on December 1, 2010 and January 22, 2011 (as more specifically described below).  The order on the Court's ruling was entered on October 25, 2013, at Dkt. 71.

---

[1]  Unless otherwise indicated, all Code, Chapter, Section and Rule references are to the Bankruptcy Code, 11 U.S.C. §101 et seq. and to the Federal Rules of Bankruptcy Procedure, Rules 1001 et seq.

The Court has considered all of the pleadings and records in this matter, and the evidence presented at trial, including the testimony of Patrick McShane and Jennifer Wikoff, which was submitted via deposition transcript.[2]

## II.   FINDINGS OF FACT

1.      The parties stipulated facts contained in the pretrial order at Dkt. 64 are incorporated herein by this reference.

2.      Although Mr. Meyer was never licensed as a Certified Public Accountant, he has substantial experience, through education and employment, in accounting and finance.  He has been a businessman for many years and acted as the chief financial officer for a South African corporation for two years.  Mr. Meyer came to the United States from South Africa in 1993.  He has substantial work experience in the insurance industry including as an agent, sales manager and supervisor for Allstate Insurance Company.  Mr. Meyer was 54 years old at the time of trial. Mrs. Meyer also obtained the education and training necessary to become an insurance agent and she owned her own agencies.

3.      In June of 2001, Mr. Meyer purchased his first insurance agency, an Allstate agency called Goldman Meyer Agency.  He operated that agency for about six years.  In October of 2007, Mr. Meyer sold the Goldman Meyer Agency for $1.4 million.  Later in 2007, he and his wife purchased the books of business from two insurance agencies in Lakewood Washington, under the name of Lolynn Investors, LLC ("Lolynn") a company wholly owned by Mrs. Meyer. The purchase price for these agencies was $700,000.  In November of 2007, Lolynn transferred all of its assets, including the books of business it had acquired, to Meyer Insurance Agency, a company owned and controlled solely by Mr. Meyer.  Pretrial order, para. 12.

4.      On August 27, 2004, Brooke Credit Corporation ("BCC"), as seller, Brooke Credit Funding, LLC ("BCF"), as buyer and issuer, and Textron Business Services, Inc., as

---

[2]  The Court gave both parties the opportunity to object to portions of the depositions, however, neither made any objections.  Accordingly, the Court considered the entire deposition transcripts.

Findings of Fact and Conclusions of Law - 3

initial servicer, entered into a Sale and Servicing Agreement for the transfer of various loans then payable to BCC by third parties (the "Sale Agreement"). Ex. P-1. Also on August 27, 2004, BCF, as borrower, BCC, as seller, Brooke Corporation, as servicer and guarantor, Autobahn Funding Company, LLC ("Autobahn Funding"), as lender, and DZ Bank, as agent for Autobahn Funding, entered into a Credit and Security Agreement whereby Autobahn Funding agreed to finance BCF's acquisition of various loans under the Sale Agreement. Ex. P-2.  On August 29, 2006, BCF, as borrower, BCC, as seller, Brooke Corporation, as subservicer and guarantor, Autobahn Funding, as lender, and DZ Bank, as agent for Autobahn Funding, entered into an Amended and Restated Credit and Security Agreement (the "Amended Security Agreement"). Ex. P-5.

5.      Under the Amended Security Agreement and subject to the terms and conditions therein, Autobahn Funding agreed to loan certain funds to BCF for BCF's purchase of various loans from BCC under the Sale Agreement.  To secure BCF's obligations to Autobahn Funding under the Amended Security Agreement, BCF granted DZ Bank, as Autobahn Funding's agent, a security interest in: (1) all of its right, title and interest in and to various loans that BCF had already purchased from BCC under the Sale Agreement; (2) all of its right, title and interest in and to various loans that BCF would be purchasing from BCC in the future under the Sale Agreement; and (3) various other collateral.  Ex. P-3, P-4.

6.      Cedric Probst, a Senior Vice President with the New York Branch of DZ Bank, testified as to the loan documents underlying the Brooke credit transactions as well as the loan documents between the Defendants and various Brooke entities.  Mr. Probst took over as the account manager for the Brooke credit account at DZ Bank in April of 2011.

7.      Mr. Meyer was the sole member and manager of Choice Cash Advance LLC ("Choice"). Pursuant to an Agreement for Purchase of Agency Assets dated as of January 25, 2008, Choice purchased five insurance agencies, including each of their books of business (the "Agency Assets"), for $1,911,235.20. Ex. P-6.  Mr. Meyer never had any direct contact with the sellers under that agreement; instead, the sale of these agencies was arranged by BCC and another subsidiary of Brook Corporation, Brook Capital Corp. ("BCAP").  BCC and BCAP

Findings of Fact and Conclusions of Law - 4

executed an acknowledgment and agreement to the terms of the Agreement for Purchase.  Ex. P-6, Bates p. 245.  Although the Agreement for Purchase was dated as of January 25, 2008, the transaction did not actually close until January 31, 2008.

8.    On January 31, 2008, BCC, as lender, and Choice, as borrower, entered into a Promissory Note known as Loan No. 6779 (the "Note") [Ex. P-7] and an Agreement for Advancement of Loan [Ex. P-8], in which BCC agreed to loan Choice $1,771,715.20 towards Choice's purchase of the Agency Assets under the Purchase Agreement.  The "blue ink" Note and Allonge to Promissory Note (the "Allonge") were made available at trial.  The Court inspected those documents and concludes that there is nothing irregular about the Note or the attached Allonge.  Pursuant to the Allonge, BCC, dba Aleritas Capital, the lender under the Note, indorsed the Note payable to "Brooke Credit Funding, LLC", which in turn indorsed the Note payable to DZ Bank.  The indorsements on the Allonge are not dated, however, the Court finds, based upon the testimony of Cedric Probst and Gage Zierlein, that the indorsements occurred on or before January 31, 2008.

9.    To secure Choice's obligations under the Note, Choice granted BCC a blanket security interest in all of Choice's assets, including the agency assets, accounts and rights to payment, and all proceeds therefrom (collectively, the "Collateral"), pursuant to a Commercial Security Agreement (the "Security Agreement").  Ex. P-10.

10.    The Collateral includes general intangibles, which include customer lists.  The Collateral further includes the right to be "Agent of Record."  On January 25, 2008, BCC filed a UCC-1 Financing Statement with the Washington Secretary of State as to all of Choice's assets (the "Financing Statement").  Ex. P-12.   Exhibit P-11 lists the 17,000 insurance policies Choice acquired pursuant to the Agreement for Purchase of Agency Assets and which were initially included in the Collateral.

11.    The Defendants personally guaranteed repayment of the Note pursuant to a Guaranty (the "Personal Guaranty").  Ex. P-9.  Mr. Meyer signed all of the documents on behalf of Choice.  Mr. and Mrs. Meyer also each signed a noncompetition provision.  Ex. P-8, p. 0266.

1

2      12.     On January 31, 2008, BCF sent a Borrowing Base Certificate to DZ Bank

3  whereby it requested that Autobahn Funding advance funds to BCF under the Amended Security

4  Agreement for its purchase of the Note and various other loans (the "Advance Request").

5  On January 31, 2008, Autobahn Funding loaned BCF $1,771,715.20 to purchase the Note from

6  BCC.

7      13.     Choice also entered into a Franchise Agreement dated as of January 31, 2008

8  (the "Franchise Agreement") with BCAP as the franchisor.  Ex. D-3.  Pursuant to this agreement,

9  BCAP promised to provide certain services to Choice in exchange for various fees and to serve

10 as Choice's "Agent of Record" for all insurance policies which Choice originated.    Pursuant to

11 the Franchise Agreement, Choice was required to pay a nonrefundable franchise fee of $165,000

12 for each of its five locations and to pay the greater of 15% of its monthly premium commissions

13 or $500 per month.   Choice paid a total of $825,000 for the nonrefundable franchise fee.   Under

14 the Franchise Agreement, in addition to acting as Choice's Agent of Record on all policies,

15 BCAP provided access to at least 50 insurance companies with which Choice could work, paid

16 for advertising, permitted Choice to use BCAP's management systems which tracked clients and

17 premium payments, and enabled Choice to increase its commissions from the 10% rate paid to

18 small agencies to 15-20% depending upon the insurance company.  Thus, the Franchise

19 Agreement offered Choice some real economic benefits.

20      14.     In practice, pursuant to the terms of the Franchise Agreement, new policies were

21 issued by Choice in the name of BCAP as Agent of Record in Washington.  Policy holders paid

22 their premiums to BCAP, and BCAP retained its 15% commission from those premiums and

23 paid the balance over to Choice.

24      15.     On May 12, 2008, representatives of BCC, conducting business as Aleritas

25 Capital Corporation, signed a form 10-Q quarterly report pursuant to the Securities Exchange

26

27

28

Findings of Fact and Conclusions of Law - 6

Act of 1934, covering the period ending March 31, 2008.  Ex. D-46.  On page 27 of that report, BCC discloses that as of March 31, 2008, it was not incompliance with all of the terms and conditions of its lending agreements with DZ Bank.  The report states that "DZ Bank has not issued a notice of default with respect to the facility and is in discussions with the Company's management to address these issues."  It further states: "The Company is not able to fund new loans into the facility and it is unlikely the Company will be able to fund loans into the facility in the future.  The Company has announced it does not intend to use this facility in the future." Thus, as of March of 2008, DZ Bank knew that BCC was not in compliance with the loan documents despite the fact that it had not formally declared BCC in default.

16.     By letter dated September 3, 2008, an attorney, on behalf of Choice and other franchisees of BCAP, advised BCAP that the franchisees considered BCAP to be in material default of their franchise agreements.  Ex. D-8, p. 0071.  The letter demanded, among other things, that all of the franchisees be immediately paid their commissions and that they be released from their respective franchise agreements.  Thus, Mr. Meyer knew as early as September 3, 2008, the BCAP was not complying with its obligations under the franchise agreement with Choice.

17.     By letter dated September 29, 2008, Mr. Meyer executed a letter directed to BCAP in which he exercised Choice's right to terminate the franchise agreement effective 30 days from the date of the letter.  The letter demanded that BCAP make Mr. Meyer the Agent of Record for all of Choice's customer accounts.  Ex. D-8, p. 0068.

18.     In or about October 2008, BCF defaulted on its obligations to DZ Bank under the Amended Security Agreement and DZ Bank exercised its rights against BCC.  By letter dated October 14, 2008 and signed by Patrick Preece and Jennifer Wikoff on behalf of DZ Bank, DZ

Findings of Fact and Conclusions of Law - 7

Bank advised Choice that its loan from BCC had been assigned to BCF, which in turn had

assigned the loan to DZ Bank as agent for Autobahn Funding.  The letter further advised that

BCAP had agreed to the termination of the Franchise Agreement with Choice, effective only

upon Choice's execution of the acknowledgment that is Ex. P-16 (the "Choice

Acknowledgment").  The Choice Acknowledgment, which Mr. Meyer executed on behalf of

Choice on October 15, 2008, states that Choice agreed that the Note balance was $1,728,834.65,

and reaffirms Choice's agreement to pay the loan to DZ Bank and to instruct all insurance

carriers and other parties to pay all commissions owing to Choice directly to a "lock-box account

or other account that is under the sole dominion and control of DZ Bank…."  *Id.*  The Choice

Acknowledgment further provides: "If, notwithstanding such instructions, we [referring to

Choice] receive any such amounts directly, we will deposit such amounts into the Blocked

Account as soon as practicable and in any event within two Business Days of our receipt.

Pending such deposit, we will hold such amounts in trust for the benefit of DZ Bank."  *Id.*

19.     By letter dated October 15, 2008, Jennifer Wikoff, on behalf of DZ Bank, notified

Choice that it had received the executed copy of the Choice Acknowledgment signed by Mr.

Meyer and that DZ Bank had consented to the termination of Choice's Franchise Agreement with

BCAP.  The letter again instructed: "Please direct all insurance carriers and other parties to pay

commissions and other amounts owing to you in accordance with the instructions set forth

below, as contemplated by the Acknowledgement."  The letter included the name and account

information for the lock box account contemplated by the Choice Acknowledgment.  Ex. P-18.

20.     As of the time the Choice Acknowledgment was executed, Defendants were well

aware of BCAP's default under the Franchise Agreement and Choice itself was engaged in legal

action to terminate its Franchise Agreement with BCAP.  At the time Mr. Meyer signed the

Findings of Fact and Conclusions of Law - 8

Choice Acknowledgment, he was well aware that BCAP would no longer be providing any of the franchise services required by BCAP under the Franchise Agreement.

21.     On October 28, 2008, Brooke Corporation and BCAP filed for bankruptcy in the District of Kansas.  No bankruptcy was ever filed for BCF.  According to a Complaint filed in the District Court for the District of Kansas on May 4, 2011 (the "SEC Complaint"), by the Securities and Exchange Commission, the Brooke companies' bankruptcy proceedings were the culmination of a "massive financial fraud conducted by the former senior management of Brooke Corporation, …Brooke Capital Corporation [BCAP], …and Aleritas Capital Corporation [as referenced in Ex. P-16, Aleritas Capital Corp. was formerly known as BCC]."  Ex. D-13, para. 1.  One of the officers named in the action was Kyle Garst, who was Mr. Meyer's contact with Brooke when he purchased the five insurance agencies at the beginning of 2008.  The SEC Complaint alleges that as early as January of 2008, "Garst knew of and should have known that Brooke Capital used funds earned by its franchisees on an intra-month basis to meet operating expenses and then scrambled to raise cash from other sources to 'settle' each month with profitable franchisees."  Ex. D-13, para. 63.  The SEC Complaint alleges that as of the time Choice purchased the five insurance agencies and entered into the Franchise Agreement, Brooke Corporation and BCAP were already in financial trouble and were concealing that fact in their public securities filings.  *Id.* at pp. 18-21.

22.     This is no evidence that DZ Bank or any of its representatives or employees had any knowledge of the "massive fraud" described in the SEC Complaint.   Had DZ Bank or any of its representatives or employees known of such fraud in January of 2008, when Choice entered into the Franchise Agreement with BCAP and the Note, Security Agreement and Personal Guaranty with BCC, it would not have been in DZ Bank's financial interest to make a loan to BCC to fund the Note.

23.     Once BCAP filed bankruptcy, its appointment as the Agent of Record under the Franchise Agreement was terminated and according to the testimony of Mr. Meyer, Choice was given 15 months to transfer its clients to a new Agent of Record.

24.     On October 30, 2008, DZ Bank, BCC, and BCF entered into a Surrender of Collateral, Consent to Strict Foreclosure, Release and Acknowledgement Agreement [Ex. P-14] and on October 31, 2008, DZ Bank and BCF entered into an Omnibus Assignment [Ex. P-15]. The effect of these documents was the transfer of the Choice Note and collateral documents, including the Personal Guaranty, to DZ Bank, as agent for Autobahn Funding Company LLC.

25.     Patrick McShane was a senior analyst at DZ Bank and was one of the individuals at the bank responsible for the Brooke credit. After Brooke Corporation and BCAP filed bankruptcy, and after the strict foreclosure, Mr. McShane was a point of contact with Choice and Mr. Meyer. According to Mr. McShane's deposition testimony, the goal of DZ Bank was to ensure the continued flow of commissions from BCAP's franchisees, including Choice, so that those commissions could be used to pay back the franchisees' loans then held by DZ Bank. To ensure that those commissions were paid to DZ Bank, the bank required that all commissions be paid into a lockbox account. McShane dep., p. 13-14.

26.     During the time relevant to this matter, Jennifer Wikoff was the head of due diligence and a deputy to the department at DZ Bank, managing the credit team and coordinating completion of lending activities. Wikoff Dep. at 6. She worked on the Brooke account, meeting with management, walking through the facility, reviewing Brooke's collateral files and monitoring the internal operations. Ms. Wikoff reported to Patrick Preece. Id. at 60. She testified that it was important that commissions be paid into the Autobahn lockbox. Upon Brooke's default, she described the efforts she and her staff made to contact Brooke's clients, including BCAP's franchisees, and inform them that their payments should be redirected to a lockbox owned by DZ Bank. Id. at 10. One of those clients was Choice. Ms. Wikoff admitted that after Brooke filed bankruptcy, "[M]any of the agents were confused and uncertain as to how to obtain their commission streams and how to keep their businesses afloat." Id. at 12. DZ Bank would not release any of the collateral, however, except upon full payment of the client's loan obligations. Like Mr. McShane, Ms. Wikoff testified that DZ Bank was assisting the franchisees like Choice to get a new Agent of Record for their policies so they could continue to

Findings of Fact and Conclusions of Law - 10

1   write new business.   She testified that if a franchisee was in default, any excess commissions

2   coming into the lockbox would not be paid over to the franchisee.  Id. at 37.

3          27.     Mr. Meyer testified that when he began his communications with DZ Bank

4   employees after the Brooke company bankruptcies, he assumed that DZ Bank, as the new entity

5   with whom he was dealing, would be providing some or all of the franchise services of BCAP

6   under the Franchise Agreement.  There is no evidence, however, that DZ Bank ever performed or

7   agreed to perform any of BCAP's franchise duties under the Franchise Agreement.

8          28.     In fact, after BCAP's default under the Franchise Agreement, Choice lost all of

9   the benefits of that agreement, including without limitation the benefits of the larger franchise

10  operation, appointments with major insurance companies, commissions which were diverted by

11  BCAP from Choice in July through September of 2008, loss of advertising and management

12  services by BCAP, and lowered commission income.  BCAP also failed to pay rent due Choice's

13  landlord at its Tacoma location.

14         29.     In or about October 2008, Choice, under the control of Mr. Meyer, transferred

15  certain Agency Assets and other Collateral to Meyer Insurance, a company owned and controlled

16  by him.  Also in or about October 2008, Choice, under the control of Mr. Meyer, transferred

17  certain Agency Assets and other Collateral to Lolynn Investors, a company owned and controlled

18  solely by Lynn Meyer.  These transfers will be collectively referred to as the "October 2008

19  Transfer."  Following the October 2008 Transfer, Choice had no assets, was insolvent, and

20  according to Mr. Meyer's testimony at trial, was "an empty shell."

21         30.     Mr. McShane testified that DZ Bank did assist the franchisees in arranging for the

22  designation of new agents of record where they did not have the ability to take on that

23  designation themselves, but, he did not recall ever agreeing that Lolynn or Meyer Insurance

24  could become the Agent of Record for Choice with respect to certain policies.  McShane Dep. at

25  22.

26         31.     On Defendants' Motion for Summary Judgment, the Court found as a matter of

27  fact that Patrick Preece and Mr. McShane were aware of Choice's transfer of its policies to

28  Lolynn and Meyer Insurance based upon the emails between Mr. Meyer, Mr. Preece and Mr.

Findings of Fact and Conclusions of Law - 11

McShane that are Exhibits 28, 29, and 30 to the Declaration of Louis Meyer at Dkt. 28 (Exhibits 28, 29 and 30 at Dkt. 36).  The Court further concluded that because Mr. Preece and Mr. McShane were aware of these transfers and in essence acquiesced in the transfers, the transfers could not be the basis of Plaintiff's claims under Section 523(a)(2) or (a)(6).

32.     In March 2009, Mr. Meyer requested a loan modification from DZ Bank.  On March 10, 2009, DZ Bank, and Mr. Meyer entered into a forbearance agreement pursuant to which DZ Bank agreed to reduce the principal balance of the Note by 15% and require only interest payments for a period of six months, from May 15, 2009 through October 15, 2009 (the "March 2009 Forbearance Agreement").  Ex. P-19.  Mr. Meyer signed the March 2009 Forbearance Agreement on behalf of Choice.

33.     In accordance with the March 2009 Forbearance Agreement, DZ Bank reduced the principal balance of the Note to $1,524,219.66 and Choice made payments to DZ Bank totaling $52,119.57.

34.     The purpose of the March 2009 Forbearance Agreement, according to Mr. McShane, was to allow "the agents some breathing room given the chaos that the bankruptcy had created in terms of the stream of insurance commissions."  McShane Dep. at 15.  Mr. McShane testified that at no time did he intend to release DZ Bank's security interest in Choice's commission stream or release Choice from its loan obligation.  *Id*. at 16. Instead, the agreement with Choice and other franchisees was that insurance commissions were to be paid directly to the lockbox, diverting them from the Brooke bankruptcy proceedings, to then be used first to pay the franchisees' loans to DZ Bank, then the excess would be made available to the franchisees. McShane Dep at 21.

35.     In October 2009, Mr. Meyer requested a second loan modification from DZ Bank and on October 14, 2009, DZ Bank, Choice and Mr. Meyer entered into a second forbearance agreement pursuant to which DZ Bank agreed to extend Choice's interest-only payments by an additional two months, from November 15, 2009 through December 15, 2009 (the "October 2009 Forbearance Agreement").  Mr. Meyer signed that agreement on behalf of Choice and Choice thereafter made payments to DZ Bank totaling $17,381.95.   As of the date of that

Findings of Fact and Conclusions of Law - 12

agreement, however, Choice had already transferred all of its assets to Lolynn and Meyer Insurance.

36.     In February of 2010, the Defendants commenced discussions with their attorney, Keith McClelland, ostensibly about estate planning. Ex. D-25. The Defendants had presented Mr. McClelland with their own set of estate planning documents, which Mr. McClelland testified were "a mess." Pursuant to a memorandum dated March 3, 2010, Mr. McClelland warned the Defendants about the fraudulent conveyance rules associated with certain transfers they contemplated. Ex. D-25. It was Mr. McClelland's understanding that the Defendants desired to put a condominium they owned and their personal residence into a trust and they represented to him that these properties had no equity because of liens exceeding the property value.

37.     In April of 2010, Lolynn Investors, LLC and/or Meyer Insurance Agency agreed to sell to First Insurance Agency, Inc., insurance policies listed on a schedule attached to the agreement (the "April 2010 Sale Agreement"). Ex. P-21. The Defendants had no interest in First Insurance Agency, Inc., which agreed to pay a purchase price of annual commissions from the transferred policies times 1.9, paid monthly. The policies transferred to First Insurance Agency, Inc. are hereinafter referred to as the "First Insurance Policies."

38.     Mr. McShane testified that Mr. Meyer never provided him with a copy of the Buy/Sell Agreement between First Insurance Agency, Inc. as buyer and Lolynn and/or Meyer as seller, or disclose that sale to him. McShane Dep. At 19. He further testified that Mr. Meyer never disclosed to him that he was selling his company's insurance assets to third parties. *Id.*

39.     In May 2010, Mr. Meyer requested a third loan modification from DZ Bank. When Mr. Meyer requested the third loan modification, he knew about the transfer of the First Insurance Policies under the April 2010 Sale Agreement. Ex. P-22.

40.     On May 20, 2010, DZ Bank, Choice and Mr. Meyer entered into a third forbearance agreement, pursuant to which reduced payments of $3,000 in principal plus accrued interest would be required for a period of three months, from June 15, 2010 through August 15, 2010 (the "May 2010 Forbearance Agreement"). Mr. Meyer signed the May 2010 Forbearance Agreement on behalf of Choice.

Findings of Fact and Conclusions of Law - 13

41.     In June of 2010, Mr. McClelland had the Defendants sign Wills which he prepared [Ex. D-26], Durable Powers of Attorney [Ex. D-27], and a Directive to Physicians [Ex. D-28].

42.     On June 4, 2010, the Defendants also signed The Meyer Irrevocable Trust, prepared by Mr. McClelland (the "Meyer Trust").  Both Mr. and Mrs. Meyer signed the Trust Declaration [Ex. P-23] and both understood the purposes of the Meyer Trust.  Claudette Meyer, the Defendants' daughter, is the trustee of the Meyer Trust, and Mr. and Mrs. Meyer are the primary beneficiaries.  Ex. P-23.  Although Claudette Meyer is named as the trustee under the Meyer Trust, the Court finds that all actions of the trust were the result of decisions made by the Defendants.

43.     The Defendants transferred their condominium in Lakewood, Washington, into the Meyer Trust as well as their personal residence in Edmonds, Washington. The Meyer Trust paid no consideration to the Defendants for these properties.  The Meyer Trust entered into a Residential Lease dated as of December 30, 2010, as to the residence, leasing it to the Defendants for $2,300 per month.  Ex. P-24.  The Meyer Trust entered into a Residential Lease dated as of December 30, 2010 as to the Lakewood condominium, leasing it to the Defendants for $667.75 per month.  Ex. P-25.  Claudette Meyers admitted at trial that the lease payments cover only expenses related to the properties and do not represent fair market value lease rates. Mr. McClelland testified that the leases at Ex. P-24 and P-25 were not in the same form as the leases he drafted for the Defendants; the leases he drafted provided for higher rents.  The Defendants used the forms of lease prepared by Mr. McClelland but changed the amount of rent so that it covered the mortgage and tax expense only.

44.     Mr. McClelland testified that the Defendants never asked him about transferring their business assets into the trust; instead, his only conversations with them concerned the transfer of their life insurance policies and real properties.  Had they asked him about transferring business assets into the Meyer Trust, Mr. McClelland testified that he would have discussed the fraudulent conveyance issues with them, including the need for an exchange of fair consideration.

Findings of Fact and Conclusions of Law - 14

45.     Mr. Meyer testified that some time prior to December 2010, he purchased a company called Insurance Choices 4 U, Inc. ("Insurance Choices") for $200 from a family friend.  In December of 2010, Mr. Meyer testified that he had all of the remaining assets of Meyer Insurance transferred to Insurance Choices, then he had the Meyer Trust purchase all of the stock of Insurance Choices (the "December 2010 Stock Sale").  Claudette Meyer also testified that the Meyer Trust owned 100% of the stock of Insurance Choices.  No documents were submitted into evidence substantiating these transfers and there is no evidence of any consideration flowing between any of these entities.  The only documents which were admitted at trial which pertain to these transfers are the documents in Exhibit P-26, which reference that effective December 1, 2010, Meyer Insurance changed its name to Insurance Choices and that Meyer Insurance merged with Insurance Choices.  Because there was no testimony at trial concerning these name change documents, it is not clear how the documents were used.  However, each document is signed by Mr. Meyer as president of Meyer Insurance and as president of Insurance Choices.

46.     In connection with the December 2010 Stock Sale, Insurance Choices, while under the control of the Meyer Trust, agreed to pay $385,000 to Mr. Meyer over time; $370,000 of that amount was allocated for the transfer of the Agency Assets and other insurance policies, and $15,000 was allocated for equipment and other personal property.  The $385,000 was alleged by the Defendants to be the amount of a loan Meyer Insurance owed to Mr. Meyer (the "Shareholder Loan").  There was no evidence at trial, however, of any underlying loan documents or any accounting for that loan.  Claudette Meyer testified, without any documentary corroboration, that Meyer Insurance owed Mr. Meyer $1.7 million, but that Mr. Meyer agreed to "walk away from" $1.4 million.

47.     From December 2010 through the present, Insurance Choices has been making payments to Louis Meyer under the alleged Shareholder Loan.

48.     The December 2010 Stock Sale included substantially all of Meyer Insurance's remaining assets.  Following the December 2010 Stock Sale, Meyer Insurance had no assets and was insolvent.

Findings of Fact and Conclusions of Law - 15

49.     The last payment Choice made to DZ Bank was January 15, 2011.

50.     On January 22, 2011, Insurance Choices, as seller, and Connect Insurance Agency, Inc. ("Connect Insurance"), as buyer, entered into a Buy Sell Agreement – Bill of Sale [Ex. P-30] for the transfer of Insurance Choice's interest in various insurance policies (the "January 2011 Sale Agreement").  Under the January 2011 Sale Agreement, as consideration for the transfer of Agency Assets, other collateral and other insurance policies, Connect Insurance agreed to pay Insurance Choices all commissions received via the transferred policies for a period of nine months.

51.     From about January 2011 through about September 2011, Connect made payments to Insurance Choices under the January 2011 Sale Agreement.  From about September 2011 through the present, Connect Insurance continues to make payments to Insurance Choices under an Independent Contractor Producer Agreement.  Under the January 2011 Sale Agreement, Insurance Choices transferred substantially all of its assets and following that sale, Insurance Choices had no assets and was insolvent.

52.     Mr. McShane testified that he had never seen the Buy/Sell Agreement Bill of Sale between Insurance Choices 4 You and Connect Insurance and that Mr. Meyer never disclosed that sale to him.  McShane Dep. at 24, 25.  He further testified that Mr. Meyer never disclosed to him that Mr. Meyer was transferring all of his personal assets to a family trust.  Id. at 25.  Given that Mr. Meyer had personally guaranteed the Choice Note, the fact that Mr. Meyer was transferring all of his personal assets to a family trust would have been "critical information" to Mr. McShane.  Id. at 25.

53.     On or about February 15, 2011, Choice defaulted under the Note by failing to make payments when due.

54.     On March 23, 2011, DZ Bank, Choice and Mr. Meyer entered into a fourth forbearance agreement [Ex. P-31] pursuant to which reduced payments of $3,000 in principal plus accrued interest would resume on April 15, 2011 and continue through August 15, 2011, and the outstanding payments due under the Note would be due upon maturity of the Note (the "March 2011 Forbearance Agreement").

Findings of Fact and Conclusions of Law - 16

55.     Mr. Meyer signed the March 2011 Forbearance Agreement on behalf of Choice. At the time Mr. Meyer signed that agreement, he knew that all of the Agency Assets and the Collateral had by that time been transferred to entities not controlled by him, *i.e.*, First Insurance and Connect Insurance.

56.     On April 15, 2011, Choice again defaulted under the Note by failing to make payments when due.  On the same date, the Defendants defaulted under their Personal Guaranty by failing to make the payments when due under the Note.

57.     The Defendants created the Meyer Trust and transferred their personal and corporate assets into the Meyer Trust in order to protect their assets from DZ Bank rather than for personal estate planning purposes.  Mr. Meyer's execution of multiple forbearance agreements with DZ Bank, pursuant to which he represented that Choice continued to accept insurance commissions in Trust for DZ Bank and in which he agreed that Choice continued to be liable to DZ Bank, without advising DZ Bank of the transfers of the Collateral to Insurance Choices and Connect Insurance, was intended to conceal from DZ Bank that its Collateral was being put beyond its reach.

58.     On August 9, 2011, DZ Bank filed its complaint against Choice and the Defendants in the United States District Court for the Western District of Washington as Case No. 11-1312-JLR, for breach of the Note and Personal Guaranty (the "District Court Matter").

59.     On July 16, 2012, the Defendants filed a voluntary petition in bankruptcy under Chapter 7 of the Bankruptcy Code.  Defendants listed DZ Bank on Schedule F of their petition as a nonpriority unsecured creditor.

60.     On March 5, 2013, the District Court Clerk entered a final judgment in favor of DZ Bank and against Choice in the amount of $1,710,469.93 (the "District Court Judgment"). Choice appealed the District Court Judgment to the Ninth Circuit Court of Appeals.  The District Court Matter was stayed against the Defendants by their bankruptcy filing.

61.     Choice has no assets available to pay the District Court Judgment and DZ Bank has not recovered any amount from Choice.

Findings of Fact and Conclusions of Law - 17

62.    No UCC financing statement was filed by DZ Bank against the Defendants, Lolynn, Meyer Insurance, Connect Insurance or Insurance Choices as debtors and neither Defendants, Lolynn, Connect Insurance, nor Insurance Choices entered into a security agreement naming DZ Bank or any of its agents as a secured creditor.  There is no evidence that any officer or employee of Connect Insurance had any knowledge that insurance policies transferred to it might be subject to the lien of DZ Bank.

63.    Exhibit P-61 is a list of all insurance policies transferred by Insurance Choices to Connect Insurance.  Exhibit P-62 is a list of all insurance policies that were initially the property of Choice and part of the Collateral.  Mr. Probst testified that at his direction, an attorney for DZ Bank compared the two exhibits and marked each policy transferred to Connect Insurance which had been part of the Collateral in yellow highlighter on Ex. P-61.  Mr. Probst testified that based upon this comparison, he believed that 32% of the accounts sold to Connect Insurance were part of the Collateral.  Although Mr. Meyer identified some of the highlighted accounts on Exhibit P-61 which he claimed were not originally part of the Collateral, the Court was not able to determine from his testimony whether or how much that would have reduced the 32% figure about which Mr. Probst testified.

64.    Mr. Meyer testified that when the insurance policies held by Meyer Insurance were transferred to Insurance Choices, those policies had a value of $385,000, as shown on the 2011 corporate income tax return for Insurance Choices [Ex. P-44, pp. 1373, 1383].  Mr. Meyer testified that when Insurance Choices transferred those assets to Connect Insurance, they had a fair market value of $328,000, which he determined by calculating the commissions from the policies for the first nine month period after the transfer in January of 2011.

65.    In December of 2010, Defendants transferred all of the assets of Meyer Insurance, including the insurance policies that comprised part of the Collateral, to Insurance Choices with

Findings of Fact and Conclusions of Law - 18

the intent to hinder DZ Bank's enforcement of its security interest against those assets.  That transfer was made for no consideration.  Defendants fraudulently concealed that transfer from DZ Bank and thereafter entered into the March 2011 Forbearance Agreement in furtherance of their concealment of the transfer.  Had DZ Bank known of the December 2010 transfer of the Collateral to Insurance Choices, it would have declared a default under the Note and enforced its rights against the Collateral.  Instead, DZ Bank entered into the March 2011 Forbearance Agreement, which extended Choice's obligation to pay until April 15, 2011.  Choice defaulted in making the payment on April 15, 2011, and DZ Bank declared a default under Note at that time.

66.     Defendants were understandably frustrated by the demise of BCAP and Brooke Corporation and their business suffered as a result of Brooke's demise.  However, Defendants knew that their actions in transferring the Collateral would injure DZ Bank and they had no just cause for transferring the Collateral so as to avoid DZ Bank's lien and retain the proceeds of the Collateral for themselves.

67.     As a consequence of Defendants' fraudulent concealment of the transfer of the Collateral from Meyer Insurance to Insurance Choices, DZ Bank was damaged in the amount of $385,000.[3]  Instead of paying over the proceeds of the Collateral to DZ Bank, the Defendants used those proceeds for their personal purposes.

68.     When Defendants authorized the sale of assets from Insurance Choices to Connect Insurance, Defendants effected a conversion of DZ Bank's Collateral for their own benefit.  As a consequence of this conversion, DZ Bank was damaged in the amount of $123,200 (32% of $385,000).

---

[3]  DZ Bank did not assert at trial any damages in connection with the transfer of Collateral by Lolynn and Meyer Insurance to First Insurance because the Court dismissed DZ Bank's claims relating to those transfers under Section 523(a)(2)(A) and granted summary judgment to the Meyers as to claims relating to those transfers under Section 523(a)(6).  *See* Order on Defendants' Motion to Dismiss, Motion for Summary Judgment, and Motion for Sanctions at Dkt. No. 71.

Findings of Fact and Conclusions of Law - 19

III.     **CONCLUSIONS OF LAW**

1.       The Court has jurisdiction of this matter under 28 U.S.C. § 1334 and this is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

2.       DZ Bank has the burden of proving each of the elements of Sections 523(a)(2) and 523(a)(6) by a preponderance of the evidence.  Exceptions to discharge are to be strictly construed in favor of the debtor and against the creditor.  Discharge, however, is reserved for the honest, but unfortunate debtor.

3.       At the outset of the trial, in an oral ruling on DZ Bank's motion in limine, the Court held that the Defendants were barred by collateral estoppel and res judicata from challenging the District Court Judgment against Choice.  The Court held, however, that the Defendants were not barred by either doctrine from arguing that BCAP and/or BCC committed fraud in the inducement when the Defendants entered into the Personal Guaranty with BCC as of January 31, 2008.

4.       Pursuant to Paragraph 39 of the Agreement for Advancement of Loan dated as of January 31, 2008 [Ex. P-8], between BCC and Choice, the State of Kansas is the choice of governing law, "except to the extent that the perfection of the interests in the Agency Assets is governed by the laws of a jurisdiction other than the State of Kansas."  BCC perfected its security interest in the Collateral by filing UCC financing statements in the State of Washington [Ex. P-12]; accordingly, the Court will apply Washington law to any question related to the perfection of DZ Bank's interest by assignment in the Collateral.  Pursuant to paragraph 13 of the Personal Guaranty signed by the Defendants [Ex P-9], the Personal Guaranty is governed by the "laws of the State in which it is executed."  Based upon the testimony of Mr. Meyer, the Court finds that the Personal Guaranty was signed in the State of Washington, therefore Washington

law applies as to any issues related to the interpretation, validity or enforcement of the Personal Guaranty.

5.      Proof of fraud in the inducement under Kansas law requires proof by clear and convincing evidence that in order to induce a party to enter into a contract, the other contracting party made (a) an untrue statement of fact, (b) known to be untrue by the party making it, (c) made with the intent to deceive or with reckless disregard for the truth, (d) upon which another party justifiably relied and acted to his or her detriment. *Alires v. McGehee*, 277 Kan. 398, 85 P.3d 1191 (2004).

6.      If DZ Bank is a holder in due course, fraud in the inducement on the part of BCC, BCAP or any other Brooke Corporation entity cannot be asserted against it.  K.S.A. 84-3-305(b). Fraud in the inducement is a defense arising under K.S.A. 84-3-306(2) and not K.S.A. 84-3-306(1).

7.      DZ Bank has the burden of proving that it is a holder in due course.  DZ Bank's status as a holder in due course is determined as of the time it took an assignment by indorsement of the Note. *Bricks Unlimited, Inc. v. Agee*, 672 F.2d 1255, 1259 (5th Cir. 1982)("Knowledge learned subsequent to the time of negotiation of an instrument does not impair holder in due course status."); *Valley Bank & Trust Co. v. American Utilities, Inc.*, 415 F.Supp. 298, 300 (D.C. Pa. 1976); *Third Nat. Bank in Nashville v. Hardi-Gardens Supply of Illinois, Inc.*, 380 F.Supp. 930, 940 (M.D. Tenn. 1974).  The Court holds that DZ Bank was a holder in due course under Kansas law as of January 31, 2008, and that the defense of fraud in the inducement by BCC cannot be asserted against DZ Bank under the Kansas Uniform Commercial Code.  Under K.S.A. 84-3-302, a holder in due course means the holder of an instrument if (1) the instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or

is not otherwise so irregular or incomplete as to call into question its authenticity; (2) the holder took the instrument (A) for value, (B) in good faith, (C) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, (D) without notice that the instrument contains an unauthorized signature or has been altered, (E) without notice of any claim to the instrument described in K.S.A. 84-3-306, and (F) without notice that any party has a defense or claim in recoupment described in K.S.A. 84-3-305(a).

8.     Defendants assert that DZ Bank is not a holder in due course because at the time the Note and Personal Guaranty were executed by Defendants, DZ Bank knew that (i) BCC and BCF were in default under the agreement with Autobahn Funding, and (ii) BCAP and the Brooke companies were engaged in a massive financial fraud.   Defendants failed to prove such knowledge on the part of DZ Bank, accordingly, the Court concludes that DZ Bank is a holder in due course of the Note.

9.     DZ Bank did not commit fraud in the inducement when it asked Choice to reaffirm Choice's obligations and those of the Defendants under the Personal Guaranty through the execution of the Choice Acknowledgment.   As of the time the Choice Acknowledgment was executed, Defendants were well aware of BCAP's default under the Franchise Agreement and Choice itself was engaged in legal action to terminate its Franchise Agreement with BCAP.  At the time Mr. Meyer signed the Choice Acknowledgment, he was well aware that BCAP would no longer be providing any of the franchise services required by BCAP under the Franchise Agreement.  Despite Mr. Meyer's testimony that he "assumed" DZ Bank would be providing some of those services, there is nothing in the evidence to demonstrate any agreement between DZ Bank and Choice or the Defendants to that effect or any evidence of a commitment by DZ

Findings of Fact and Conclusions of Law - 22

Bank to provide any franchise services.

10.     Under RCW 62A.9A-315, a perfected security interest in collateral continues in collateral notwithstanding sale or other disposition "unless the secured party authorized the disposition free of the security interest…."  Under RCW 62A.9A-317(b), a buyer that takes delivery of collateral free of a pre-existing security interest if the buyer gives value and receives delivery of the collateral without knowledge of the security interest.  DZ Bank consented to the transfer of Collateral from Choice to Lolynn and Meyer Insurance, however, DZ Bank made it clear that it was not releasing its lien against the Collateral.  When Defendants effected a transfer of the Collateral from Choice to Lolynn and Meyer Insurance, they had knowledge of the lien of DZ Bank and that DZ Bank had not agreed to release its lien, therefore DZ Bank's lien in the Collateral continued notwithstanding the transfer to Lolynn and Meyer Insurance.

11.     Under RCW 19.40.041(a)(1) "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor."  Defendants engaged in intentionally fraudulent transfers when they transferred the Collateral from Meyer Insurance to Insurance Choices and the Meyer Trust and then from Insurance Choices to Connect Insurance. These transfers were made without the knowledge or consent of DZ Bank and were made by the Defendants to prevent DZ Bank from enforcing its rights against the Collateral.  At the time of the transfers, the Collateral was subject to the lien of DZ Bank.  A corporate officer who engages in fraud is personally liable for that fraud notwithstanding that he acted as an authorized officer of a corporation.  *In re Baird*, 114 B.R. 198 (9th Cir. BAP 1990).  DZ Bank was damaged by these fraudulent transfers in the amount of the value of the Collateral as of the date of the

transfers.

12.    Under Section 523(a)(2)(A), an obligation of the debtor to a creditor is nondischargeable where the debtor has committed actual fraud on such creditor.  In an oral ruling on June 7, 2013, on Defendants' motion to dismiss and/or for summary judgment, the Court held that Defendants' intentionally fraudulent transfers of DZ Bank's Collateral could be the basis for nondischargeability under Section 523(a)(2)(A).[4]

13.    Proof of a cause of action under Section 523(a)(6) requires a two-step process.  First, DZ Bank must prove that Defendants committed a "willful" injury.  *Khaligh v. Hadaegh (In re Khaligh)*, 338 B.R. 817, 831 (9th Cir. BAP 2006).  To satisfy the willfulness element, a creditor must prove that the debtor deliberately or intentionally injured the creditor, and that in doing so, the debtor intended not just to commit the act itself, but also intended the consequences of the act.  *See Kawaauhau v. Geiger*, 523 U.S. 57, 61-62 (1998).  Further, the Court must apply a subjective test in determining the debtor's intent.  "[Section] 523(a)(6) renders a debt nondischargeable when there is either a subjective intent to harm, or a subjective belief that harm is substantially certain."  *Carillo v. Su (In re Su)*, 290 F.3d 1140, 1144 (9th Cir. 2002).

14.    The second step in the Section 523(a)(6) analysis is to determine whether the debtor's conduct was "malicious."  *Khaligh*, 338 B.R. at 831.  In order to be found malicious, the debtor must have committed a (1) wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) which is done without just cause or excuse.  Id.  The last element, whether the act was done without just cause or excuse, presents a mixed question of law and fact.  *Jett v. Sicroff (In re Sicroff)*, 401 F.3d 1101, 1105-06 (9th Cir. 2005), *cert. denied* 125 S.Ct. 2964 (2005).  Evidence of specific intent to injure can negate just cause or excuse.  *Khaligh,* 338 B.R. at 831.

---

[4]  The Court's oral ruling on the record on June 7, 2013, is incorporated herein by this reference.

Findings of Fact and Conclusions of Law - 24

15.     Unlawful conversion of another's property may constitute a willful and malicious injury.  To prove conversion, the creditor must prove that when the debtor converted the creditor's property, he had the specific intent to deprive the creditor of the property or did so knowing, with substantial certainty, that the creditor would be harmed by the conversion. *Spokane Ry. Credit Union v. Endicott (In re Endicott)*, 254 B.R. 471 (Bankr. D. Id. 2000).  The creditor is entitled only to damages in the amount of the value of the property converted.

16.     DZ Bank must prove some affirmative action by Defendants intended to injure DZ Bank.  For example, in the case of *In re Foust*, 52 F.3d 766 (8th Cir. 1995), the court upheld the denial of the debtor's discharge under Section 523(a)(6) where the debtor had secretly converted crops which secured a government loan by selling the crops to distant grain elevators and placing the proceeds of the sales in his personal accounts.  The debtor then fabricated reports of grain thefts to cover up his scheme.  *See also Chrysler Credit Corp. v. Perry Chrysler Plymouth, Inc.*, 783 F.2d 480 (5th Cir. 1986)(discharge of corporate president denied under Section 523(a)(6) where he took proceeds of inventory sales to Las Vegas in hope of winning enough money to save dealership).

17.     When the Defendants authorized and participated in the transfer of the Collateral from Meyer Insurance to Insurance Choices and then from Insurance Choices to Connect Insurance, the Defendants, with knowledge of DZ Bank's lien in the Collateral, intentionally sold that Collateral without DZ Bank's knowledge for the purpose of putting the Collateral beyond DZ Bank's reach and Defendants retained the consideration from the sale of the Collateral for their own personal benefit.  Based upon the facts as found herein by the Court, DZ Bank has met its burden of proving conversion under Section 523(a)(6).

18.     As a result of the Defendants' fraud in the transfer of the Collateral from Meyer

Findings of Fact and Conclusions of Law - 25

Insurance to Insurance Choices, DZ Bank was damaged in the amount of $123,200, which amount is nondischargeable under Section 523(a)(2).

19.     As a result of the Defendants' conversion of Collateral by transfer of the Collateral from Insurance Choices to Connect Insurance, DZ Bank was damaged in the amount of $123,200, which amount is nondischargeable under Section 523(a)(6).

20.     DZ Bank may submit and order and judgment in conformance with these Findings of Fact and Conclusions of Law.

///END OF ORDER///

Findings of Fact and Conclusions of Law - 26

Entered on Docket May 9, 2014

**Below is the Order of the Court.**



_____

Karen A. Overstreet
U.S. Bankruptcy Judge
**(Dated as of Entered on Docket date above)**

_____

Karen A. Overstreet
Bankruptcy Judge
United States Courthouse
700 Stewart Street, Suite 6301
Seattle, WA 98101
206-370-5330

### IN THE UNITED STATES BANKRUPTCY COURT FOR THE
### WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| In re | Case No.  12-17379 |
| LOUIS PHILLIPUS MEYER and LYNN MEYER, | |
| Debtors. | |
| DZ BANK AG DEUTSCHE ZENTRAL-GENOSSENSCHAFTSBANK, FRANKFURT AM MAIN, NEW YORK BRANCH, | Adv. No.  13-01036-KAO |
| Plaintiff, | AMENDED JUDGMENT |
| v. | |
| LOUIS PHILLIPUS MEYER and LYNN MEYER, | |
| Defendants. | |

Order - 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

This matter came before the Court for trial on October 22, 24, 2013 and November 12, 2013. On January 14, 2014, the Court issued its Findings of Fact and Conclusions of Law, Dkt. No. 80.  The Court subsequently entered Amended Findings of Fact and Conclusions of Law after entering separate orders on the parties' motions for reconsideration.  Pursuant to the Court's Amended Findings of Fact and Conclusions of Law, it is hereby ORDERED that Judgment is entered in favor of DZ BANK AG Deutsch Zentral-Genossenschaftsbank, Frankfurt AM Main, New York Branch, and against Louis Phillipus Meyer and Lynn Meyer, jointly and severally, in the amount of $123,200, which amount is non-dischargeable under §523(a)(2)(A) and §523(a)(6) of the Bankruptcy Code.

///END OF JUDGMENT///

Order - 2

Entered on Docket May 30, 2014

**Below is the Order of the Court.**



_____
Karen A. Overstreet
U.S. Bankruptcy Judge
**(Dated as of Entered on Docket date above)**

Karen A. Overstreet
Bankruptcy Judge
United States Courthouse
700 Stewart Street, Suite 6301
Seattle, WA 98101
206-370-5330

## IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| In re | Case No.  12-17379 |
| LOUIS PHILLIPUS MEYER and LYNN MEYER, | |
| Debtors. | |
| DZ BANK AG DEUTSCHE ZENTRAL-GENOSSENSCHAFTSBANK, FRANKFURT AM MAIN, NEW YORK BRANCH, | Adv. No.  13-01036-KAO |
| Plaintiff, | ORDER DENYING DZ BANK'S MOTION FOR RECONSIDERATION AS TO AMENDED JUDGMENT |
| v. | |
| LOUIS PHILLIPUS MEYER and LYNN MEYER, | |
| Defendants. | |

Order - 1

This matter came before the Court without a hearing pursuant to Local Bankruptcy Rule 9013-1(h) on Plaintiff DZ Bank AG Deutsche Zentral-Genossenschaftsbank, Frankfurt AM Main, New York Bank's ("DZ Bank") Motion for Reconsideration as to Amended Judgment ("Motion for Reconsideration," Dkt. No. 113), seeking relief from the Order on Defendants' Motion for Relief from Judgment (Dkt. No. 102), the Amended Findings of Fact and Conclusions of Law (Dkt. No. 104), and the Amended Judgment entered May 9, 2014 (Dkt. No. 105).  DZ Bank contends that the Court erred when it granted defendants' motion for relief from judgment in part and reduced the judgment against the defendants pursuant to 11 U.S.C. §523(a)(2)(A) from $385,000 to $123,200.  Specifically DZ Bank argues that the Court erred when it concluded that the bank was required to establish a claim against Meyer Insurance or that it held a security interest in the assets transferred because the defendants were the sole shareholders of Meyer Insurance and because the case law does not require the plaintiff to have a security interest in fraudulently conveyed assets in order to recover.

This matter was tried on October 23 and 24, 2013, and November 12, 2013.  The Court entered extensive Findings of Fact and Conclusions of Law (Dkt. No. 80).  Following trial, both plaintiff and defendants filed motions for relief from the judgment.  The Court entered an order denying plaintiff DZ Bank's motion for relief from judgment (Dkt. No. 103), and an order granting in part and denying in part the defendants' motion for relief from judgment (Dkt. No. 102).  The Court also issued Amended Findings of Fact and Conclusions of Law (Dkt. No. 104) and an Amended Judgment (Dkt. No. 105).[1]  The facts relevant to this order are fully set forth in the Amended Findings of Fact and Conclusions of Law and are incorporated herein by reference.

---

[1]  The Court incorporates the defined terms as set forth in the Amended Findings of Fact and Conclusions of Law.

Order - 2

## I.   STANDARDS ON MOTIONS FOR RECONSIDERATON

Motions for reconsideration are disfavored in this district. The local federal district court rules direct that a court should:

> [O]rdinarily deny such motions in the absence of a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence.

Civil Rule 7(h)(1), Local Rules W.D. Wash.  Local Rule 7(h) is the functional equivalent of a motion to alter or amend a judgment under Fed. R. Civ. P. 59(e). *Aronson v. Dog Eat Dog Films, Inc.*, 738 F. Supp. 2d 1104, 1118 (W.D. WA 2010); *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1442 (9th Cir. 1991).   Rule 59(e), Fed.R.Civ.P., made applicable to bankruptcy adversary proceedings by Bankruptcy Rule 9023, provides a mechanism for a court to alter, amend, or vacate a prior order. *Hamid v. Price Waterhouse*, 51 F.3d 1411, 1415 (9th Cir. 1994).  Although Rule 59(e) permits a court to reconsider and amend a previous order, "the rule offers an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003); *Kona Enters. v. Estate of Bishop*, 229 F.3d 877, 890–91 (9th Cir. 2000).

> A motion under F.R.Civ.P. 59(e) 'should not be granted absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law.' *McDowell v. Calderon*, 197 F.2d 1253, 1255 (9th Cir. 1999)(en banc)(*quoting 389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999); see also F.R.Civ.P. 60(b).

*Herbst v. Cook*, 260 F.3d 1039, 1044 (9th Cir. 2001).

## II.   ANALYSIS

DZ Bank argues that by adopting the Seventh Circuit's reasoning in *McClellan v. Cantrell*, 217 F.3d 890 (7th Cir. 2000), in order to find that an actual fraudulent transfer could

Order - 3

serve as the basis for a finding of nondischargeability under 11 U.S.C. §523(a)(2)(A) in the absence of a misrepresentation, this Court implicitly adopted or should have adopted the Seventh Circuit's calculation of damages.  DZ Bank characterizes the Seventh Circuit's damage analysis as a finding that the fraudulent transfer of assets itself creates a new debt to plaintiff in the amount of the value of the assets transferred, which new debt is fully nondischargeable.   In this case, DZ Bank contends that as a result of the transfer of assets valued at $385,000 from Meyer Insurance to Insurance Choices 4U/Meyer Trust, the defendants each incurred a new debt of $385,000 to DZ Bank which is nondischargeable under 11 U.S.C. §523(a)(2)(A).  Motion for Reconsideration, page 7, line 18-22.

DZ Bank is correct that this Court held that recovery under Section 523(a)(2)(A) does not require a misrepresentation but instead can be based on actual fraud, adopting the Seventh Circuit's analysis in *McClellan* to reach that result.  However, this Court did not rely on the *McClellan* court's analysis of the appropriate measure of damages for actual fraud under Section 523(a)(2)(A).  As set forth in the Order on Defendants' Motion for Relief from Judgment, the Supreme Court has spoken on the issue of damages under Section 523(a)(2)(A), and specifically stated that the section prohibits the discharge of any liability *arising from* a debtor's fraud. *Cohen v. de la Cruz*, 523 U.S. 213, 220-221 (1998).   Whether the 523(a)(2)(A) claim is based on a misrepresentation or on actual fraud, the measure of damages is the liability *arising from* the debtor's fraudulent conduct.  *See Gnomeshi v. Sabban*, 600 F.3d 1219 (9th Cir. 2010).

In this case, the fraudulent conduct giving rise to the 523(a)(2)(A) claim was the transfer of assets from Meyer Insurance to Insurance Choices 4U, coupled with the transfer of ownership of Insurance Choices to the Meyers' Trust for no consideration, and finally the sale of assets from Insurance Choices to Connect Insurance.  Dkt. No. 80, Conclusion of Law 11; Dkt. No. 104,

Order - 4

Conclusion of Law 11.  As stated in the Order on Defendants' Motion for Relief from Judgment, had the fraudulent conduct not occurred and had Meyer Insurance retained the assets, DZ Bank would have been able to recover its Collateral from Meyer Insurance because DZ Bank retained an enforceable lien in the Collateral notwithstanding the initial transfer of the Collateral from Choice to Meyer Insurance.  See Dkt. No. 80, Conclusions of Law 10; Dkt. No. 104, Conclusion of Law 10.  DZ Bank did provide evidence that it suffered damages when the defendants caused the fraudulent transfer of the former Meyer Insurance assets into the Meyer Trust, and subsequently sold them to Connect, because it was precluded from recovering the value of its Collateral.  However, DZ Bank did not advance any theory or present evidence at trial supporting the contention that it had any other damages *arising from* the defendants' fraudulent conduct.

The Court is unwilling to stray from the "arising from" analysis of the Supreme Court in *Cohen v. de la Cruz* case and adopt the "new debt" theory espoused by the bank.  Under the bank's theory, the defendants would be liable for the full value of assets fraudulently transferred, which it would characterize as the "new debt" created by the fraudulent transfer, regardless of the amount of damage actually suffered by DZ Bank as a result of the fraudulent transfer. The position asserted by DZ Bank is untenable.  The bank had no claim against Meyer Insurance or its assets, other than the Collateral.  DZ Bank failed to prove that the transfer of Meyer Insurance assets other than the Collateral, even if fraudulent as to creditors of Meyer Insurance (which the bank was not), caused DZ Bank any harm.  Following the Supreme Court's analysis of damages under 523(a)(2)(A) as announced in *Cohen v. de la Cruz*, DZ Bank's claim must be limited to the damages *arising from* the fraudulent transfers.

In this case the Court found that DZ Bank had knowledge of the transfer of its Collateral

Order - 5

from its contracting party Choice to Meyer Insurance, a separate legal entity from both Choice

and the defendants, not a party to any loan or agreement with DZ Bank.  The transfer to Meyer

Insurance was not fraudulent.  DZ Bank never had any claim against Meyer Insurance or its

assets other than a continuing security interest in the Collateral transferred to it.  The only

damages DZ Bank proved that it sustained as a result of the fraudulent transfer from Meyer

Insurance to Insurance Choices 4U/Meyer Trust are those which resulted from the transfers of its

Collateral.

     As set forth in both its Original and Amended Findings and Conclusions, the Court

concluded that DZ Bank was damaged by defendants' actual fraud "in the amount of the value of

the Collateral as of the date of the transfers."  Dkt. No. 80, Conclusions of Law 11; Dkt. No. 104,

Conclusions of Law 11.  The Court finds no error in its ruling that the correct measure of

damages pursuant to 523(a)(2)(A) is the value of DZ Bank's Collateral as of the date of the

fraudulent conduct, which the Court found to be $123,200.

### ORDER

     NOW, THEREFORE, for the foregoing reasons, it is HEREBY ORDERED that DZ

Bank's Motion for Reconsideration is DENIED.

///END OF ORDER///

Order – 6



**The Honorable Karen A. Overstreet**
**Chapter 7**
**Hearing Date: n/a**
**Hearing Time: n/a**
**Hearing Location: n/a**

1

2

3

4

5

6

7

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF WASHINGTON

8  IN RE:                                  )   Case No. 12-17379
                                           )
9                                          )   Chapter 7
   LOUIS PHILLIPUS MEYER and               )
10 LYNN MEYER,                             )
                                           )
11                                         )
                                           )
       Debtors.                            )
12 _____)
                                           )
13 DZ BANK AG DEUTSCHE ZENTRAL-            )
   GENOSSENSCHAFTSBANK,                     )
14 FRANKFURT AM MAIN, NEW                  )   Adversary No. 13-01036-KAO
   YORK BRANCH,                             )
15                                         )
       Plaintiff,                          )   NOTICE OF APPEAL
16                                         )
                                           )
17     v.                                  )
                                           )
   LOUIS PHILLIPUS MEYER and               )
18 LYNN MEYER,                             )
                                           )
19     Defendants.                         )
20 _____)

21          ## NOTICE OF APPEAL

22          DZ Bank AG Deutsche Zentral-Genossenschaftsbank, Frankfurt AM Main, New

23 York Branch ("DZ Bank") appeals under 28 U.S.C. § 158(a) from the Court's: Order on

24 Defendants' Motion for Relief from Judgment entered on May 9, 2014 (Doc. 102); Order

DZ Bank's Notice of Appeal          Page 1 of 4

**ROBERTS JOHNS & HEMPHILL, PLLC**
**7525 PIONEER WAY, SUITE 202**
**GIG HARBOR, WASHINGTON 98335**
**TELEPHONE: 253-858-8606**
**FAX: 253-858-8646**

Denying DZ Bank's Motion for Reconsideration and Clarifying Judgment entered on May 9, 2014 (Doc. 103); Amended Findings of Fact and Conclusions of Law entered on May 9, 2014 (Doc. 104), which supersede the Court's original Findings of Fact and Conclusions of Law entered on January 14, 2014 (Doc. 80); Amended Judgment entered on May 9, 2014 (Doc. 105), which supersedes the Judgment entered on February 28, 2014 (Doc. 90); and Order Denying DZ Bank's Motion for Reconsideration entered on May 30, 2014 (Doc. 114).

The names of all parties to the judgments, orders or decrees appealed from and the names, addresses, and telephone numbers of their respective attorneys are as follows:

**Parties:**
DZ Bank
Louis Phillipus Meyer
Lynn Meyer

**Attorneys:**
Alex Darcy and Michael Debre, on behalf of DZ Bank
Askounis & Darcy, PC
444 N. Michigan Ave.
Suite 3270
Chicago, IL 60611
T: 312-784-2410
adarcy@askounisdarcy.com
mdebre@askounisdarcy.com

Michael W. Johns, on behalf of DZ Bank
Roberts Johns & Hemphill PLLC
7525 Pioneer Way Suite 202
Gig Harbor, Washington 98335
T:  253-858-8606
mike@rjh-legal.com

Susan L. Fullmer, on behalf of Louis Phillipus Meyer and Lynn Meyer
1825 NW 65th Street
Seattle, WA 98117
T: 206-567-2757
susan@fullmerlaw.info

1

Marc Stern, on behalf of Louis Phillipus Meyer and Lynn Meyer
1825 NW 65th Street

2

Seattle, WA 98117
T: 206-448-7996

3

marc@hutzbah.com

4

Dated:  June 13, 2014                               Respectfully submitted,

5

6

DZ BANK AG DEUTSCHE
ZENTRAL-
GENOSSENSCHAFTSBANK,

7

FRANKFURT AM MAIN, NEW
YORK BRANCH

8

9

By:                    /s/ Michael W. Debre
Alex Darcy, Esq. (#06220515)
Michael W. Debre, Esq. (#6296197)

10

ASKOUNIS & DARCY, P.C.
444 N. Michigan Ave., Ste. 3270

11

Chicago, Illinois 60611
T: 312-784-2400

12

F: 312-784-2410
adarcy@askounisdarcy.com

13

mdebre@askounisdarcy.com
Admitted *Pro Hac Vice*

14

-and-

15

/s/ Michael W. Johns

16

Michael W. Johns, WSBA #22054
Roberts Johns & Hemphill PLLC

17

7525 Pioneer Way Suite 202
Gig Harbor, Washington 98335

18

T: 253-858-8606
F: 253-858-8646

19

mike@rjh-legal.com
*Attorneys for DZ Bank*

20

21

22

23

24

DZ Bank's Notice of Appeal          Page 3 of 4

ROBERTS JOHNS & HEMPHILL, PLLC
7525 PIONEER WAY, SUITE 202
GIG HARBOR, WASHINGTON 98335
TELEPHONE: 253-858-8606
FAX: 253-858-8646

98

<u>Certificate of Service</u>

     I hereby certify that a copy of the forgoing *Notice of Appeal* was served on the parties listed below on June 13, 2014, via the Court's ECF system or first class mail, as applicable.

/s/ Michael W. Johns       
Michael W. Johns, WSBA#22054

**<u>Via ECF:</u>**
Susan L Fullmer on behalf of Defendant Louis Phillipus Meyer
susan@fullmerlaw.info, sfullmer7@gmail.com

Susan L Fullmer on behalf of Defendant Lynn Meyer
susan@fullmerlaw.info, sfullmer7@gmail.com

Marc S. Stern on behalf of Defendant Louis Phillipus Meyer
office@hutzbah.com, tanya@hutzbah.com, marc@hutzbah.com

Marc S. Stern on behalf of Defendant Lynn Meyer
office@hutzbah.com, tanya@hutzbah.com, marc@hutzbah.com

**<u>Via first class mail:</u>**
Claudette Meyer
Trustee for The Meyer Irrevocable Trust
6017 190th St SW
Lynnwood, WA 98036

DZ Bank's Notice of Appeal     Page 4 of 4

**ROBERTS JOHNS & HEMPHILL, PLLC**
**7525 PIONEER WAY, SUITE 202**
**GIG HARBOR, WASHINGTON 98335**
**TELEPHONE: 253-858-8606**
**FAX: 253-858-8646**

99

**The Honorable Karen A. Overstreet**
**Chapter 7**
**Hearing Date: n/a**
**Hearing Time: n/a**
**Hearing Location: n/a**

1

2

3

4

5

6

7

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF WASHINGTON**

8  IN RE:                                              )   Case No. 12-17379
                                                       )
9                                                      )   Chapter 7
   LOUIS PHILLIPUS MEYER and                           )
10 LYNN MEYER,                                         )
                                                       )
11                                                     )
          Debtors.                                     )
12 _____)
                                                       )
13 DZ BANK AG DEUTSCHE ZENTRAL-                        )
   GENOSSENSCHAFTSBANK,                                )   Adversary No. 13-01036-KAO
14 FRANKFURT AM MAIN, NEW                              )
   YORK BRANCH,                                        )
15                                                     )   APPELLANT'S STATEMENT
          Plaintiff,                                   )   OF ELECTION
16                                                     )
                                                       )
          v.                                           )
17                                                     )
   LOUIS PHILLIPUS MEYER and                           )
18 LYNN MEYER,                                         )
                                                       )
19        Defendants.                                  )
   _____)

20

21                 **APPELLANT'S STATEMENT OF ELECTION**

22         COMES NOW DZ Bank AG Deutsche Zentral-Genossenschaftsbank, Frankfurt

23 AM Main, New York Branch ("Appellant"), by and through counsel, and pursuant to 28

24 U.S.C. § 158(a)(1) and (c)(1)(A), Fed. R. Bankr. P. 8001(e), Local Rules W.D. Wash. LCR

Appellant's Statement of Election         Page 1 of 4          **ROBERTS JOHNS & HEMPHILL, PLLC**
                                                               **7525 PIONEER WAY, SUITE 202**
                                                               **GIG HARBOR, WASHINGTON 98335**
                                                               **TELEPHONE: 253-858-8606**
                                                               **FAX: 253-858-8646**

88(b), and the Amended Order Continuing the Bankruptcy Appellate Panel of the Ninth

Circuit, ¶ 3(a), hereby elects to have the United States District Court for the Western

District of Washington hear Appellant's appeal of the United States Bankruptcy Court for

the Western District of Washington's: Order on Defendants' Motion for Relief from

Judgment entered on May 9, 2014 (Doc. 102); Order Denying DZ Bank's Motion for

Reconsideration and Clarifying Judgment entered on May 9, 2014 (Doc. 103); Amended

Findings of Fact and Conclusions of Law entered on May 9, 2014 (Doc. 104), which

supersede the Court's original Findings of Fact and Conclusions of Law entered on January

14, 2014 (Doc. 80); Amended Judgment entered on May 9, 2014 (Doc. 105), which

supersedes the Judgment entered on February 28, 2014 (Doc. 90); and Order Denying DZ

Bank's Motion for Reconsideration entered on May 30, 2014 (Doc. 114).


Dated:  June 13, 2014                                    Respectfully submitted,

                                                        DZ BANK AG DEUTSCHE
                                                        ZENTRAL-
                                                        GENOSSENSCHAFTSBANK,
                                                        FRANKFURT AM MAIN, NEW
                                                        YORK BRANCH

                               By:              /s/ Michael W. Debre_____
                                                Alex Darcy, Esq. (#06220515)
                                                Michael W. Debre, Esq. (#6296197)
                                                ASKOUNIS & DARCY, P.C.
                                                444 N. Michigan Ave., Ste. 3270
                                                Chicago, Illinois 60611
                                                T: 312-784-2400
                                                F: 312-784-2410
                                                adarcy@askounisdarcy.com
                                                mdebre@askounisdarcy.com
                                                Admitted *Pro Hac Vice*

                                                -and-

Appellant's Statement of Election            Page 2 of 4

ROBERTS JOHNS & HEMPHILL, PLLC
7525 PIONEER WAY, SUITE 202
GIG HARBOR, WASHINGTON 98335
TELEPHONE: 253-858-8606
FAX: 253-858-8646

1                          /s/ Michael W. Johns
                         Michael W. Johns, WSBA #22054

2                          Roberts Johns & Hemphill PLLC
                         7525 Pioneer Way Suite 202

3                          Gig Harbor, Washington 98335
                         T: 253-858-8606

4                          F: 253-858-8646
                         mike@rjh-legal.com

5                          *Attorneys for DZ Bank*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Appellant's Statement of Election        Page 3 of 4             **ROBERTS JOHNS & HEMPHILL, PLLC**
**7525 PIONEER WAY, SUITE 202**
**GIG HARBOR, WASHINGTON 98335**
**TELEPHONE: 253-858-8606**
**FAX: 253-858-8646**

<u>Certificate of Service</u>

I hereby certify that a copy of the forgoing *Appellant's Statement of Election* was served on the parties listed below on June 13, 2014, via the Court's ECF system or first class mail, as applicable.

/s/ Michael W. Johns
Michael W. Johns, WSBA#22054

**<u>Via ECF:</u>**
Susan L Fullmer on behalf of Defendant Louis Phillipus Meyer
susan@fullmerlaw.info, sfullmer7@gmail.com

Susan L Fullmer on behalf of Defendant Lynn Meyer
susan@fullmerlaw.info, sfullmer7@gmail.com

Marc S. Stern on behalf of Defendant Louis Phillipus Meyer
office@hutzbah.com, tanya@hutzbah.com, marc@hutzbah.com

Marc S. Stern on behalf of Defendant Lynn Meyer
office@hutzbah.com, tanya@hutzbah.com, marc@hutzbah.com

**<u>Via first class mail:</u>**
Claudette Meyer
Trustee for The Meyer Irrevocable Trust
6017 190th St SW
Lynnwood, WA 98036

Appellant's Statement of Election          Page 4 of 4

**ROBERTS JOHNS & HEMPHILL, PLLC**
**7525 PIONEER WAY, SUITE 202**
**GIG HARBOR, WASHINGTON 98335**
**TELEPHONE: 253-858-8606**
**FAX: 253-858-8646**